**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>TOWN OF JUPITER POLICE DEPARTMENT, DET. ANDREW SHARP #412/1101, DAVID ARONBERG, PALM BEACH COUNTY STATE ATTORNEY<br><br>        Defendants. | Civ. Action No. _____<br><br>Jury Trial Demanded |

## **COMPLAINT**

Plaintiff John Doe ("Mr. Doe" or "Plaintiff") files this Complaint against the Town of Jupiter Police Department (the "Jupiter Police"), Detective Andrew Sharp #412/1101 of the Jupiter Police ("Sharp"), and David Aronberg, the State Attorney for the 15th Judicial District (Aronberg and together with the Jupiter Police and Sharp, the "Defendants") and alleges as follows:

## **INTRODUCTION**

1. The United States Constitution protects individuals' rights to privacy and freedom from unreasonable searches. Accordingly, the government is allowed to intrude into private property and video record conduct on that private property only where the government can show probable cause that specific grave crimes are being committed, that additional evidence of those crimes is needed, that no other means of obtaining that evidence is available, and that any intrusion will be narrowly tailored to avoid excessive invasion of privacy.

2. On information and belief, the Defendants violated Mr. Doe's constitutional rights on or around January 19, 2019, by spying on him while he was in a state of undress in a private massage

room at a private spa facility, despite having failed to meet the constitutional requirements to secretly record him in such a private setting.

3. Mr. Doe brings this action in order to hold Defendants accountable for their knowing violations of his constitutional rights.

## NATURE OF THE ACTION

4. This is an action at law and in equity pursuant to 42 U.S.C. § 1983 for deprivation under color of state law of rights, privilege, and immunities secured by the Constitution.

## THE PARTIES

5. Plaintiff John Doe is an individual residing in Jupiter, Florida. John Doe files this action in a pseudonym to protect against any further invasion of his privacy.

6. The Town of Jupiter Police Department is a law enforcement agency located within the town of Jupiter, located in Palm Beach County, Florida.

7. Andrew Sharp is currently employed as a detective by the Jupiter Police, is over the age of 18, on information and belief is a resident of Palm Beach County, Florida, and is being sued in his individual capacity for knowingly violating Mr. Doe's constitutional rights. Sharp is the affiant on several publicly-available affidavits sworn in connection with the investigation described below, from which this action arises. Upon information and belief, Sharp was the lead detective in that investigation.

8. David Aronberg is the State Attorney for Palm Beach County, Florida, , is over the age of 18, on information and belief is a resident of Palm Beach County, Florida, and is being sued in his individual capacity for knowingly violating Mr. Doe's constitutional rights. Florida State Attorney's Office, 15th Judicial District, is a Florida government agency tasked with the prosecution of criminal offenses in Palm Beach County, Florida, which includes Jupiter, Florida.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4).

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). The wrongful acts alleged herein occurred in this District.

## FACTUAL BACKGROUND

### I. The Jupiter Police Investigate Suspected Prostitution.

11. In October 2018, the Jupiter Police began a prostitution investigation of massage parlors in Palm Beach County.

12. The focus of that investigation was a spa called Orchids of Asia Day Spa (the "Spa").

13. Through Internet research, Sharp became suspicious that the Spa was involved in prostitution.

14. Sharp visited an Internet forum called www.rubmaps.com, where individuals freely discuss their sexual experiences at illicit massage parlors.

15. According to Sharp, there were several posts about the Spa on www.rubmaps.com, leading him to believe that the Spa was involved in prostitution.

16. Sharp also claims to have surveilled the Spa for an extended period of time in November 2018, during which he claims to have only seen men enter the Spa, despite the fact that the Spa clearly advertises for female services.

17. Without probable cause and without a warrant, Sharp requested that an inspector from the Florida Department of Health perform a warrantless search of the Spa. That investigator, Karen Herzog, interviewed each of the employees present in the Spa, and took pictures of their identifications and a fridge and a freezer. Herzog also completed a report indicating that the Spa was not used as a place of domicile.

18. After that, Sharp continued to surveil the outside of the Spa. Specifically, he would watch men enter the Spa and then, upon departure, the Jupiter police would follow them until they purportedly committed a traffic violation, at which time they were pulled over and interviewed. A number of these men purportedly described receiving low-level sexual services—in particular, manual genital stimulation—in addition to massage, in exchange for money.

19. When shown photographs of the individuals previously identified as the Spa's employees, a number of these men admitted that particular Spa employees had performed massage as well as sexual services on them and/or had accepted payment in exchange for the same.

20. All of these men described receiving towels or napkins from Spa employees with which to clean up their seminal fluid after ejaculating.

21. Jupiter Police personnel rifled through the Spa's trash multiple times, and obtained samples from napkins which tested positive for seminal fluid.

22. Jupiter Police personnel obtained a "wage and hour" report from the State of Florida for the Spa's managers, which showed those managers' reports of their own income. Sharp would later describe this report as "evidence that the majority of the income generated by the [Spa] was a result of prostitution crimes . . . and [the managers] were deriving support from the money generated from the prostitution crimes being committed by and through the [Spa]."

23. Sharp also "determined that the Comcast cable bill and the Florida Power and Light bill for the [Spa] were being paid by this business," which he claimed provided further evidence that the Spa's president was "deriving support … through the crimes of prostitution she is engaging in and perpetuating [*sic*] through her employees."

24. The Jupiter Police also identified and sought to search bank accounts and deposit boxes belonging to the Spa and its management.

25. In short, within weeks of commencing its investigation, the Jupiter Police and Sharp had obtained overwhelming evidence that certain masseuses were engaging in low-level prostitution at the Spa, and that the Spa's managers were both participating in those sex acts and deriving support from others' low-level prostitution. Therefore, Jupiter Police and Sharp had no basis or need to video record Mr. Doe while he was undressed and receiving a massage in a private massage room.

## II.   The Jupiter Police Install Spy Cameras In The Massage Rooms At The Spa.

26. On January 18, 2019, upon information and belief, the Jupiter Police caused a false "suspicious package" warning to be issued for the Spa. Having evacuated the Spa, the Jupiter Police then entered and installed video monitoring equipment in rooms in which clients received massages, as well as the lobby, pursuant to a search warrant.

27. The Spa and its employees and managers were given no formal notice of the issuance of the warrant or the placement of video recording equipment on its premises.

28. The Jupiter Police were able to monitor and record the activity in the Spa's massage rooms in real time, and did so for a period of approximately five days, starting on January 18, 2019.

## III.   Defendants Wrongfully Record Mr. Doe.

29. On or around January 19, 2019, Mr. Doe entered the Spa and received a massage, while undressed, in a private massage room.

30. Mr. Doe had a reasonable expectation of privacy when he entered that private room, on private property, to receive treatment from a licensed healthcare practitioner—namely, a massage therapist.

31. On information and belief, the Jupiter Police recorded Mr. Doe while undressed and receiving a massage. Mr. Doe did not engage in any sexual or illegal activity at any time while receiving his massage at the Spa.

32. Upon information and belief, the Jupiter Police shared these recordings with other individuals and organizations pursuing or acting in parallel with the Investigation, including officers employed by the Jupiter Police, Aronberg and other members of the Palm Beach County State's Attorney Office, and, on information and belief, the Martin County Sherriff and the Martin County DA, who were running a related investigation.

**IV.     The Jupiter Police Charge Individuals With Misdemeanor Solicitation of Prostitution.**

33. On February 19, 2019, about a month after its illegal surveillance operation finished, law enforcement raided the Spa, executed several other search warrants, and arrested its two managers.

34. A few days later, the Jupiter Police Department in conjunction with the State's Attorney Office of the Fifteenth Judicial Circuit of the State of Florida, led by David Aronberg filed misdemeanor charges against a number of alleged Spa customers, charging them with solicitation of prostitution.

35. When filing, the Defendants knew that they had made and included in the investigation file intrusive, unnecessary secret recordings of Spa customers, including of Mr. Doe, who were not engaged in any criminal conduct.  Mr. Aronberg is not being sued for prosecuting the underlying case but for his and his office's involvement, upon information and belief, in the collection of unnecessary and obtrusive secret recordings that included Mr. Doe.

36. Mr. Doe was not accused of, or charged with, any crime.

**V.     There is a Grave Risk that the Illegally-Seized Video Will be Released Absent Immediate Court Action.**

37. Pursuant to Florida's Public Records Law, "all state, county, and municipal records are open for personal inspection and copying by any person." Fla. Stat. § 119.01(1).

38. During an April 12, 2019 hearing in one of the misdemeanor cases arising out of the Spa investigation, *State of Florida v. Robert Kraft*, Case Nos. 2019MM002346AXXXNB and 2019MM002348AXXXNB, attorneys for the State of Florida and for several media outlets took the positions that (1) video recordings of innocent persons who did not engage in illegal activity, taken during the course of the investigation, constitute public records for purposes of the Florida Public Records Law, and (2) there is no protection for these recordings, because none of the Public Records Law's enumerated exemptions apply.

39. As such, the press or any member of the public could demand access to the recordings at any time.

40. The risk of public access demands is particularly acute in the present case, as certain of the defendants charged with misdemeanor solicitation of prostitution include high profile individuals, and the media has already actively sought to obtain the videos collected by the Jupiter Police at the Spa.

41. There is, therefore, a grave risk that the video will be made public absent immediate court action.

## COUNT 1

### (Violation of 42 U.S.C. § 1983)

42. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1- 40 as though fully set forth herein.

43. Mr. Doe had a reasonable expectation of privacy when he was located in a private room located on private property at the Spa.

44. The Defendants' actions, including their monitoring and recording of Mr. Doe's conduct while located in a private room located on private property, deprived Mr. Doe of his rights, privileges, and immunities secured and guaranteed by the United States Constitution.

45. Specifically, and among other things, Defendants' actions:

    a. violated Mr. Doe's right to be free from unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution;

    b. violated Mr. Doe's Fourteenth Amendment Right to procedural due process;

    c. violated Mr. Doe's constitutional right to privacy; and

    d. constituted a gross abuse of power that is shocking to the conscience.

46. In doing so, the Defendants acted willfully, maliciously, and in violation of law, established practices, and their duties.

47. As a result of Defendants' actions, Mr. Doe suffered invasion of his privacy, embarrassment, loss of business opportunities, and substantial expenses—including legal fees and court costs—in vindicating his rights.

48. This Count is brought within the time permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Doe requests the Court enter judgment:

(a) awarding Mr. Doe money damages;

(b) awarding Mr. Doe punitive and exemplary damages;

(c) awarding Mr. Doe reasonable costs and expenses incurred in this action, including, to the extent applicable, counsel fees;

(d) enjoining the Defendants from publicizing or otherwise transmitting to any other person or organization, and ordering them to permanently and completely destroy, any and all video, audio, photographic, or other recordings, or any images or other records derived from or based on recordings, made inside the Spa;

(e) ordering the Defendants to identify any person or organization to whom they previously transmitted or granted access to, or who may have accessed, any and all

video, audio, photographic, or other recordings, or any images or other records derived from or based on recordings, made inside the Spa;

(f) requiring the Defendants to submit affidavits to the Court, within fourteen (14) days of the entry of judgment, confirming and providing specific details of their compliance with the Court's order described above in (d), and providing the information described above in (e); and

(g) granting such other relief as the Court deems just and proper.

Dated: Miami, Florida
April 15, 2019

                                        REED SMITH, LLP

                                        */s/ Edward M. Mullins*
                                        Edward M. Mullins

Edward M. Mullins
Fla. Bar No. 863920
Daniel Alvarez Sox
Fla. Bar No. 108573
emullins@reedsmith.com
dsox@reedsmith.com
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Tel: (786) 747-0200
Fax: (305) 747-0299

*Attorneys for Plaintiff*

-and-

Joseph Tacopina, Esq.
(*Pro Hac* Application Pending)
The Law Offices of Tacopina & Seigel
275 Madison Ave., Ste. 3500
New York, NY 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
jtacopina@tacopinalaw.com

*Attorneys for Plaintiff John Doe*