**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

JOHN DOE, on behalf of
himself and all others similarly situated,

    Plaintiff,

v.

TOWN OF JUPITER POLICE DEPARTMENT;
DET. ANDREW SHARP #412/1101; DAVID
ARONBERG, PALM BEACH COUNTY STATE
ATTORNEY,

    Defendants.

Case No. 9:19-cv-80513-DMM

**CLASS ACTION
JURY TRIAL DEMANDED**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff John Doe, on behalf of himself and all others similarly situated, files this Amended Class Action Complaint against the Town of Jupiter Police Department (the "Jupiter Police"), Detective Andrew Sharp #412/1101 of the Jupiter Police ("Sharp"), and David Aronberg, State Attorney for the 15th Judicial District Florida ("Aronberg") (collectively, "Defendants") and alleges as follows:

### INTRODUCTION

1. The United States Constitution protects individuals' rights to privacy and freedom from unreasonable searches. Accordingly, the government is allowed to intrude into private property and video record conduct only when it can show probable cause that: (a) specific grave crimes are being committed; (b) additional evidence of those crimes is needed; (c) no other means of obtaining that evidence is available; and (d) any intrusion will be narrowly tailored to avoid excessive invasion of privacy.

2. On information and belief, Defendants violated Mr. Doe's constitutional rights on or around January 19, 2019 by spying on him while he was in a state of undress in a private massage room at a private spa facility, despite having failed to meet the constitutional requirements to secretly record him in that private setting.

3. This action is brought as a class action of persons who patronized the Orchids of Asia Day Spa (the "Spa") from January 18, 2019 to January 22, 2019, were videotaped without their knowledge or consent while receiving a lawful massage, and have not been charged with any crime for their patronage of the Spa during the referenced time period.

4. Mr. Doe brings this action to hold Defendants accountable for their knowing violations of his and the class members' constitutional rights.

## NATURE OF THE ACTION

5. This is an action at law and in equity pursuant to 42 U.S.C. § 1983 for deprivation under color of state law of rights, privilege, and immunities secured by the Constitution.

## THE PARTIES

6. Plaintiff John Doe is an individual residing in Jupiter, Florida.

7. The Town of Jupiter Police Department is a law enforcement agency located within the town of Jupiter in Palm Beach County, Florida.

8. Andrew Sharp is employed as a detective by the Jupiter Police, is over the age of 18, on information and belief is a resident of Palm Beach County, Florida, and is being sued in his individual capacity for knowingly violating Mr. Doe's and the class members' constitutional rights. Sharp is the affiant on several publicly-available affidavits sworn in connection with the investigation described below, from which this action arises. Upon information and belief, Sharp was the lead detective in that investigation.

9. David Aronberg is the State Attorney for Palm Beach County, Florida, is over the age of 18, on information and belief is a resident of Palm Beach County, Florida, and is being sued in his individual capacity for knowingly violating Mr. Doe's and the class members' constitutional rights. The Florida State Attorney's Office, 15th Judicial District, is a Florida government agency tasked with the prosecution of criminal offenses in Palm Beach County, Florida, which includes Jupiter, Florida.

## CLASS ACTION ALLEGATIONS

10. John Doe[1] is an adequate class representative because he, like all members of the proposed class, suffered the same injury (invasion of privacy under §1983) caused by the same unlawful conduct (unconstitutional/unlawful video recording), which was committed by the same defendants, at the same location (the Spa), on approximately the same dates (from January 18, 2019 to January 22, 2019). Moreover, like all members of the proposed class, John Doe was recorded without his permission and while receiving *lawful* massage therapy. Neither John Doe nor the other members of the class have been charged with any crimes relating to or arising from the conduct that was being investigated by Defendants.

11. The class is defined as patrons of the Spa from January 18, 2019 to January 22, 2019, who were video-taped without their knowledge or consent while receiving a lawful massage and have not been charged with any crime for their patronage of the Spa during the referenced time period.

12. Damages would be readily ascertainable as to the effect of the unlawful activity on the members of the class.

---

[1] "John Doe" or "Mr. Doe" will refer to the individual. "John Does" and "Jane Does" will refer to the members of the putative class.

13. Questions of law common to the class, include, without limitation, whether:

   a. Defendants deprived the collective rights, privileges, or immunities secured by the Constitution and laws while acting under color of law;

   b. Defendants obtained the "sneak and peak" warrant for the video surveillance recklessly or under false pretenses;

   c. the warrant was constitutional;

   d. Defendants minimized the intrusion upon the class members' constitutionally protected right to privacy;

   e. the class members had a reasonable expectation of privacy in the locations recorded; and

   f. it was lawful, necessary, or permitted by the warrant to indiscriminately video record patrons of the Spa, including while disrobed and receiving lawful massage therapy.

14. Upon information and belief, the size of the class is at least 17 members, including John Doe. Discovery is needed to ascertain the full size of the class.

15. John Doe seeks class certification pursuant to Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants. Moreover, prosecuting separate actions would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

16. John Doe seeks class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

17. John Doe seeks class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. If Defendants are found liable as to one class member, including John Doe, they will be liable as to all class members. Moreover, a class action is required because, adjudicating this matter in separate actions could lead to conflicting determinations of fact and law.

18. The claims of John Doe are typical, if not identical, to those of absent class members.

19. Class counsel consists of highly-regarded law firms and attorneys with extensive experience prosecuting class actions and §1983 claims. Class counsel and John Doe will fairly and adequately protect the interests of the absent class members.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4).

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). The wrongful acts alleged herein occurred in this District.

## FACTUAL BACKGROUND

### I. The Jupiter Police Investigate Suspected Prostitution

22. In October 2018, the Jupiter Police began a prostitution investigation of massage parlors in Palm Beach County.

23. The focus of that investigation was the Spa.

24. Through Internet research, Sharp became suspicious that the Spa was involved in prostitution.

25. Sharp visited an Internet forum called www.rubmaps.com, where individuals freely discuss their sexual experiences at illicit massage parlors.

26. According to Sharp, there were several posts about the Spa on www.rubmaps.com, leading him to believe that the Spa was involved in prostitution.

27. Sharp also claims to have surveilled the Spa for an extended period of time in November 2018, during which he claims to have only seen men enter the Spa, despite the fact that the Spa clearly advertises for female services.

28. Without probable cause and without a warrant, Sharp requested that an inspector from the Florida Department of Health perform a warrantless search of the Spa. That investigator, Karen Herzog, interviewed each of the employees present in the Spa, and took pictures of their identification and a fridge and a freezer.  Herzog also completed a report indicating that the Spa was not used as a place of domicile.

29. After that, Sharp continued to surveil the outside of the Spa.  Specifically, he would watch men enter the Spa and then, upon departure, the Jupiter Police would follow them until they purportedly committed a traffic violation, at which time they were pulled over and interviewed. A number of these men purportedly described receiving low-level sexual services—in particular, manual genital stimulation—in addition to massage, in exchange for money.

30. When shown photographs of the individuals previously identified as the Spa's employees, a number of these men admitted that particular Spa employees had performed massage as well as sexual services on them and/or had accepted payment in exchange for the same.

31. All of these men described receiving towels or napkins from Spa employees with which to clean up their seminal fluid after ejaculating.

32. Jupiter Police personnel rifled through the Spa's trash multiple times and obtained samples from napkins which tested positive for seminal fluid.

33. Jupiter Police personnel obtained a "wage and hour" report from the State of Florida for the Spa's managers, which showed those managers' reports of their own income. Sharp would later describe this report as "evidence that the majority of the income generated by the [Spa] was a result of prostitution crimes . . . and [the managers] were deriving support from the money generated from the prostitution crimes being committed by and through the [Spa]."

34. Sharp also "determined that the Comcast cable bill and the Florida Power and Light bill for the [Spa] were being paid by this business," which he claimed provided further evidence that the Spa's president was "deriving support … through the crimes of prostitution she is engaging in and perpetuating [*sic*] through her employees."

35. The Jupiter Police also identified and sought to search bank accounts and deposit boxes belonging to the Spa and its management.

36. In short, within weeks of commencing its investigation, the Jupiter Police and Sharp had obtained overwhelming evidence that certain masseuses were engaging in low-level prostitution at the Spa, and that the Spa's managers were both participating in those sex acts and deriving support from others' low-level prostitution, and therefore had no basis or need to video record Mr. Doe while he was undressed and receiving a massage in a private massage room.

**II.    The Jupiter Police Install Spy Cameras In The Massage Rooms At The Spa**

37. On January 18, 2019, upon information and belief, the Jupiter Police caused a false "suspicious package" warning to be issued for the Spa. Having evacuated the Spa, the Jupiter Police

then entered and installed video monitoring equipment in rooms in which clients received massages, as well as the lobby, pursuant to a search warrant.

38. The Spa and its employees and managers were given no formal notice of the issuance of the warrant or the placement of video recording equipment on its premises.

39. The Jupiter Police were able to monitor and record the activity in the Spa's massage rooms in real time, and did so for a period of approximately five days, starting on January 18, 2019.

### III. Defendants Wrongfully Record Mr. Doe

40. On or around January 19, 2019. Mr. Doe entered the Spa and received a massage, while undressed, in a private massage room.

41. Mr. Doe had a reasonable expectation of privacy when he entered that private room, on private property, to receive treatment from a licensed healthcare practitioner—namely, a massage therapist.

42. From January 18, 2019 to January 22, 2019, John Does and Jane Does of the class also patronized the Spa and received lawful massages while undressed in private massage rooms.

43. Each of the John and Jane Does of the class had a reasonable expectation of privacy.

44. On information and belief, the Jupiter Police recorded Mr. Doe, John Does, and Jane Does while undressed and receiving massages. Mr. Doe, John Does, and Jane Does did not engage in any sexual or illegal activity at any time while receiving their massages at the Spa.

45. Upon information and belief, the Jupiter Police shared these recordings with other individuals and organizations pursuing or acting in parallel with the Investigation, including officers employed by the Jupiter Police, Aronberg, and, on information and belief, the Martin County Sherriff and the Martin County DA, who were running a related investigation.

**IV.    The Jupiter Police Charge Individuals With Misdemeanor Solicitation of Prostitution**

46. On February 19, 2019, about a month after its illegal surveillance operation finished, law enforcement raided the Spa, executed several other search warrants, and arrested its two managers.

47. A few days later, the Jupiter Police Department filed misdemeanor charges against a number of alleged Spa customers, charging them with solicitation of prostitution.

48. Mr. Doe, John Does, and Jane Does have not been accused of or charged with any crime.

**V.    Public Access to View Surveillance Video**

49. Pursuant to Florida's Public Records Law, "all state, county, and municipal records are open for personal inspection and copying by any person." Fla. Stat. § 119.01(1).

50. The State has received hundreds of requests for the surveillance videos taken by Defendants. While the media intervening in the underlying criminal actions have attested they are not seeking video of lawful activity, the class members are concerned that the videos of them will be released to the media or other members of the public pursuant to the hundreds of public record requests received by the State.

51. Defendants indiscriminately video recorded John Doe knowing that they were doing so unlawfully and knowing the high risk that the video could be publicized, including through Florida Public Record Laws.

52. Defendants knew that the risk of public access demands would be particularly acute in the present case, as certain of the defendants charged with misdemeanor solicitation of prostitution include high profile individuals.

53. Despite knowing this, Defendants made no effort to protect John Doe's privacy rights, which they had already violated. On the contrary, they admitted that the surveillance footage

of innocent victims like Mr. Doe would be of little or no value to any party to the criminal proceedings. Nonetheless, Defendants agreed to release the surveillance footage without objection.

54. Then, after promising in open court that they would not release the surveillance absent a court order directing them to do so, Defendants filed a notice of intent to release the surveillance footage to the media. This lead to a hearing before Judge Hanser in *State v. Zhang* and *State v. Wang*, Case No. 50-2019-CF-001606 (Circuit Court for the 15th Judicial District in and for Palm Beach County, Florida), who ordered on April 17, 2019 that the surveillance footage could not be released absent a direct order from him permitting Defendants to do so.

55. Within 24 hours of that order, however, the surveillance footage, which was exclusively in the possession and control of Defendants, suddenly was being shopped to various news outlets. Upon information and belief, the individual(s) shopping the video surveillance are involved in law enforcement. The Defendants either have recklessly allowed one of their employees to steal and attempt to sell the video or, worse, are intentionally seeking to release the video to force a plea bargain from the defendants while trampling the privacy rights of the Does.

## COUNT 1

**(Violation of 42 U.S.C. § 1983)**

56. Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

57. Mr. Doe and the class members had a reasonable expectation of privacy when they were at the Spa, including while in private rooms located on private property at the Spa.

58. The Defendants' actions, including their monitoring and recording of Mr. Doe's and the class members' conduct while located in a private room located on private property, deprived Mr. Doe and the class members of their rights, privileges, and immunities secured and guaranteed by the United States Constitution.

59. Specifically, and among other things, Defendants' actions:

   a. violated Mr. Doe's and the class members' right to be free from unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution;

   b. violated Mr. Doe's and the class members' Fourteenth Amendment Right to procedural due process;

   c. violated Mr. Doe's and the class members' constitutional right to privacy; and

   d. constituted a gross abuse of power that is shocking to the conscience.

60. In doing so, the Defendants acted willfully, maliciously, and in violation of law, established practices, and their duties.

61. As a result of Defendants' actions, Mr. Doe and the class members suffered invasion of his privacy, embarrassment, loss of business opportunities, and substantial expenses—including legal fees and court costs—in vindicating their rights.

62. This Count is brought within the time permitted by law.

63. Mr. Doe has retained undersigned counsel to represent his and the class members in this action to vindicate their rights.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Doe requests the Court certify the proposed class and enter judgment:

(a) awarding money damages;

(b) awarding punitive and exemplary damages;

(c) awarding reasonable costs and expenses incurred in this action, including, to the extent applicable, counsel fees;

(d)     enjoining the Defendants from publicizing or otherwise transmitting to any other person or organization, and ordering them to permanently and completely destroy, any and all video, audio, photographic, or other recordings, or any images or other records derived from or based on recordings, made inside the Spa;

(e)     ordering the Defendants to identify any person or organization to whom they previously transmitted or granted access to, or who may have accessed, any and all video, audio, photographic, or other recordings, or any images or other records derived from or based on recordings, made inside the Spa;

(f)     requiring the Defendants to submit affidavits to the Court, within fourteen (14) days of the entry of judgment, confirming and providing specific details of their compliance with the Court's order described above in (d), and providing the information described above in (e); and

(g)     granting such other relief as the Court deems just and proper.

Dated: April 19, 2019                                            Respectfully submitted,

                                                                **REED SMITH LLP**

By:     */s/ Edward Mullins*
        Edward M. Mullins
        Fla. Bar No. 863920
        James C. McCarroll
        (Pending Admission *Pro Hac Vice*)
        Jordan W. Siev
        (Admitted *Pro Hac Vice*)
        Daniel Alvarez Sox
        Fla. Bar No. 108573
        emullins@reedsmith.com
        jmccarroll@reedsmith.com
        jsiev@reedsmith.com
        dsox@reedsmith.com
        1001 Brickell Bay Drive, 9th Floor
        Miami, Florida 33131
        Tel: (786) 747-0200
        Fax: (305) 747-0299

-and-

Joseph Tacopina, Esq.
(Admitted *Pro Hac Vice*)
The Law Offices of Tacopina & Seigel
275 Madison Ave., Ste. 3500
New York, NY 10016
Tel: (212) 227-8877
Fax: (212) 619-1028
jtacopina@tacopinalaw.com

*Attorneys for John Doe*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on April 19, 2019 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record.

    */s/ Edward M. Mullins*
    Edward M. Mullins, Esq.