Page 1

1

2            IN THE COUNTY COURT OF THE FIFTEENTH

3      JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

4            CASE NO.:  50-2019-MM-002346-AXXX-NB

5            DIVISION B: CNTY CRIM B (COUNTY)

6

7    STATE OF FLORIDA,               )

8                 Plaintiff,         )

9    vs.                            )          VOLUME I

10   ROBERT KRAFT                    )

11                 Defendant .       )

12   ------------------------------/

13            TRANSCRIPT PROCEEDINGS HELD BEFORE

14            THE HONORABLE LEONARD HANSER

15                 (Morning Session)

16

17   DATE:  Friday, April 26, 2019

18   PLACE: Palm Beach County Courthouse
          205 N. Dixie Highway
19        West Palm Beach, Florida 33401

20   TIME:  9:30 a.m. - 12:45 p.m.          **EXHIBIT A**

21

22                 LAWYERS' REPORTING, INC.
          1655 Palm Beach Lakes Boulevard, Suite 405
23             West Palm Beach, Florida  33401
               (561) 242-0023  (800) 326-9690
24             www.lawyersreporting.com
          Copyright 2019 Lawyers' Reporting, Inc.
25                 All Rights Reserved

```
 1

 2    APPEARANCES:

 3

 4    ON BEHALF OF THE STATE OF FLORIDA:

 5              OFFICE OF THE STATE ATTORNEY
               15TH JUDICIAL CIRCUIT
 6             BY:  JUDITH ARCO, ASA
                   GREG KRIDOS, ASA
 7                 ELIZABETH NETO, ASA
               401 North Dixie Highway
 8             West Palm Beach, Florida 33401

 9

10    ON BEHALF OF DEFENDANT ROBERT KRAFT:

11             ATTERBURY, GOLDBERGER & WEISS, P.A.
               BY:  JACK A. GOLDBERGER, ESQUIRE
12             250 South Australian Avenue, Suite 1400
               West Palm Beach, Florida 33401

13

14             QUINN EMANUEL URQUHART & SULLIVAN, LLP
               BY:  WILLIAM A, BURCK, ESQUIRE
15                 SANDRA L MOSER, ESQUIRE
               1300 I Street NW, Suite 900
16             Washington, D.C, 20005

17
               ALEX SPIRO, ESQUIRE (pro hace vice)
18             51 Madison Avenue, 22nd Floor
               New York, New York 10010

19

20    ON BEHALF OF THE INTERVENORS:
21
               THOMAS & LOCICERO
22             BY:  DANA J. McELROY, ESQUIRE
               915 Middle River Drive, Suite 309
23             Fort Lauderdale, Florida 33304

24

25
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

```
 1

 2    APPEARANCES:

 3

 4    ON BEHALF OF THE INTERVENORS:   (cont.)

 5            ATHERTON MCAULIFFE & REEDER, P.A.
              BY:  L. MARTIN REEDER, JR., ESQUIRE
 6            224 Datura Street, Suite 815
              West Palm Beach, Florida 33401
 7

 8            SHULLMAN FUGATE
              BY:  ALLISON LOVELADY, ESQUIRE
 9            2101 Vista Parkway, Suite 4006
              West Palm Beach, Florida 33411
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 4

```
1

2                          — — —

3                     I N D E X

4                         - - -

5                     VOLUME I                    PAGE

6

7   TESTIMONY OF DETECTIVE ANDREW SHARP

8       Direct Examination by Mr. Spiro        118

9

10

11                        - - -

12                 E X H I B I T S

13                        - - -

14                                              PAGE

15

16  Defendant's Exhibits 1 - 3 In Evidence - W/O Obj     31

17  Defendant's Exhibits 4 - 5 In Evidence - W/O Obj     54

18  Defendant's Exhibit 6 In Evidence - W/O Obj          55

19  Defendant's Exhibit 7 In Evidence - W/O Obj          74

20  Defendant's Exhibit 8 In Evidence - Over Obj        101

21  Defendant's Exhibit 9 In Evidence - W/O Obj         103

22  Defendant's Exhibit 10 In Evidence - W/O Obj        171

23  Defendant's Exhibit 11 In Evidence - W/O Obj        185

24

25
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 5

```
 1
 2                     P R O C E E D I N G S
 3
 4          THE COURT:  Good morning everyone.
 5          MR. SPIRO:  Good morning, Your Honor.
 6          THE COURT:  Please be seated.  All right.  Are the
 7     parties ready to proceed?
 8          MR. KRIDOS:  The State's ready, Your Honor.
 9          MR. GOLDBERGER:  Defense is ready, Your Honor.
10          THE COURT:  Okay.
11          MR. GOLDBERGER:  Your Honor, I don't know what the
12     Court's order wants to be, but I do have a preliminary
13     matter that arose last night that I think needs to be
14     dealt with right now.
15          THE COURT:  Sure.
16          MR. GOLDBERGER:  So, last evening at 4 o'clock, the
17     State filed a motion to amend their response to the motion
18     to suppress that they filed.  This came to us at
19     4 o'clock, seventeen hours before this hearing was to
20     begin.  And I think this maneuver by the State effects
21     this entire process and we need to ask the Court to
22     intervene in this matter.
23          To put this maneuver in context for the Court, we
24     filed our motion to suppress on March 28th.  One month ago
25     we filed the motion to suppress before Your Honor.  Your
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1   Honor was kind enough to give us an entire day for a

2   hearing today and we started preparing for that hearing.

3        On April 8th, two and a half weeks ago, the State

4   filed their response to the motion to suppress.  So, two

5   and a half week ago, the defense filed their motion to

6   suppress and the State filed their response.  Two and a

7   half weeks ago the issues were identified, they were

8   locked in, and we began preparing for this hearing.

9        Like I said, last night, seventeen hours before we

10  were going to be here before Your Honor for an entire day,

11  we have enough equipment in here to stock a Best Buy,

12  we're ready to go and we get this pleading from the State.

13  And the State files it and they call it an amendment to

14  their response for our motion to suppress.

15       THE COURT:  Does anybody have a copy of this?  I mean,

16  I haven't seen it.

17       MR. GOLDBERGER:  Well, I'm glad to hear that, Your

18  Honor, because we saw it last night at 4:00 p.m.

19       THE COURT:  I'd like to see it.

20       MR. GOLDBERGER:  Well, you may need some help lifting

21  it, Your Honor, because it's fifty pages long.

22       THE COURT:  Maybe I judged -- you know, maybe I'm

23  wrong.  Maybe I did see it.

24       MR. KRIDOS:  Judge, we did deliver it to your judicial

25  assistant last night.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1            THE COURT:  Yeah, maybe I did.  Maybe that's the one I

2       saw.

3            MR. GOLDBERGER:  So, Your Honor --

4            THE COURT:  I did read it last night if this is the

5       same document.

6            MR. GOLDBERGER:  You did or did not?

7            THE COURT:  I did read it.

8            MR. GOLDBERGER:  Okay.  Well, I'm glad Your Honor did.

9       We tried --

10           THE COURT:  I did read this.  Here you go.

11           MR. GOLDBERGER:  We tried to read it.  We obviously

12      have not had an opportunity to respond to it, to have our

13      team research these new issues, Your Honor, that have been

14      created and effected and placed into this matter.  Matters

15      and issues that, as of last night at 4 o'clock, we had no

16      idea that we would have to deal with today.

17           So, these new issues have been raised and all of a

18      sudden here we are today in front of Your Honor and we're

19      stuck with a fifty page document that was filed last

20      night.

21           We did the only appropriate thing based on the State's

22      filing and we filed a motion to strike what we consider to

23      be the sham pleading.  This -- this maneuver by the State,

24      Your Honor, it tramples on every concept of due process

25      and the right to a fair hearing.  And the due process

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    clause of the United States Constitution and the Florida

2    Constitution requires that the motion be stricken.

3         And, Your Honor, as the gatekeeper in this proceeding,

4    you can't condone this.  I mean, we're not here to be

5    trying cases by ambush and we are just -- it's just

6    incredible the State would pull this.  They've had two and

7    a half weeks since they filed their response.  If they

8    wanted to amend to do something, they could have called us

9    and say, hey listen, we want to amend.

10        On the eve of this hearing, Your Honor, the State

11   files this motion.  We filed our motion to strike and we

12   ask the Court to invoke its gatekeeper functions in this

13   matter and strike the State's response, this attempted

14   amendment as a sham pleading and it's not worthy of being

15   in this courtroom.

16        THE COURT:  Mr. Kridos?

17        MR. KRIDOS:  Judge, we are obviously always directed

18   by case law and statutory law and apart from

19   Mr. Goldberger explaining to you why and that it should be

20   stricken, I'd ask him if he has any case law or statutory

21   law, any supporting law whatsoever for support of his

22   position.

23        And, Judge, beyond that, we were not asked by the

24   Court to file a response.  We filed our response.  Every

25   single issue in this motion -- in our response, the

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    defense brought up.  In fact, we obviously compared and

2    contrasted the defense cases for a claim of expectation of

3    privacy.  We created the document for Your Honor.

4         Procedurally where we're at is obviously defense has

5    the burden to go forward.  It's presumed that the search

6    warrant was lawfully issued by Judge Coates because he's a

7    detached and neutral magistrate.  And since there's a

8    search warrant in this case, defense has a burden first

9    before they can do anything else, Judge, and they cannot

10   even breathe in the direction of an expectation of

11   privacy, they have to show the Court and demonstrate to

12   the Court and prove to the Court that defendant Robert

13   Kraft has standing to make an allegation that his Fourth

14   Amendment rights were violated, that he actually had a

15   legally recognized expectation of privacy when he was in

16   the spa paying for sex from the prostitutes inside the

17   spa.  He has to prove that he has that expectation of

18   privacy before he can even argue his motion to suppress.

19        But beyond all that, Judge, procedurally they know

20   it's their burden.  Judge, you know they subpoenaed -- who

21   subpoenas thirty people for a motion to suppress?  You

22   don't see thirty people on homicide.  That's their

23   business.  We're not getting through this today if Your

24   Honor decides to go forward.  But the State would first

25   and foremost, beyond everything else, under the Florida

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1   Supreme Court, Judge, the ruling is clear it's their

2   burden and they cannot make that argument unless they can

3   show the Court that he had an expectation of privacy.

4       With that said -- with that said, procedurally they

5   would have gone forward.  Your Honor would make a ruling

6   obviously as to whether or not they met their burden.  I'm

7   not going to assume they meet their burden because the

8   State doesn't believe that they can, but if you rule that

9   they've met their burden, then obviously the burden now

10  shifts to the State to prove to the Court that the search

11  warrant was lawfully issued.

12      And there's a lot that has to go on.  Judge, this

13  response was written both for the defense to realize that

14  they don't have an expectation of privacy.  And the other

15  thing, Judge, is obviously for some -- not guidance,

16  Judge, but to assist the Court in its decision as to -- to

17  it's informed decision as to what he's going to rule.

18      But the problem with this case the entire time is they

19  stand up here, they yell, they shout, they scream, but

20  they never give it any legal support, case law or

21  otherwise, Judge.  And I think that's the first step they

22  have to get to before they can honestly make a good faith

23  argument to the Court to have this response right now.

24      THE COURT:  Okay.  Let me say a couple of things about

25  the request from the defense.  The bottom line is the

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 11

1     motion will be going forward today.  I read, as I said,

2     read the State's response last night.  I don't think there

3     are any arguments that were raised in the State's response

4     that surprised me.  And if it didn't surprise me, I

5     suspect it did not surprise the defense as well.  We have

6     excellent attorneys who are pretty light on their feet.  I

7     don't suspect that what was raised in the State's response

8     will be a great obstacle to the defense going forward.

9         If, in fact, there are issues that the defense feels

10    that after we have concluded our hearing, that the defense

11    wants to supplement their response, I'll give you that

12    opportunity, okay?  But the Court is bound by the case law

13    as it is.  And even if there's case law that neither side

14    cites to the Court that the Court finds persuasive, I'm

15    still bound by the cases as the Court finds persuasive.

16    So, I appreciate all of your efforts.  We will be going

17    forward.

18        MR. GOLDBERGER:  And I wasn't suggesting that we

19    don't.  We want to go forward today, Your Honor, but I

20    just think concepts of a fair hearing, we have a right to

21    be on notice as to what the State is alleging.  And they

22    had two and a half weeks.  I don't know what they were

23    doing for the last two and a half weeks, but to get this

24    thing at 4 o'clock last night --

25        THE COURT:  I know what I was doing for the last two

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 12

1    and a half weeks.  But I think that the notion of the

2    defense being surprised, the surprise would be fairly

3    minimal.

4         MR. GOLDBERGER:  And just one last point as to

5    Mr. Kridos's comments, Your Honor, and it's kind of a

6    collateral issue, but the suggestion that we have thirty

7    witnesses sitting here, we subpoenaed thirty witness and

8    we've tried to arrange that and we advised witnesses that

9    they can contact my office to see if they're needed, but

10   we tried to work with the State on this matter.  And I

11   recognize that we did not demand discovery, but for common

12   decency and for orderly conduct of this hearing, we asked

13   the State to identify certain witnesses that would be

14   relevant to some of the issues we want to present and

15   they've declined to help us with that.  So, that's why we

16   had to subpoena additional witnesses.

17        THE COURT:  Okay.  Well, --

18        MR. KRIDOS:  Judge, can I address that issue again?

19        MR. GOLDBERGER:  I'm just telling --

20        THE COURT:  Can we move on?

21        MR. GOLDBERGER:  There's nothing to address.  We have

22   witnesses subpoenaed but --

23        THE COURT:  Well, hang on a second.  I've got a number

24   of things we need to address before we get to the motion

25   to suppress.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 13

1        MR. KRIDOS:  So, Judge, are you making a finding that

2    Defendant Robert Kraft has an expectation of privacy?

3        THE COURT:  No.  No, no.  I'm not finding that at all.

4    I am saying that the motion to suppress will go forward

5    and the parties will present their arguments and their

6    facts of the case to the Court.  That's all.  I'm not

7    making any -- I haven't heard anything yet.  All I've seen

8    are written documents.

9        MR. KRIDOS:  And with all due respect for the Court,

10   because I don't want to sound argumentive, I'm just asking

11   the Court do you not believe that the decision as to

12   whether or not he has an expectation of privacy needs to

13   be determined before he can make -- before we go forward

14   with the motion to suppress to make the argument that his

15   Fourth Amendment violation -- the Fourth Amendment was

16   violated for his rights?

17       THE COURT:  Would the defense like to respond?

18       MR. GOLDBERGER:  Mr. Burck is going to address that

19   issue, Your Honor, and he's prepared to do that at this

20   time.

21       MR. KRIDOS:  Because, Judge, honestly the State's

22   position is that their motion to suppress should be

23   stricken because they have not proven that the defendant

24   has an expectation of privacy in the massage parlor.  And

25   the State believes that it supplied the Court and the

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    defense, and they made their argument for it.

2        The State believes that it supplied the Court with the

3    case law, a half a dozen United States Supreme Court

4    rulings, Florida Supreme Court rulings that break down the

5    expectation of privacy for every individual that could be

6    in many different circumstances.  And it's clear, based on

7    the United States Supreme Court rulings and based on the

8    Florida Supreme Court ruling, an individual -- forget

9    Defendant Robert Kraft.  An individual who is in a

10   business establishment with no ties to that establishment,

11   much less there to engage in a crime, has absolutely no

12   expectation of privacy.  And, Judge, if you want further

13   on that, I can give that to you.  I have some information

14   from --

15       THE COURT:  Is there some additional case law?

16       MR. KRIDOS:  No.  Actually, Judge, I think it's

17   striking to know what is on the video to tell Your Honor,

18   even if there was any breath towards an expectation of

19   privacy, why he doesn't have that.  And I would like for

20   the record, Judge, to be able to put that on if you'll

21   allow me to do that.

22       THE COURT:  Mr. Burck?

23       MR. BURCK:  Your Honor, just to talk a little bit

24   about what we expect to happen today.  We do have thirty

25   witnesses subpoenaed.  As Mr. Goldberger said, we don't

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 15

1      expect to have thirty witnesses.  We'll have far fewer,

2      but there still will be a lot of witnesses, so we agree

3      with the Court that we should move ahead with the hearing

4      because we don't want to waste the Court's time.

5          All of the legal issues that are being raised can be

6      addressed at the end of the hearing in a supplemental

7      briefing or however the Court wants.  You have read tons

8      of paper, a lot of cases.  We don't think it's a good use

9      of your time, Your Honor, to go through all of that here.

10         Just briefly, we obviously disagree with the State

11     that there's no expectation of privacy.  We've cited

12     cases.  We cited statute in Florida that says a place like

13     this had -- there is, in fact, a reasonable expectation of

14     privacy.  We think that's dispositive.  But again, Your

15     Honor, we don't think this is the time to go into all of

16     those legal issues and waste hours where we could be

17     putting witnesses on so you can hear the facts.

18         And, Your Honor, of course we have a counter position

19     which we're not asking the Court to decide before you have

20     a hearing which is we think that the whole warrant is

21     unlawful.  So, we have the same issue from a different

22     perspective and we're not asking the Court to do that

23     because we think it's much more useful for Court to first

24     hear from the witnesses.  Obviously, no one is waiving any

25     rights by hearing the witnesses and of course you'll make

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    a decision on the legal issues as well as the facts and we

2    think, of course, the facts will be helpful in making your

3    decision, Your Honor.

4         So, we agree with the Court.  We should just proceed

5    with the hearing and, of course, the legal issues will

6    remain and everyone can argue those once the Court has the

7    benefit of the facts.

8         MR. KRIDOS:  Judge, of course they want to go forward

9    with the hearing and overlook the United States Supreme

10   Court ruling and the Florida rulings that the burden is on

11   them before they can get to that argument to prove to Your

12   Honor that he had an expectation of privacy.

13        THE COURT:  Well, at this point, there's been no

14   evidence presented from either side.  So, if there's a

15   burden, doesn't it suggest that I need to hear from the

16   side on whom the burden is placed?

17        MR. KRIDOS:  No, Judge, because you know the facts

18   and --

19        THE COURT:  I disagree with you, Mr. Kridos.  This

20   hearing will go forward.

21        MR. KRIDOS:  All right, Judge.

22        THE COURT:  Okay.  Thank you.

23        MR. BURCK:  Your Honor, I think there a couple of

24   other issues which we can dispose pretty quickly, at least

25   from our end.  There were some subpoenas duces tecum for

1     documents that the State was challenging.  Your Honor,

2     rather than waste time, we will withdraw those subpoenas

3     so we don't have to deal with those.

4          THE COURT:  Okay.  So, this is withdrawn?

5          MR. BURCK:  Withdrawn.

6          THE COURT:  And just for the record -- just for the

7     record, I'm looking at motion to quash defense subpoena

8     duces tecum served on cellular telephone service provider.

9     Were you addressing that one?

10         MR. BURCK:  Yes, Your Honor, that one.

11         MR. KRIDOS:  You're withdrawing both?

12         MR. BURCK:  Withdrawing that one, yes.  We're

13    withdrawing all the subpoenas duces tecum.  There's also

14    separately, Your Honor, subpoenas for witnesses.

15         THE COURT:  Motion to quash twenty-six subpoenas

16    served on witnesses demanding tangible evidence and

17    determine et cetera, et cetera, which was filed

18    April 22nd.  The first one I mentioned was filed

19    April 23rd --

20         MR. BURCK:  Right.

21         THE COURT:  -- where the Court is not being asked to

22    address those motions.

23         MR. BURCK:  Your Honor, actually the first -- let me

24    just explain the one for the twenty-six witnesses.  The

25    State characterizes that in some way as a subpoena duces

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    tecum.  It was not.  The subpoena for witnesses is to

2    appear.

3        THE COURT:  I agree with the defense on that.  There's

4    no requirement for anybody to produce anything tangible

5    based on the documents that the defense asserts.

6        MR. KRIDOS:  You agree with the State or the defense?

7        THE COURT:  I agree with the State.  Well, I think --

8        MR. BURCK:  We both said the same thing.

9        THE COURT:  I mean, I think you both agree that what

10   was served were witness subpoenas, not subpoenas duces

11   tecum.

12       MR. KRIDOS:  They hid the subpoena duces tecum in the

13   letter.

14       MR. BURCK:  That's not true.  Mr. Kridos knows it's

15   not true because we said in our response, Your Honor, that

16   we were only asking people to bring the documents.  If

17   they don't want to bring them, they don't have to.

18       MR. KRIDOS:  It's a moot point, Judge, if they're

19   withdrawing that.

20       THE COURT:  Right.  The only thing that anybody is

21   obligated to do based on what the defense did for these

22   twenty-six people is to appear and not to produce

23   documents, not to produce anything tangible, just to

24   appear.

25       MR. BURCK:  And, Your Honor, on that point, just to be

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B66E6C26A46

1   clear, we're not withdrawing the subpoenas for witnesses

2   because that would mean all witnesses could leave.

3       MR. KRIDOS:  We're not asking for that.

4       MR. BURCK:  But we're just being clear.  We didn't ask

5   for it as you said.  We didn't ask for any documents to be

6   produced.  We asked them if they would mind bringing the

7   files.

8       THE COURT:  It was a request, not an order.

9       MR. BURCK:  Thank you, Your Honor.

10      MR. KRIDOS:  And are you withdrawing the subpoenas

11  that were served to AT&T?

12      MR. BURCK:  Yes, I just said that.

13      MR. KRIDOS:  All right.  So, has AT&T sent you any

14  records?

15      MR. BURCK:  No.

16      MR. KRIDOS:  So, how do we stop them from sending you

17  the records because they have a subpoena?  I'm going to

18  have to ask that Judge --

19      MR. BURCK:  Your Honor, I can withdraw the subpoena

20  and represent to the Court that we will withdraw the

21  subpoena and if we receive records from AT&T, Your Honor,

22  we will --

23      MR. KRIDOS:  Judge --

24      THE COURT:  My recollection is that AT&T said they

25  would respond by April 28th.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 20

1          MR. KRIDOS:  By Sunday the 28th.

2          THE COURT:  Right.  So, I think that what I need to do

3     is to have someone prepare an order for the Court which

4     states quite simply that on the basis that the defense has

5     withdrawn its request and is withdrawing the subpoenas

6     served on AT&T, that AT&T is not obligated to respond to

7     those subpoenas and -- yes, sir?

8          MR. KRIDOS:  Could you put stronger language in there

9     that they are not to send any records to the defense?

10         MR. BURCK:  Your Honor, I can make this actually very

11    easy.  AT&T has already told us they're not sending us

12    anything without a court order.  So, we can handle this,

13    Your Honor.

14         THE COURT:  I'm a little concerned because now AT&T

15    has said two different things.

16         MR. JANOUSEK:  Your Honor.

17         THE COURT:  Do you represent AT&T?

18         MR. JANOUSEK:  No, sir.  I represent Detective Sharp

19    who is the subject of one of those subpoenas.  The defense

20    subpoenaed his personal cellphone records with one of

21    those subpoenas.  We are fine if defense wants to withdraw

22    that subpoena, but we absolutely do request that something

23    be put in writing in the record today and issued to AT&T

24    as soon as possible because, as Your Honor just

25    recognized, pursuant to that letter to my client, they're

Page 21

1     going to be issuing records as soon as this Sunday.

2          THE COURT:  My concern is that AT&T, as large as an

3     organization as it is, may not catch up with what's

4     happening here today timely.  And I do think that the

5     Court needs to enter an order directing that AT&T not

6     respond to those subpoenas.

7          MR. JANOUSEK:  Thank you, Judge.

8          MR. BURCK:  We can draft that and --

9          THE COURT:  Somebody please draft that order so I can

10    sign it today and give it to the parties and then the

11    parties can do with it as they see fit.  But that is the

12    order of the Court.

13         MR. BURCK:  All right.  Thank you, Your Honor.

14         Your Honor, the last point of the twenty-six witnesses

15    just for the record, we did ask the witnesses to bring the

16    documents.  Mr. Kridos told us that he was directing them

17    not to, so just so the Court understands why there will be

18    no -- no one is going to be bringing documents unless they

19    defy Mr. Kridos.

20         THE COURT:  Right.  Okay.  I think we've taken care of

21    almost all of the preliminary matters.  There is one

22    manner remaining which is I have a motion to clarify the

23    protective order, so can we address that?

24         MR. BURCK:  Sure, Your Honor.  So, Your Honor issued a

25    protective order earlier this week, or last week.  I'm

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 22

```
 1    sorry, Your Honor, I think it was earlier this week.  And

 2    the order, of course, protects the video pending the

 3    outcome of the case.  The one thing that -- it does not

 4    appear to us, reading the order, that there would be any

 5    waiver of that protection if we were to seek discovery in

 6    the case.  And, particularly, we don't read it that way

 7    because the Court says that in order to have a fair trial

 8    we would, you know, that's the basis for the protective

 9    order.  So, I would suspect the Court would want the

10    defendant to have discovery prior to a trial.

11         THE COURT:  Yeah.

12         MR. BURCK:  So, we assume that that means we can seek

13    discovery.  We're not going to seek the video, Your Honor,

14    but we think we can seek discovery under the protective

15    order and proceed in the normal course without risk of

16    having the video now in the public record given

17    effectively.

18         THE COURT:  Mr. Kridos, did you wish to respond?

19         MR. KRIDOS:  If I understand Mr. Burck correctly, he

20    just intends on filing a demand for discovery?

21         MR. BURCK:  That's right.  But I want to make it clear

22    that we are doing that under the understanding or belief

23    that the Court's order would not then be somehow waived or

24    abrogated because we've asked for discovery.  We don't

25    read the Court order that way, we just want to make sure
```

1    because the State has made discovery a big issue.

2         THE COURT:  The Court order is essentially based on

3    the inherent authority of the Court to control trial

4    proceedings.  And that's why I ruled the way that I did.

5    That was the basis for my ruling.  If, in fact, there's

6    discovery, then it implicates Chapter 119.

7         MR. BURCK:  Yes, sir.

8         THE COURT:  It may also implicate Rule 2.420, the

9    judicial records rule.

10        MR. BURCK:  Right.

11        THE COURT:  However, the intent of the Court actually

12   doesn't change, even if Chapter 119 and Rule 3.220 or

13   2.420 are implicated.  Actually, that would make it easier

14   for the Court because then I would have clear statutory

15   basis, I believe, and also a very clear basis on the

16   criminal rules to have ruled the way I did.  So, if there

17   is discovery that's provided, including the videotape, it

18   is certainly the intent of this Court that that videotape

19   not be disclosed to the public.

20        MR. KRIDOS:  And we told Judge Marx the same thing,

21   Judge.  And based on the order of Your Honor and based on

22   the order of Judge Marx, we're not releasing the videos to

23   anybody but the defense.

24        THE COURT:  Okay.  So, I think we're clear on that?

25        MR. BURCK:  Yes, Your Honor.  Thank you very much.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 24

1    Your Honor, we have nothing else to say at this point and

2    we can proceed to our first witness.

3        MS. McELROY:  May I be heard briefly, Your Honor?  I'm

4    sorry.

5        THE COURT:  Ms. McElroy?

6        MS. McELROY:  Yes, Dana McElroy on behalf of one group

7    of the intervenors.  We just would like to clarify and

8    make sure that the protective order only covers the video

9    and if there are other items of discovery, that that order

10   does not apply to those as of yet.

11       THE COURT:  If there are other items of discovery, I

12   am not aware of them.  If the parties believe that there's

13   an issue with other items of discovery, I'm sure they will

14   bring it to the Court's attention.  But I ruled only on

15   the video in that regard.

16       MS. McELROY:  Thank you, Your Honor.

17       MR. BURCK:  Thank you, Your Honor.  Mr. Spiro will be

18   taking our first witness.

19       MR. KRIDOS:  Judge, the State would invoke the rule.

20       THE COURT:  Okay.  The rule has been invoked which

21   means that those who are witnesses to this proceeding who

22   are not parties are excused from the courtroom while

23   testimony is being given.  The rule also prohibits those

24   witnesses from discussing the case among themselves until

25   the Court has issued a ruling on the pending motion.  Of

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 25

1    course, witnesses can talk to their attorneys.  That's

2    different.  So, if there are witnesses here who have been

3    subpoenaed to testify, you will now be excused from the

4    courtroom.

5         MR. GOLDBERGER:  Your Honor, just as a recognized

6    exception to the rule, we do have an expert witness that's

7    in the courtroom.

8         THE COURT:  An expert witness?

9         MR. GOLDBERGER:  Yeah, he's an expert.  He's going to

10   testify on police practices.  And in order for him to

11   render his opinion, we would ask that he would be allowed

12   to sit in the courtroom for this witness.

13        MR. KRIDOS:  And, Judge, I'm sure the Court is very

14   familiar as is Mr. Goldberger.  He has every right to sit

15   in the courtroom when another expert is testifying.  He

16   has no right to sit in a courtroom when a lay witness is

17   testifying.

18        MR. GOLDBERGER:  I don't believe that's the law, Your

19   Honor.  Your Honor, an expert has to be able to render an

20   opinion.  The only way he can render an opinion regardless

21   of what another expert says, and I don't think the State

22   has an expert in this case, so it's a nonissue.  The

23   expert needs to render an opinion, he needs to hear the

24   testimony.  It's been recognized throughout -- I don't

25   have the cases here, but it's just a matter of common

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 26

1    sense that for an expert to be able to render an opinion,

2    he needs to listen to the testimony.  So, we would ask

3    permission to allow the expert sit in the courtroom.

4        MR. KRIDOS:  Judge, I could not disagree with

5    Mr. Goldberger more.  It's very clear by the case law that

6    he has every right to sit in here when another expert is

7    testifying, but absolutely no right like any other witness

8    to sit in here and listen to an officer.  That was their

9    responsibility to get him the materials for him to review

10   to make an opinion.  He does not have a lawful right to

11   sit in here and listen to the lay witnesses so he can get

12   up on the stand and impeach them.  It's only the right

13   when there's another expert that's testifying.  And we

14   didn't know they were going to call an expert, or we would

15   have had the case law, Your Honor.

16       THE COURT:  Yeah, this is something that kind of takes

17   the Court in left field here.  Anybody have any case law?

18       MR. KRIDOS:  Judge, I'm going to ask the Court to give

19   us some time because, Judge, in all fairness to the Court,

20   they can't have somebody here for the sole purpose of

21   impeaching a live witness in court.

22       MR. GOLDBERGER:  It's not a question of impeachment,

23   Your Honor.  He's got a record.  It's our expert witness

24   whose going to testify concerning police practices.  In

25   order to render an opinion as to -- he's not going to

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 27

1    impeach the witness.  He wants to render an opinion as to

2    the techniques that the Jupiter Police Department used in

3    this case.  He can't render that opinion unless he hears

4    the testimony from the witness subject to cross

5    examination as to how they conducted this investigation.

6         MR. KRIDOS:  Judge, first of all --

7         MR. GOLDBERGER:  Mr. Kridos, may I just finish?

8         MR. KRIDOS:  Sure.

9         MR. GOLDBERGER:  He needs to be able to testify and --

10        THE COURT:  Mr. Kridos, I'm going to allow the expert

11   to remain at least pending some case law that you're going

12   to show me saying that the expert --

13        MR. KRIDOS:  Judge, this catches the State completely

14   offguard.  In the fairness, Judge, to the system, you have

15   to give the State some time to get -- it will take me --

16        THE COURT:  What?  Ten minutes?

17        MR. KRIDOS:  Judge, can you give us fifteen minutes?

18   That's the only fair thing to do.

19        THE COURT:  Okay.  I'll give you fifteen minutes.

20   We'll be in recess for fifteen minutes.

21             (Thereupon, a short recess was taken.)

22        THE COURT:  Okay.  Court's back in session.  Please be

23   seated.

24        MR. KRIDOS:  All right, Your Honor.  First, let me

25   apologize to the Court.  Judge, I realize I interrupted

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 28

1    you when you were talking before.

2         THE COURT:  It's okay.

3         MR. KRIDOS:  But with that said, Judge, based on our

4    research, we've come to an agreement that it's

5    discretionary upon the Court, and we also agree that the

6    expert witness will not be attempting to impeach the

7    testimony that's given to Your Honor today.

8         THE COURT:  Okay.  You know, there is a rule on this,

9    90.616 Subparagraph 2 which does give the Court

10   discretion.  I think the Court probably has even greater

11   latitude at this point.  It's not a trial, it is a motion

12   to suppress.  So, of course, to the extent that the

13   witness tailors what the witness says on the witness

14   stand, I can take that into consideration.  But I will

15   allow the expert to remain while the other witnesses are

16   testifying.

17        MR. KRIDOS:  Yes, Judge.  Thank you.

18        THE COURT:  Okay.  Mr. Spiro?

19        MR. SPIRO:  Yes, thank you, Judge.  We would call

20   Andrew Sharp.  And, Judge, just before the witness starts

21   and just in the hopes of trying to run this efficiently

22   and smoothly, we have lots of copies of anything that I'm

23   going to be showing the witness and they'll be provided to

24   the prosecutor's table.

25        And I'm going to try to do this -- I haven't been

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1   before Your Honor in a hearing setting before, but I'm

2   going to try and do this with all of these folks and

3   devices and screens to do this as efficiently as possible.

4       THE COURT:  And my screen as well.

5       MR. SPIRO:  And your screen as well.  That's what I'm

6   going to do and obviously we would just be admitting

7   things for the purpose of this hearing.

8       THE COURT:  Sure.  Okay.  Detective Sharp, please.

9       THE BAILIFF:  We're getting him.  He's not like out

10  here.  He's in a conference room.

11      MR. SPIRO:  And after conferring, Judge, and again,

12  I'm just trying to move this along as efficiently as I can

13  for the Court.  We would move the warrant at issue in this

14  case into evidence as Defense 1, along with both Probable

15  Cause Affidavits.  Of course, they're part of the Court's

16  file and you can take judicial notice, but I don't think

17  there's any objection.

18      THE COURT:  Can the Court take judicial notice?

19      MS. ARCO:  Yeah, there's no objection to that at all.

20  I'm assuming when they say the two probable cause, they're

21  talking about the affidavit and application that went

22  along with the search warrant?

23      MR. SPIRO:  Correct.  And the two probable cause

24  affidavits that involves the misdemeanor arrests in this

25  case.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1          MS. ARCO:  All right.  And would you be willing to

2     introduce the inventory and return as well that's attached

3     to the search warrant?

4          MR. SPIRO:  That's fine, Judge.

5          THE COURT:  Okay.  That probably has not been picked

6     up by the microphones.  Can I have somebody state what the

7     parties agree to?  And can the Court simply take judicial

8     notice of all affidavits, search warrant affidavits and

9     the search warrants that have been filed both in this

10    case, these two cases, and in any other case regarding

11    this defendant?

12         MS. ARCO:  Yes, the State has no objection and you do

13    have the right to take judicial notice.

14         MR. SPIRO:  And that would be what we would ask.  And,

15    again, I think this will move the proceedings along rather

16    quickly because there's no other discovery is that search

17    warrant affidavits and search warrants that were used in

18    the related cases in Martin County and also that are

19    pending before Judge Marx, if we were to ask the witnesses

20    that - I mean, their affidavits relating to law

21    enforcement's conduct.

22         THE COURT:  Why Martin County?  I noticed in your

23    proposed order that you included Martin County in your

24    proposed order for protective order and I struck that.

25    I'm not sure why Martin County -- I know that there was a

Page 31

1    reference to the detective speaking to a law enforcement

2    officer based in Martin County.  Why are we talking about

3    Martin County today?

4         MR. SPIRO:  Sure.  What I'm going to do then, given

5    that we're about to finally -- rather than have an

6    attorney make certain representations, we're about to hear

7    from a witness.  As the witness goes on, if the Court will

8    then let me be heard on that, I think the Court will have

9    a better idea why I want to reference that one.

10        MS. ARCO:  Just to be clear, the State does at this

11   point in time object to the Martin County probable cause

12   affidavit.  I did not realize when he said probable cause

13   affidavit he included Martin County.  Again, I have no

14   issue and the Court absolutely can take judicial notice of

15   the affidavit and application for the Orchids of Asia, the

16   search warrant for the Orchids of Asia, the ceiling order

17   by Judge Coates on the Orchids of Asia, and the inventory

18   and return of the Orchids of Asia in the probable cause

19   affidavit for the Orchids of Asia.

20        THE COURT:  Okay.  I'll reserve ruling on the material

21   that was generated in Martin County.

22        MR. SPIRO:  Thank you, Judge.

23        MS. ARCO:  Thank you, Judge.

24   (Thereupon, Defendant's Exhibits 1 through 4 were entered

25   into evidence without objection.)

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 32

```
 1
 2     THEREUPON,
 3                    DETECTIVE ANDREW SHARP,
 4     after being first duly sworn by the Clerk, was examined and
 5     testified under oath as follows:
 6
 7                    DIRECT EXAMINATION
 8     BY MR. SPIRO:
 9        Q     Good morning, Detective Sharp.
10        A     Good morning, Mr. Spiro.
11        Q     And we've met before, Detective Sharp, right?
12        A     Yes, sir, we have.
13        Q     We met in the Jupiter Police Department and we spent
14     about twenty minutes together then?
15        A     Yes, sir, we did.
16        Q     And we've talked a little about that, but we also
17     spoke to each other in Judge Marx's court just a few days ago,
18     right?
19        A     Yes, sir.
20        Q     And in front of Judge Marx you told the Court that
21     you had an issue showing all of the video because in this case
22     you videotaped for five days, 24 hours a day, it was a lot of
23     video, and that if anybody needed to see the video, it would
24     take you a long time to go through it, right?
25              MS. ARCO:  Your Honor, I'm going to object to leading.
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 33

1          This is his witness and he cannot lead his own witness.

2              THE COURT:  Can you be more precise in your question,

3      Mr. Spiro?

4              MR. SPIRO:  Yes, Judge.  I mean, I can keep these

5      questions somewhat open-ended if the Court would like.  I

6      think he's a law enforcement witness that put forth a

7      warrant that we're contesting, so I don't think I have to

8      ask him to be declared hostile, start arguing with him and

9      declare him hostile, but I believe I'm allowed to ask.

10             THE COURT:  Well, your question asked him to respond

11     in a narrative manner, and I'll allow that to a certain

12     extent.  But I don't know where we're going once we start

13     a narrative.

14             MR. SPIRO:  Okay.  I'll be more precise then.

15     BY MR. SPIRO:

16     Q     You told Judge Marx that you videotaped in this case

17     for five days, 24 hours a day, correct?

18     A     Correct.

19     Q     And you also had a pole camera in this case, or some

20     camera that surveilled the outside of the Orchids of Asia spa

21     in November of last year, right?

22     A     That's correct.

23     Q     And that was 24 hours of recording, also?

24     A     Yes, sir, it was.

25     Q     While it was in existence?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 34

1      A      Correct.

2      Q      And you have all of these videos, both from the

3   internal videos in the spa we're talking about here today, and

4   all of the videos from the pole camera or the camera that was

5   outside of the spa in November, right?

6           MS. ARCO:  Objection again.  Leading.  He's not a

7        hostile witness.  The rules of procedure do not change

8        because this is a motion to suppress.  This is his witness

9        and we cannot lead our own witnesses.

10          THE COURT:  I'll deny the objection.  Go ahead.

11  BY MR. SPIRO:

12     Q      Correct?

13     A      Correct.

14     Q      And, Detective, two months ago approximately, your

15  office first announced that these misdemeanor solicitation

16  charges would be brought against Mr. Kraft; is that about

17  right?

18     A      That's correct.

19     Q      And it was just after that that you and I first met,

20  right?

21     A      That's correct.

22     Q      And you were nothing but straight with me and

23  truthful with me when we met, right?

24     A      That's correct.

25     Q      Right.  And we can be straight and truthful today in

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 35

1    court?

2         A    Absolutely.

3         Q    And let me ask you something.  The date of the

4    announcement of the charges against Mr. Kraft was February

5    19th.  Do you remember that day?

6         MS. ARCO:  Objection.  Relevancy.  It's outside the

7         four corners of the document, the affidavit and

8         application for search warrant that you need to decide as

9         to whether or not it was legitimate in what the State did.

10        A press conference occurring a month, weeks after the

11        application to Judge Coates is irrelevant.

12        THE COURT:  Mr. Spiro?

13        MR. SPIRO:  This is -- of course, we have a

14        confrontation clause right at a suppression hearing.  I

15        don't have very much.  I'm almost moving on but I have to

16        be able to ask some questions because the Court may not

17        immediately understand, and if I have to explain.  But I

18        hope that if the Court thinks that I'm going somewhere

19        that's irrelevant to the Court's determination, I would

20        welcome the Court holding that against me.  But if the

21        Court would allow me a few questions to explain, I think

22        it will become very clear to the Court in a moment where

23        I'm going.

24        THE COURT:  I'll deny the objection and the State can

25        renew its objection as it sees fit.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 36

1    BY MR. SPIRO:

2         Q     It was February 19th, correct?

3         A     No, sir, that's incorrect.

4         Q     What was the date?

5         A     February 19th was the day that I actually conducted a

6    physical search warrant of the business.  I believe that the

7    press conference occurred in the days after.

8         Q     And how long was that then -- excuse me.  How long

9    was that conference set for?  How long did you know that you

10   were going to execute the warrant on that day and the press

11   conference was going to be the day it was?

12        A     I did not know that there was going to be a press

13   conference that day.

14        Q     The solicitation charge, there's sort of two parts to

15   your probable cause that's involved in the arrest document for

16   Mr. Kraft.  There's the identification of him part and then

17   there's the offense part; is that right?

18        A     That's correct.

19        Q     And in that charging document, there's no eyewitness,

20   civilian witness that's involved in that, right?

21        A     There's no civilian witness, you're correct.

22        Q     And there's no sort of grand jury proceeding, it's

23   just your probable cause affidavit for a misdemeanor arrest,

24   right?

25        A     That's correct.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    Q    And in that document, you note the cars that drove

2    Mr. Kraft on the two dates, the 19th and 20th of January?

3    A    That's correct.

4    Q    And the way this worked, not to jump too far ahead,

5    is as I understand it, people would come inside of the spa,

6    right, and you would videotape them, right, if we go to the end

7    before the dates in question, right?

8    A    That's correct.

9    Q    And after they were outside of the massage rooms and

10   leaving the establishment, you or whoever was watching the

11   videotape would contact somebody in the parking lot or right

12   there who would say white male, red shorts, leaving, right?

13   A    That's correct.

14   Q    And there would be an unmarked car that had watched

15   the cars come into the parking lot, right?

16   A    That's correct.

17   Q    And had noted things in a log, you know, Bentley,

18   license plate, white male exits, right?

19   A    That's correct.

20   Q    And then you would pick up the same person as they

21   exited the spa?

22   A    That's correct.

23   Q    And you would then indicate that in a communication

24   to the unmarked vehicle, right, that you had seen somebody in

25   the spa?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 38

1    A    Correct.

2    Q    And then they would follow that car out of the

3  parking lot, right?

4    A    That's correct.

5    Q    And then a uniformed, marked lights and siren type of

6  patrol car that we've all seen, would pick up from the

7  undercover car and have a reason and then pull the person over?

8    A    That's correct.

9    Q    Now, the day -- not to go back, but Martin County,

10  Indian River and Vero, they had a press conference the same day

11  as the press conference you mentioned, correct?

12    A    I can't recall, sir.

13    Q    You don't remember if there were other arrests and

14  takedowns of a similar nature in neighboring counties?

15    A    Oh, absolutely there were.

16        MS. ARCO:  I'm going to object.  Again, what happened

17        in Martin County has no bearing on what happened in Palm

18        Beach County.

19        THE COURT:  Mr. Spiro?

20        MR. SPIRO:  I mean, again, I'm almost to the point

21        where I think the Court is going to see the relevance of

22        the Martin County affidavit and everything else, but I'd

23        ask for the Court's ability to ask a few more questions.

24        I guess we could speak outside the presence of the

25        witness, but I'm almost to the point where I think the

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 39

1      Court will see the relevance.

2              THE COURT:  Okay.  I'll deny the objection at this

3      point, but I understand the relevance objection to the

4      State's basis for its objection.  So, go forward.  If you

5      can connect it up, go right ahead.

6              MR. SPIRO:  I'm absolutely going to be able to connect

7      it up, Judge.  And I will just tell the Court I can

8      provide, again, outside the presence of the witness the

9      entire, but I'd rather not.  I'd rather -- the Court

10     hasn't heard evidence in this.

11  BY MR. SPIRO:

12     Q    I mean, Detective, it was Martin County that told you

13  about the spa at issue in this case, correct?

14     A    That's correct.

15     Q    And you conferred with Martin County throughout the

16  course of your investigation about their investigation,

17  correct?

18     A    That's correct.

19     Q    And they provided you information from their

20  investigation, correct?

21     A    That's correct.

22     Q    And they provided you a copy of their search warrant

23  and affidavit, correct?

24     A    That's incorrect.  No, I never received a copy of

25  their search warrant or affidavit.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 40

1    Q    Where did you get the template -- or, how did you

2    create the search warrant document in this case?

3    A    The search warrant document was when I met with the

4    State to go over and develop this document.  That template

5    essentially was given to me by the Palm Beach County State

6    Attorney's Office.

7    Q    In person?  Like they handed it to you?  If you

8    recall.

9    A    I can't recall if it was in person.  I believe they

10   provided it in an electronic document.

11   Q    So that you could edit it?

12   A    Correct.

13   Q    And you edited and drafted that document?

14   A    That's correct.

15   Q    And you went back and forth with the State Attorney's

16   Office on provisions, edits, things like that, right?

17   A    Correct.

18   Q    But you're saying you did not get that document from

19   Martin County?

20   A    That's correct.

21   Q    And, to this day, have you seen the Martin County

22   warrant and affidavit?

23   A    I believe I've seen parts of it on the clerk's

24   website, but I don't have a physical copy nor have I really sat

25   down and read it.

1        Q      And that goes for the warrants and affidavits for the

2   sneak and peek warrants in the other related cases, too?

3        A      That's correct.

4        Q      So, when the call comes from Martin County to alert

5   you in late October of 2018, does it come directly to you or

6   someone else within your precinct?

7        A      So, how this works, every Wednesday I participate in

8   a Martin County intelligence meeting.  During that meeting, we

9   go over criminal intelligence that occurs in Martin County,

10  that occurs in St. Lucie County, that occurs in Palm Beach

11  County, specifically Jupiter, as we have a neighboring border.

12          During those meetings, it was brought to my attention

13  that they were working an investigation and they believe that

14  there were ties in their investigation to our investigation of

15  Palm Beach County.

16       Q      And did they explain to you what those ties were?

17       A      They did.

18       Q      Do you want to tell us?

19       A      Yeah, absolutely.  They advised that they were

20  conducting an investigation into a business and they believed

21  at this time that there was evidence that the same type of

22  business was operating within the city of Jupiter.

23       Q      Any other ties?

24       A      It wasn't until after I met with them and conferred

25  with them with my sergeant and everything else that they

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 42

1    advised me that this was part of an ongoing investigation for

2    several counties throughout the state of Florida.

3        Q     And when approximately was that meeting?

4        A     Probably a week or so after I initially was advised

5    that they were working an investigation.

6        Q     That was before you began surveillance in November?

7        A     That's correct.

8        Q     And what more did you learn at that meeting?

9        A     At that meeting, they gave me specifics as to how my

10   business was tied to their business.  They gave me specifics as

11   to who their targets were.  They gave me specifics as to how

12   those related to other illicit massage businesses operating

13   throughout the state.

14       Q     They didn't tell you who your targets were, they told

15   you who their targets were?

16       A     They told me who their targets were and they advised

17   me of the business that was the target of my investigation.

18       Q     They advised you about the Orchid Spa?

19       A     Correct.

20       Q     And did the investigation you began in the Jupiter

21   Police Department, did it have like a name like Operation

22   something?

23       A     No, sir.

24       Q     Okay.  You call it in your affidavit that you were

25   sort of investigating at the beginning a -- the slang term is

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B68E6C26A46

Page 43

1    "rub and tug" that you put in the affidavit?

2        A    That's correct.

3        Q    So, to prevent repeating those sort of things, I'm

4    just going to refer to it as an operation into the massage

5    parlor, or Operation Massage, or something like that just to

6    avoid repetitively asking you about that beginning of the

7    affidavit, all right?

8        A    Okay.

9        Q    But what I mean is the same investigation into the

10   conduct in your affidavit; is that okay?

11       A    That's fine, sir.

12       Q    And, of course, while you confer with Martin County,

13   did you confer with Indian River?

14       A    I did not at that time, no.

15       Q    Did you confer with Indian River before you did the

16   search warrant?

17       A    There was a meeting at one point at the United States

18   District Attorney's Office at the federal courthouse in Fort

19   Pierce.  And, at that time, there were members of Indian River

20   County Sheriff's Office there as well as members, I believe, of

21   Vero Beach and other members of agencies that were doing

22   similar types of investigations.

23       Q    And I don't want to sort of belabor all the

24   information you learned at that meeting and the meeting with

25   Martin County, but you understood that they had gotten a sneak

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    and peek warrant at the end of last year.  So, that's 2018

2    whereas yours was the beginning of this year, 2019?

3        A    That's correct.

4        Q    Right.  So, when you're at these meetings with them,

5    they had already gotten a sneak and peek warrant in their

6    districts even though you hadn't gotten one yet here?

7        A    Martin County was the only county at that time that

8    had received a sneak and peek warrant.  I believe they call it

9    a break-in order.  The other counties had not yet developed

10   enough probable cause to obtain such warrant.

11       Q    Right.  But they did get them in the Fall of last

12   year, not at the beginning of this year like you did?

13       A    If you're telling me that and that is the truth, then

14   that's what you're advising.  I do not know.  I know Martin

15   County did receive one at the end of last year, but I can't

16   opine as to whether or not the other agencies received sneak

17   and peek warrants at the end of last year.

18       Q    But Martin County was, in any event, was the one

19   county that you were in touch with in a meaningful way as you

20   developed this investigation?

21       A    Yes, sir.

22       Q    And how many times do you think you conferred with

23   them between October and when you got the warrant from Judge

24   Coates in January?  Approximately.

25       A    A half a dozen or so.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E6C26A46

Page 45

1     Q     And the one meeting you told us about, right?

2     A     Correct.

3     Q     And that was a substantive meeting, not a quick

4 meeting?

5     A     Correct.

6     Q     And then there were follow-up phone calls between you

7 and the lead detective in Martin County?

8     A     That's correct.

9     Q     So, at a certain point in time, you want to check out

10 your own massage in Jupiter, right, your massage parlor,

11 Operation Massage, right?  You want to check out Orchids of

12 Asia yourself?

13     A     Correct.

14     Q     You've gotten the tip, the lead, the referral from

15 Martin and it's time for you to start your own investigation,

16 right?

17     A     That's correct.

18     Q     And while they may have been the ones that brought it

19 to you, you have a different place, different masseuses,

20 different facts, right?

21     A     That's correct.

22     Q     And did you bring your file with you today regarding

23 this case?

24     A     I brought my affidavit and application.

25     Q     But not the rest of your file?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 46

1     A     That's correct.

2     Q     Okay.  And you know that because this is sort of a

3  unique situation we find ourselves in, I don't have your case

4  file either, right?

5          MS. ARCO:  Your Honor, I'm going to object to

6          relevancy.  And at the beginning of this whole motion to

7          suppress, they agreed and withdrew the request for him to

8          bring his case file.  They've elected not to participate

9          in discovery which is their right, but this is irrelevant

10         as to whether or not he brought his case file.

11         THE COURT:  I'll sustain the objection.

12         MR. SPIRO:  You're aware that I don't have your case

13         file.  That's relevant.

14         MS. ARCO:  Your Honor, again, I object.

15         THE COURT:  Okay.  How can he be aware you don't have

16         it?

17         MR. SPIRO:  Because he's been here for the whole --

18         THE COURT:  Let me ask the defense.  We discussed this

19         preliminarily before everything got started.  Are you

20         trying to obtain documents from this witness?

21         MR. SPIRO:  No.  In the first instance, all I'm

22         suggesting is he knows and you can always ask a witness if

23         he knows that you don't have access to certain documents

24         as you're questioning them because he knows that if he

25         says on January 3rd I did "x" and it's in a report, I

1    can't say, ah-ha, you didn't.  It was January 2nd.

2    Because I don't have any of those documents.  And so I'm

3    just asking the detective is he aware that I don't have

4    any of his documents in his case file.

5        MS. ARCO:  Your Honor, that would be appropriate if

6    they demanded discovery and the documents were not turned

7    over like we should have done, and then it would be an

8    absolutely good question to ask.  Here they never asked

9    for documents, they never demanded discovery.  So, they're

10   trying to do a gotcha.  It's inappropriate and irrelevant

11   at this point in time.

12       MR. SPIRO:  Judge, we're getting caught up in this

13   sort of statutory framework.  It's not a gotcha.  It's in

14   his mind as he's testifying, he knows I don't have

15   something and so I can't ask him about that.  It has

16   nothing to do with any -- it's just a question for a

17   witness that goes to his mind set.  It doesn't have

18   anything to do with any statutory rule or discovery

19   demand.  It's just -- and the question is already, by the

20   way, it was over and I'm sure he was going to say of

21   course I know you don't have my file.

22       MS. ARCO:  Again, he's testifying now for the witness.

23       THE COURT:  Okay.  We already discussed the production

24   of documents at this hearing.  If your question is whether

25   he knows you don't have documents, he can answer to the

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 48

1        best of his knowledge, but quite frankly, who cares?

2   BY MR. SPIRO:

3        Q    You know that I don't have a case file, correct?

4        A    That's correct.

5        Q    So, as you're looking into this massage parlor and

6   you know that early on in the investigation that this is a

7   licensed massage parlor, correct?

8        A    That's correct.

9        Q    Meaning that it's sort of state endorsed through the

10  Department of Health.  It has their inspection sticker, right?

11       A    Correct.

12       Q    And that the masseuses have licenses?

13       A    That's correct.

14       Q    And another thing that I assume you wanted to know

15  early on is, you know -- which is why you had your -- was it a

16  pole camera or what was the type of camera that was outside?

17       A    I don't want to get into the exact investigative

18  techniques that we used outside, but I can tell you there was a

19  camera and that camera was used to video surveil the outside of

20  the business.

21       Q    Right.  And one of the things that you're looking for

22  is to see sort of if there were signs of criminality.  Is this

23  a seedy establishment?  Is it a brothel?  Is it a massage

24  parlor?  You're investigating that.  This is early on, right?

25  You want to sort of see?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 49

1       A      Yeah, absolutely.  I wanted to see the amount of

2   people that were coming and going, if the amount of people were

3   male or mixed with male and female.  And during that time, as

4   listed in my affidavit, the majority of those were male.

5              In fact, at one time, there was one evening in

6   question where a group of approximately eight males got off of

7   a golf cart, walked into the establishment, came back outside,

8   did sort of a -- and I'll use the analogy here of touchdown

9   Jesus, lifted his hands and then walked back inside.  So, at

10  that point, I understood that this was not just a regular

11  massage parlor but one that was an illicit massage business.

12      Q      And it was mostly men that you saw going in?

13      A      That's correct.

14      Q      Some women?

15      A      I would have to say --

16      Q      A few women?

17      A      -- two during that six day period.

18      Q      So, you think you spent -- that's an approximation,

19  Detective, right?

20      A      That's correct.

21      Q      You haven't taken the pole camera video and

22  rewatched --

23      A      Oh, I did.

24      Q      And you rewatched all 24 hours times eight days, two

25  hundred plus hours?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 50

1       A       I watched a majority of that video, yes, because I

2   had to get an approximate number of males that came into the

3   spa so I could accurately reflect that information in my

4   affidavit.

5       Q       And you think that you saw approximately two female

6   patrons at that time?

7       A       That's correct.

8       Q       But that's not an exact number, it's an

9   approximation?

10      A       An approximation, yes, sir.

11      Q       Okay.  But before we get all the way there, I just

12  wanted to ask you about the establishment itself.  This is in a

13  public mall, right?

14      A       That's correct.

15      Q       And this establishment has been around for a long

16  time, years and years, right?

17      A       That's correct.

18      Q       And I don't know if you're aware or if you found it

19  in your research, but did you know that this spa was actually

20  promoted on the Town of Jupiter's own website?

21      A       I'm not aware of that, no.

22      Q       That it talks about how they give facials, how --

23              MS. ARCO:  Your Honor, I'm going to object to the

24      lawyer testifying.  If he would like to take the stand, we

25      can have him do that, but he's testifying right now.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 51

1          THE COURT:  Sustained.

2   BY MR. SPIRO:

3      Q     You didn't know that it was advertised on the Town of

4   Jupiter's own website?

5          MS. ARCO:  Objection.  Asked and answered.

6          THE COURT:  Sustained.

7   BY MR. SPIRO:

8      Q     Did you know it was advertised online?

9      A     I did.

10     Q     Did you know that they had like Groupons where it

11   actually connected to another site so that you could buy gift

12   certificates and things?

13     A     The only online advertisements that I saw were for

14   Rub Maps and for USA Sex Guide and other illicit massage

15   businesses would go and represent themselves as this is what

16   was taking place.  I did not know that there was a Groupon.  I

17   did a Google search and found very numerous numbers of reviews

18   that, as you stated earlier, labeled the business as a, quote,

19   rub and tug.

20     Q     But you started before you got to the illicit sites

21   that are sort of more sexual in nature, you started by doing

22   Google, right?

23     A     Correct.

24     Q     And there were Google reviews and Yelp reviews that

25   were not on those specific sexual websites, right?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 52

```
 1      A     That's correct.  And as I stated, those reviews still
 2    advised that this was a illicit massage business.
 3      Q     Not every single one of them?
 4      A     There was a few.
 5      Q     No doubt there was a few, but there were others that
 6    did not label it as such?
 7      A     That's correct.
 8      Q     There were some that labeled it as a therapeutic
 9    massage parlor?
10      A     Yes, there were.
11      Q     And there were some that talked about women that had
12    gone there and gotten facials?
13      A     And those same women also complained that while they
14    were there, they believed that this was a illicit massage
15    business.
16      Q     Are you saying that every female review online also
17    complained about the massage parlor?
18      A     Not every but there were some that females went there
19    believing that this business was, in fact, a representation of
20    a business that would, you know, have facials et cetera.  But
21    then when they were there, they realized that they were sorely
22    mistaken and this was, in fact, an illicit massage business.
23      Q     Well, you're sort of saying two things at once.  I'm
24    asking, there were women that went there to get facials and put
25    reviews online, correct?
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1       A       Correct.

2       Q       And, you know, you mention that some of the women in

3    those reviews you say complained about the massage parlor,

4    right?

5       A       That's correct.

6       Q       In its operation from early 2000s to the point that

7    you get the report from Martin County, the police department

8    didn't have like a series of complaints about this business,

9    did they?

10      A       No, we did not.

11      Q       Okay.  There's not like confidential informants or

12   kites or anything like that in Jupiter County where they're

13   saying this spa, it's a hot bed of criminality.  You've got

14   nothing like that, right?

15      A       Correct.

16      Q       And, in fact, many of the officers in the Jupiter

17   Police Department would drive by that establishment all the

18   time and no one thought anything remarkable, correct?

19      A       That's correct.

20      Q       And you've been inside, right?

21      A       I have.

22      Q       It's a nice clean place, right?

23      A       I don't know about clean.

24      Q       Is there anything when you walk into the spa that

25   jumps out at you, Detective, as criminality?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 54

1      A     Not when you immediately walk in, no.

2            MR. SPIRO:  I'm going to ask the witness to take a

3      look at Defense Exhibits 1 and 2.

4            MS. ARCO:  I have no objection.

5            MR. SPIRO:  There's no objection.  I'd offer these

6      into evidence.  I guess it's actually -- since we had the

7      warrant back and forth, it's I think Exhibits 4 and 5.

8            THE COURT:  State?

9            MS. ARCO:  No objection, Your Honor.

10           THE COURT:  They're admitted.

11     (Thereupon, Defendant's Exhibits 4 and 5 were entered into

12     evidence without objection.)

13           MR. SPIRO:  I'm putting it up on the Elmo for the

14     Court and for the witness.

15  BY MR. SPIRO:

16     Q     Is this the lobby/foyer area of the massage parlor?

17     A     Yes, it is.

18     Q     And as you walk in -- now I'm putting up Defense

19  Exhibit 5.  Sort of down that hallway behind that curtain, is

20  that where the massage rooms are?

21     A     Yes, sir, it is.

22     Q     And --

23     A     Can I ask for my clarification where these

24  photographs were taken, or who took these photographs?

25     Q     Unfortunately, Detective, for today -- we can talk

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 55

1    about it after, but for today I have to ask you the questions.

2              THE COURT:  Right.  You're the witness, you're not the

3         interrogator.

4              MS. ARCO:  I don't object.

5              MR. SPIRO:  Okay.  I'm actually going to offer in so

6         that I can give the detective a little bit of a better

7         view, Exhibit 6, with no objection from the prosecution.

8              MS. ARCO:  And if he can keep those out because I'm

9         going to use those to question Detective Sharp as well.

10             THE COURT:  Okay.  Mr. Spiro, can you make those

11        available to the State?

12             MR. SPIRO:  Of course.

13        (Thereupon, Defendant's Exhibit 6 was entered into evidence

14        without objection.)

15   BY MR. SPIRO:

16        Q    And that's another picture of the back area of the

17   massage parlor, correct?

18        A    That appears to be.  I've never seen these

19   photographs before.

20        Q    Right.  But it appears to be, right?

21        A    Yes, sir.

22        Q    It doesn't look completely different than what you

23   saw when you were inside?

24        A    No, sir.  It's just from different angles, so I

25   haven't seen this particular angle before.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 56

1    Q    I was hoping this photo would help with that.  That's

2    why I entered it.  But these rooms, as far as you can tell,

3    that I'm pointing to at the bottom left of the photo, those are

4    the massage rooms that are at issue in this case?

5    A    Some of those rooms depicted are, in fact, massage

6    rooms.  It appears there are several rooms there and I know

7    from being inside and from other parts of my search warrant

8    that some of those rooms the masseuses were actually living

9    inside.  So, I can't tell which rooms are the massage rooms in

10   question or which rooms the females were living inside.

11   Q    We're jumping ahead a little bit, Detective, but is

12   it okay if we refer to this room as -- and I'm looking at the

13   bottom left of the picture.  Do you think that it's fair to say

14   this room was a massage room?  At least, is it consistent with

15   the door and the type of threshold that would have been a

16   massage room?

17   A    It is consistent with the type of door and threshold

18   that would be a massage room, yes.

19   Q    And you said something about -- you sort of

20   volunteered that you think some of these rooms could have been

21   rooms where masseuses were living.  Is that what you said?

22   A    Yes, sir.

23   Q    And I don't really want to jump ahead to this, but in

24   your search -- you had 24 hour video surveillance, correct?

25   A    That's correct.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 57

1     Q     And did you watch all of that video surveillance

2     before you went before Judge Coates?

3     A     That's correct.

4     Q     And you don't tell -- and when you watch the video

5     surveillance, you see people coming and going, correct?

6     A     Correct.

7     Q     And you don't note in your video surveillance that,

8     you know, three masseuses come and only two leave, right?

9     A     I did not note that, no.

10    Q     So, just to get right to it, your team, you,

11    installed hidden cameras pursuant to that warrant inside of

12    this spa January 17th, 2019, correct?

13    A     Yes, sir.

14    Q     And you recorded the events inside of the spa from

15    January 18th through January 22nd, correct?

16    A     That's correct.

17    Q     And the spa's owners, employees, they didn't know

18    about these cameras, correct?

19    A     That's correct.

20    Q     And, in fact, you took great lengths to hide the

21    cameras, correct?

22    A     That's correct.

23    Q     You put a hole in a tile or a board in the ceiling to

24    secretly install the cameras, correct?

25    A     Again, I don't want to get into the investigative

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 58

1    techniques that we used, but we did install cameras in those

2    massage rooms.

3         Q    And just so my questions are clear, I'm not trying to

4    get you to divulge, you know, secret science that the Jupiter

5    Police Department uses, but is it fair to say that the camera

6    was in the ceiling board?

7         A    It's safe to say that, yes, sir.

8         Q    Okay.  Because I just need to get enough information

9    so that the judge can understand it.  You understand?

10        A    Yes, sir.

11        Q    Okay.  And these rooms, they're not -- they don't

12   have windows or skylights, right?

13        A    That's correct.

14        Q    And it can be dark inside these rooms?

15        A    It can be, yes.

16        Q    And it's not just that the cameras themselves were

17   hidden, even the way you entered the massage parlor to put in

18   the cameras was done in a way to avoid detection, correct?

19        A    That's correct.

20        Q    You told both the spa and the neighboring businesses

21   that there was a suspicious package, right?

22        A    We didn't tell any of the neighboring businesses

23   that.  The tactical ruse that we used was late at night, so

24   that way none of the other businesses would be open at that

25   time.  Because I knew from surveillance and from previous

Page 59

1    intelligence gathering, that there were women inside of that

2    spa that I needed to get out.  In order to do that, I developed

3    that tactical ruse.  I didn't want to shut down the entire

4    plaza for a length of time, so I did it late at night, almost

5    midnight, when the only business that was open was a restaurant

6    down at the end.

7         Q    Goodfellas Pizza?

8         A    You know, I don't recall that business being open.  I

9    believe that someone from that business came up and said what's

10   going on, and an officer said, oh, there's a suspicious

11   package.  But I didn't go and knock on that business' door and

12   say, hey, there's a suspicious package here, I need you to be

13   careful, et cetera.

14        Q    And I appreciate that courtesy to the businesses.

15   When you say late at night though, it actually wasn't 12:00,

16   1:00, late at night.  It was actually 10:00 p.m., right?

17        A    We started -- I had a detective place something in

18   front of one of the businesses at around 10:00 p.m.  I didn't

19   go and install or confer that there was a suspicious package

20   until 11:30, nearly midnight.

21        Q    So I understand it the way you're calling it a

22   tactical ruse, some business that was not the massage parlor,

23   you put what you wanted people to believe was a suspicious

24   package?

25        A    That's correct.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 60

1    Q     And do you know which business you put that in front

2    of?

3          MS. ARCO:  Objection.  Relevancy.

4          THE COURT:  Sustained.

5    BY MR. SPIRO:

6    Q     You wanted to clear out these buildings without

7    alerting the Asia Orchid spa?

8    A     Correct.

9    Q     And you used a suspicious package to get everybody to

10   get out?

11   A     That's correct.

12   Q     And did you have any concern -- whose idea was the

13   suspicious package?

14   A     It was mainly my idea.

15   Q     And do you have any concern in using a ruse that

16   involves sort of scaring people about a suspicious package, a

17   bomb, when doing an operation like this?

18         MS. ARCO:  Objection.  Relevancy again to the four

19         corners of the document as to whether or not it was

20         legitimate and legal to put a camera inside.

21         MR. SPIRO:  Well, I can explain legally why it's

22         relevant.

23         THE COURT:  No, I'll deny the objection.  Go ahead.

24   BY MR. SPIRO:

25   Q     Did you consider whether or not it was an appropriate

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 61

1    tactic to use a suspicious package, a bomb scare type

2    suspicious package to clear out this business and anybody else

3    that was in a neighboring business?

4        A    That was my only option to remove the individuals

5    that were living inside of the business for an extended period

6    of time.  We threw around other ideas.  But because I knew it

7    was going to take me multiple hours to do the installation of

8    the cameras, that was my only option.  And I did it late at

9    night when the other businesses were closed as to not scare any

10   of the other businesses.

11       Q    Well -- and may I move freely around the courtroom?

12            THE COURT:  Yes.

13            MR. SPIRO:  Thank you, Judge.

14            THE COURT:  Remembering, however, that without a

15       microphone, you may not be recorded.

16            MR. SPIRO:  I'm going to try to get louder as I get

17       more comfortable in this courtroom, Judge.

18   BY MR. SPIRO:

19       Q    When you say that it was to avoid scaring neighboring

20   businesses, or you waited until they were closed, you would

21   agree that at least one was opened, right?

22            MS. ARCO:  Objection.  Asked and answered.

23            MR. SPIRO:  He just said the opposite.  I'm allowed to

24       follow up.

25            THE COURT:  Overruled.  Go ahead.

Page 62

1   BY MR. SPIRO:

2        Q     One of them at least was open, correct?

3        A     That's correct.

4        Q     And you're not sure as you sit here today whether or

5   not there were people also eating inside of Goodfellas Pizza

6   which would have been the second business open, right?

7        A     That's correct.

8        Q     But someone from Goodfellas Pizza came up to you and

9   you know that the Jupiter Police Department told that person

10  that there was a suspicious package?

11       A     Someone from Goodfellas Pizza came up and spoke to

12  one of the officers that was clearing Orchids of Asia and the

13  surrounding businesses and during that conversation someone

14  said there's a suspicious package, we need you to evacuate the

15  area.

16       Q     So, you said a minute ago that it was the only

17  option.  Did you consider saying that you had a report of a gas

18  leak, a suspicious smell, or another reason to clear out the

19  building like a Con Edison employee needed to go in?  Did you

20  consider any of those other options before you went with the

21  bomb scare?

22       A     We did.

23       Q     Okay.  So, you did consider those options?

24       A     Yes, we did.

25       Q     You had a conversation about those options?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 63

1    A    Yes.

2    Q    Okay.  You and who else?

3    A    Myself, my sergeant, other detectives.  We met with

4  members of Palm Beach County Fire Rescue and during those

5  meetings, I said in order to make this believable if we were to

6  use this option of a gas leak, members of fire rescue would

7  probably have to be present so that way it's believable.

8  Because most of the time there is a gas leak, someone from fire

9  rescue is there to investigate that.

10        Unfortunately, the members of the Palm Beach County

11  Fire Rescue weren't able that evening to assist with that.  So,

12  that option was out the window.

13    Q    Oh, so that would have been an option if they were

14  available, but because they weren't available, you went with

15  the bomb scare?

16    A    Because they were not available and did not wish to

17  assist with us that evening, correct.

18    Q    Did they say anything about not wishing to assist

19  because of how serious they thought the investigation was or

20  wasn't?  Did they give a reason?

21    A    I didn't speak to anyone that made that call.  That

22  call would have been made by someone that had rank.

23    Q    And did you have any concern in those conversations

24  that in this day and age if you're going to use bomb scares and

25  suspicious packages to clear out shopping malls for a massage

Page 64

1   parlor investigation, that it could have a chilling effect or a

2   negative effect on law enforcement in general?  Did anybody

3   discuss that at that meeting?

4        MS. ARCO:  Again, Your Honor, the relevancy is to

5        whether or not it is legal to place a camera inside a spa.

6        THE COURT:  Yeah, I'll sustain the objection.

7   BY MR. SPIRO:

8        Q    Did you consider whether -- you said earlier that the

9   bomb scare ruse was the only option to meaningfully clear out

10   the massage parlor for a significant period of time, correct?

11        A    Correct.

12        Q    And did you consider the fact that the severity of a

13   bomb scare would make it so that a person didn't really have

14   much of a choice in their own mind whether they left the spa or

15   not?  That was your reason, right?

16        A    I had a valid search warrant, so I needed to get into

17   that business.  One of those ways that I needed to get into

18   that business was to evacuate the persons that were inside.

19   So, I did consider that this would be something that could be

20   scary, as you put it, which is why I did it late at night to

21   ensure that the other businesses and the other patrons that

22   might go to Outback, that might go to Publix, that might go to

23   any one of those other places would not be, in fact, scared.

24        Q    Right.  But, for example, a fire alarm being pulled,

25   looking for the smell of gas, right, a person inside a business

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 65

1    might go, that's great, Detective, but unless you're saying I

2    have to leave, I'll stay.  Whereas a bomb scare everybody is

3    getting out?

4           MS. ARCO:  Same objection.  Relevancy as to whether or

5           not it was legal to place a camera inside the spa.

6           MR. SPIRO:  This is a threshold legal issue and I

7           would like to be heard further if I can't ask that

8           question.

9           THE COURT:  My understanding is defense is laying

10          groundwork to attack a technique that was used and I'll

11          give the defense that latitude.  Go ahead.

12   BY MR. SPIRO:

13       Q    Correct?

14       A    Repeat your question, sir.

15       Q    Sure.  If it was a fire alarm or a gas leak, right,

16   somebody might say, you know what, that's great, Detective.

17   But unless I have to go, unless you're saying I have to leave

18   right now, I'm going to stay.  Whereas if you say there's a

19   bomb scare, everybody is getting out, right?

20       A    Exactly.  And that's exactly what I needed in order

21   to install the covert cameras.

22       Q    In a massage parlor?

23       A    In a illicit massage business, yes.

24       Q    And the recordings that you made were customers naked

25   inside of these massage rooms?

1      A     That's correct.

2      Q     And customers that went in, they would be viewed by

3   Camera 5 when they first came in, right, by the front cash

4   register area, correct?

5      A     That's correct.

6      Q     And then they would go into one of four massage rooms

7   which were these private enclosed rooms that at least look like

8   the photograph that I put in front of you?

9      A     Yes, sir, that's correct.

10      Q     And those rooms, when they were in those rooms, just

11   had the patron or customer and the masseuse or masseuses

12   working on that customer, correct?

13      A     That's correct.

14      Q     And Mr. Kraft was one of the individuals that you

15   recorded naked inside one of those massage rooms, correct?

16      A     That's correct.

17      Q     On both January 19th and January 20th, correct?

18      A     That's correct.

19      Q     And based upon those recordings, Mr. Kraft was

20   charged on two counts of misdemeanor solicitation, correct?

21      A     That's correct.

22      Q     Now, I want to take a step back and go back to

23   Operation Massage, the investigation, okay?

24      A     Yes, sir.

25      Q     So, you find all of these things on Google, the Rub

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 67

1   Maps and the other things that you described, and in your mind

2   of course, it's more relevant what the men are saying on that

3   illicit site than it is the Yelp and Google sites, right?

4       A    They both held weight, but yes.

5       Q    Right.  It's more relevant to an investigation and to

6   Operation Massage what the men are saying about what happens

7   inside, not what the women are saying happened inside?

8       A    Correct.

9       Q    And it's also more relevant in your mind that there

10  are men going in and to report the men going in than it is to

11  pick out the few women that went in during that time period

12  that you were surveilling, correct?

13      A    That's correct.

14      Q    It's more relevant because you're investigating, you

15  know, Operation Massage?

16      A    Correct.

17      Q    Okay.  So, at this point in the investigation, just

18  sort of in a timeline, right, you have what you found on the

19  Internet, right, which is a good place to look these days where

20  people are going, right?

21      A    Yes, sir.

22      Q    You've been outside of the place for over a week both

23  you personally, right?

24      A    Yes, sir.

25      Q    And a camera that captured 24 hour surveillance of

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    what's going on, right?

2        A    Yes, sir.

3        Q    And you know that while it's a licensed place and

4    it's in a public area, you believe based on the traffic of men

5    and the stuff on the websites that you think you got a good

6    lead here, correct?

7        A    That's correct.

8        Q    But you don't have enough at that point to get a

9    search warrant?

10       A    Correct.

11       Q    Right.  And we're just at the last couple of steps of

12   this.  You confer with Inspector Herzog with the Department of

13   Health who comes and does a routine inspection?

14       A    That's correct.

15       Q    And that's in mid-November, right?  Right at the end

16   of the period in which you're doing the surveillance?

17       A    That's correct.

18       Q    And she finds stuff in the trash cans, or you find

19   stuff subsequent to her inquiry in the trash cans outside and

20   you do a trash pull?

21       A    I did that trash pull, yes, along with other

22   detectives in my agency, yes.

23       Q    Right.  And as I understand it, there's sort of two

24   items that you find in that trash pull that are significant to

25   this case, right?  One is towels, napkins, things like that and

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 69

1    the other is like paperwork, receipts, business kind of

2    documents, right?

3        A    That's correct.

4        Q    Those are the two categories?

5        A    Yes.

6        Q    Okay.  And the towels, you know, we'll just call

7    those towels, okay?  You follow up on those, right?

8        A    That's correct.

9        Q    You're a detective, right?

10       A    That's correct.

11       Q    And you did an investigation on the towels?

12       A    Yes.

13       Q    And you ran a test on the towels?

14       A    Yes.

15       Q    And they came back with a biological fluid that

16   suggested to you that your hunch about this business was a

17   correct hunch, correct?

18       A    That's correct.  They did test positive.

19       Q    All right.  And in terms of the paperwork and

20   receipts that you found, they had things like service, add tip,

21   the amount, in, out, cash, card, gift certificate, prepay, card

22   tip, right?

23       A    Correct.

24       Q    Some numbers that related to credit cards, right?

25       A    Correct.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 70

1      Q      Did you follow up on any of that?

2      A      Absolutely.

3      Q      How did you follow up on that?

4      A      So, the main thing that was listed on those ledgers

5  was the names of the person that performed the massage.  One of

6  the names was the name Lulu, which during the course of my

7  investigation was mentioned, not only on Rub Maps but was also

8  mentioned on usasexguide.nl, and which I further later learned

9  to be one of the defendants in the felony case that I had as

10  Lei Wang.

11      Q      Okay.  But did you -- let me ask you a different

12  question.  Did you take any of the receipts and look at the

13  last four digits of the credit card and like try to call the

14  credit card companies and subpoena them and find out who that

15  credit card was?

16      A      We did do subpoenas on credit card companies, but

17  that was a little bit later on.

18      Q      Well, when was that?

19      A      After I received them in the trash pull, so sometime

20  in November.

21      Q      So, you take the documents from the trash pull and

22  you subpoenaed credit card numbers that you find in the trash

23  pull?

24      A      I subpoenaed information in regards to the merchant

25  services company, how that merchant services company was paid

DocuSign Envelope ID: EF4A7C93-1F69-44CA-B715-9B88E8C26A46

Page 71

1    for, anything that would tie or relate to the business.  At

2    that time, I did not take any of those numbers and obtain

3    information on any of the people that were clients of that

4    business.

5         Q    Right.  You could have, but you didn't?

6         A    Correct.

7         Q    And you would agree with me that if you had followed

8    up on the people that had been in there, they might have had

9    information about the spa, right?

10        A    Correct.

11        Q    But you didn't?

12        A    No, I did not.

13        Q    Right.  What you did was you looked at the

14   merchandise, sort of generalized information for the business,

15   not the individuals, right?

16        A    That's correct.

17        Q    But looking at the merchandising like you said,

18   wasn't the only option, right?

19        A    Correct.

20        Q    And when you looked at the merchandising, when did

21   you get back the information from that subpoena?

22   Approximately, Detective.

23        A    It takes weeks for that information to come back, so

24   I would say not -- actually, a few weeks ago, we didn't have

25   the exact information on the merchant services, just from the

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 72

1    limited information that I had.  It wasn't until I did my

2    actual search warrant and I retrieved those items was I able to

3    get further to subpoena those documents.

4         Q    So, whatever subpoena -- you don't know the date

5    after the trash pull that you issued the subpoena for

6    merchandise?

7         A    For the merchant services account?

8         Q    Merchant services, excuse me.

9         A    Correct.

10        Q    You don't know the date?

11        A    No, sir, I don't.

12        Q    And it wasn't pursuant to like an urgent subpoena,

13   emergency subpoena, grand jury subpoena, right?

14        A    Correct.

15        Q    It was an ordinary subpoena?

16        A    That's correct.

17        Q    And nothing regarding that came back as evidence of

18   anything prior to the execution of the sneak and peek warrant,

19   right?

20        A    That's correct.

21        Q    So, the only result sort of that you got back from

22   your followup on the category of towels and the category of

23   documents, the only results back you got from your followup was

24   the biological test?

25        A    That's correct.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 73

1      Q      And you know that you can order expedite -- I mean,

2    I'm not saying you needed to do it here, but you can order

3    subpoenas expedited or ask the State's Attorney to open a grand

4    jury investigation and get a subpoena faster, correct?

5      A      There are ways but I've dealt with banks.  They're

6    very difficult to get any of those items back expeditiously.

7    So, unfortunately, I've done that before and I knew it still

8    wasn't going to fit within my timeline, so I didn't do that.

9      Q      And what was your timeline?

10     A      We had a day in February where this coordinated where

11   we would be doing a coordinated search warrant with other

12   agencies.

13     Q      And what was that date?

14     A      February 19th.

15     Q      Between the trash pulls and January 10th, okay, when

16   you do the john stops, right?  There isn't any affirmative

17   evidence you develop between those dates that makes its way

18   into the warrant application, correct?

19     A      I would say information regarding those trash pulls

20   that were affirmative for the seminal fluid that were also

21   affirmative for the names of the masseuses, those made its way

22   into that document, yes.

23     Q      Absolutely.  But anything after that -- so, that was

24   November 14th and 15th, right?  I'll give you the 15th to kind

25   of do all that stuff, right?  November 16th through January

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 74

1    10th there just wasn't affirmative evidence developed?

2         A    There wasn't any other evidence, correct.  Developed.

3              MR. SPIRO:  This is Defense 7.  It's a calendar.  I

4         assume --

5              MS. ARCO:  No objection.

6              MR. SPIRO:  -- no objection.  I would offer this

7         calendar into evidence.

8              THE COURT:  I heard no objection.

9              MS. ARCO:  I have no objection.

10             THE COURT:  Admitted.

11        (Thereupon, Defense Exhibit No. 7 was entered into evidence

12        without objection.)

13   BY MR. SPIRO:

14        Q    Do you recognize that calendar?  As a calendar?

15        A    I recognize it to be a calendar, yes.

16        Q    Great.  Fantastic.  And I kind of blocked it out just

17   to make it easy, but you do the trash pulls and you end your

18   surveillance in November, right?

19        A    That's correct, sir.

20        Q    November 14th is the last day of surveillance?

21        A    Yes, sir.

22        Q    I gave you the 15th off, you saw that?

23        A    I did.  I appreciate that, sir.

24        Q    You're welcome.  In October is when it starts, right?

25        A    Yes, sir.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 75

1      Q      Okay.  So, it starts kind of like the beginning of

2      Fall -- well, Martin County was ahead you, right?

3      A      That's correct, they were.

4      Q      By the time we're in November, they already had their

5      sneak and peek warrant, right?  We talked about that already?

6      A      Yes, sir, they did.

7      Q      Okay.  So, you're in November.  You got the day off

8      on November 15th and you said no evidence is developed between

9      November 16th and January 10th that makes it into the warrant?

10     A      That's correct.

11     Q      So, nothing on the 16th, right?

12     A      Correct.

13     Q      Or anything in December.  We're just going to cross

14     out all of December, right?

15     A      That's correct.

16     Q      And we're going to cross out the first ten days or so

17     of January, okay?  Is that right?  Nothing developed?

18     A      Nothing developed, yes, sir.

19     Q      And then January 10th everyone is back after sort of

20     the end of the year, right?

21     A      Yes, sir.

22     Q      And police activity, law enforcement activity, you

23     know, it slows down a little over Christmas and New Years and

24     then it picks back up, right?

25     A      Yes, sir.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 76

1    Q    And when you get back in January and things start to

2  pick back up, you know, January 10th, you got like a month,

3  right?

4    A    A month?

5    Q    Until February 19th?

6    A    That's correct.

7    Q    A month's not a lot of time?

8    A    That's not a lot of time, you're correct.

9    Q    And you've got a lot of things to do?

10   A    That's correct.

11   Q    And I think Sergeant Hennessy is not here anymore,

12 but he was here this morning.  I mean, let's be honest, it's a

13 lot of pressure?

14        MS. ARCO:  Your Honor, I'm going to object as to

15        relevancy.

16        THE COURT:  I'm sorry, object to what?

17        MS. ARCO:  Relevancy.  Whether the sergeant's here,

18        whether there's pressure or whatnot as to whether or not,

19        again, it was lawful to put cameras inside the spa which

20        is why we're really suppose to be here today as to whether

21        or not it was legal.

22        THE COURT:  I'll sustain that.  I'm not concerned

23        about the pressure that this witness may have felt.

24        MR. SPIRO:  Right.  And I guess I'll rephrase.  Maybe

25        the word pressure is throwing off the point.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 77

1    BY MR. SPIRO:

2         Q    But you were on, like you said earlier, the word you

3    used was timeline.  You were on a timeline?

4         A    Yes, sir.

5         Q    And on January 10th you do john stops, what they call

6    john stops, right?

7         A    That's correct.

8         Q    And you do those for a few hours, right?

9         A    Correct.

10        Q    And you didn't do any john stops in the period which

11   we crossed out on the board, right?

12        A    That's correct.

13        Q    And I just want to sort of summarize, the john stops,

14   they basically tell you that they go in and they pay at the

15   register, and that you understood that they pay $59.00 for a

16   half an hour massage and $79.00 for an hour massage, right?

17        A    That's correct.

18        Q    And that was very clear to you when they told you

19   that, correct?

20        A    Correct.

21        Q    No trouble hearing them?

22        A    No.

23        Q    No trouble understanding them?

24        A    No, sir.

25        Q    You even repeated those numbers at the press

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 78

1    conference.  You're pretty confident in those numbers?

2        A    Yes, sir, I am.

3        Q    Were you alone when you got that information from

4    them?

5        A    No.

6        Q    Who was with you?

7        A    As you can see in my affidavit, there was a marked

8    unit that would pull the johns over.  And then once the marked

9    unit, that officer was finished with the traffic stop, then I

10   would introduce myself and I would say, hi, I'm Detective

11   Sharp.  I'd like to speak to you.

12       Q    So, just to sort of follow, again, unmarked car, sees

13   the john -- we're going to call him the john -- leaving a

14   massage parlor, radios -- follows the person and radios to a

15   marked patrol car and says find a reason to pull them over,

16   right?  Find probable cause to pull them over?

17       A    Correct.

18       Q    They pull them over?

19       A    Correct.

20       Q    They have them on the side of the road?

21       A    Correct.

22       Q    Detective Sharp shows up?

23       A    That's correct.

24       Q    And they also told you that basically what happens is

25   they get a massage, they flip over, they received general

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 79

1    manipulation as you put it, they were cleaned off, right, with

2    a towel again and they tipped or they didn't and they left?

3        A    Correct.

4        Q    That's the gist?

5        A    Yes.

6        Q    Those individuals, which I think are sort of

7    Subject A to D, right, you called them?

8        A    Yes, sir.

9        Q    They're never charged?

10       A    They are not, no.

11       Q    And you don't -- that happens in prostitution

12   investigations where people are stopped and never charged,

13   right?

14       A    That happens in all kinds of investigations, yes.

15       Q    Well, I mean, I think you would agree with me that if

16   it's a murder investigation and somebody murders somebody, you

17   don't stop and go, you know what, thanks for the information,

18   take off, right?

19       A    That would be correct.

20       Q    But in an investigation like this, right, where the

21   most egregious thing that the person you stopped did was what

22   occurred inside the massage, you have the discretion to let

23   them go?

24       A    That's correct.

25       Q    And you exercised that discretion?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 80

1      A      Yes.

2      Q      And that happens all the time in the State of

3  Florida?

4      A      Yes.

5      Q      And, in fact, you also don't sort of say to the

6  johns, hey, can you come back to the precinct and write out a

7  statement.  You don't say that?

8      A      No, I don't.

9      Q      You don't ask them to sign a statement that's

10  notarized or anything like that?

11      A      They gave me a statement on the side of the road

12  which was recorded.

13      Q      How was that recorded?

14      A      On body camera.

15      Q      Do you have those recordings?

16      A      They are in evidence, yes.

17      Q      Meaning that they are preserved somewhere?

18      A      Yes, sir.

19      Q      Right.  And I don't know what they say because I

20  haven't gotten -- it's not your fault, but we don't have

21  discovery, right?

22      A      That's correct.

23      Q      So, you know I can't say but isn't it a fact

24  Subject B said, you know, you're full of baloney.  I can't say

25  that, right, because I've heard the Court.

DocuSign Envelope ID: EF4A7C93-1F69-44CA-B715-9B88E8C26A46

Page 81

1        A     That and I don't lie, but yes.

2        Q     So -- and you also know that you don't charge them

3    and then try to flip them like make them CIs, right?

4        A     At this point they were confidential informants

5    because I advised them I'm not going to charge you.  I would

6    like to ask you questions regarding what occurred inside.

7        Q     So, they become, in your mind, confidential

8    informants in that moment, colloquially at least?

9        A     Yes, sir.

10       Q     And, I mean, did you consider charging them, making

11   them go to court and then sort of flipping them and saying, you

12   know, now that we have you, I'm going to videotape your

13   statement.  I'm going to get more out of you.  Did you consider

14   that or not?

15       A     We were on the side of the road and I made it very

16   clear to them that my intention was to use their information to

17   assist me in putting an end to a illicit massage business that

18   was operating within the strip mall.

19       Q     Right.  But the question is did you consider whether

20   or not that -- before you even pulled them over, did you

21   consider, okay, one option is what you did.  And another option

22   would be arrest, charge, come up with a plea deal, make them

23   flip, cooperate, they come into a courtroom.  Did you consider

24   that or, no, it's too low level of an offense?

25             MS. ARCO:  Your Honor, the State's going to object.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 82

1        He could not legally arrest these individuals because he

2        did not see any crime.  This is not an arrest for a

3        misdemeanor not given within his presence.

4            MR. SPIRO:  This is a speaking objection.

5            MS. ARCO:  So, the objection is relevancy to all of

6        this.

7            MR. SPIRO:  Your Honor, it's a speaking objection

8        about the law, not what's in the officer's mind.  And I

9        have every right to ask it in a case about legal necessity

10       whether or not he considered other options.  It is the

11       hallmark of necessity cross examination.

12           THE COURT:  I'll deny the objection.  Go ahead.

13   BY MR. SPIRO:

14       Q    So, the question, Detective, again is you didn't

15   flip, right, and turn them into witnesses for the State,

16   correct?

17       A    I didn't flip them as you put it because as the State

18   pointed out, I did not have probable cause to arrest them

19   because I did not have a misdemeanor that occurred in my

20   presence.

21           MR. SPIRO:  Judge, it's very clear to me that that

22       objection was meant to obstruct this process and to give

23       information to the witness and I would ask that the Court

24       instruct the State Attorney's Office to not volunteer

25       answers and information because, as the Court saw, for

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 83

1          minutes he testified about he knew he could arrest them

2          and now the State injects with, oh, Detective, hint hint.

3              THE COURT:  Well, we'll just ask the parties to keep

4          their objections as brief as possible and if you need to

5          approach the bench, you may.

6   BY MR. SPIRO:

7      Q    So, Detective, in any event, you believe that

8   Subjects A to D were honest and forthright with you, correct?

9      A    Yes.

10     Q    You believe what they told you?

11     A    Yes.

12     Q    You credited what they told you?

13     A    Yes.

14     Q    And you didn't ask follow-up questions such as did

15  you spend any money at the spa on prior occasions, correct?

16     A    I did.

17     Q    You asked about how much money they had spent at the

18  spa on prior occasions?

19     A    I did.

20     Q    Did you ask what kind of cash register was inside?

21     A    The type of cash register?  I don't believe that was

22  part of my questions, no.

23     Q    Or was there a computer system related to the cash

24  register, did you ask that?  As you sit here today, do you

25  recall asking that?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 84

1       A       I don't recall that, no.

2       Q       And, as you sit here today, did you ask them whether

3   or not there was a discount for cash versus credit cards?

4   Anything like that?

5       A       There was -- correct.

6       Q       I'm only asking, as you sit here today, do remember

7   asking Subjects A to D these questions?

8       A       I remember asking if there is a discount and I was

9   told not only through their testimony but also what I gathered

10  online that they had an early bird special and that if you

11  showed up before 1:00 p.m., you did receive a discount.

12      Q       Right.  But just so the record is clear about this,

13  I'm not asking what you learned online, right, and I'm not

14  asking about testimony because they never testified, right?

15  I'm asking just about what they said to you at the side of the

16  road.

17      A       Right.

18      Q       Because this is the last thing that happens before

19  you start drafting the search warrant, right?

20      A       That's correct.

21      Q       And you didn't ask them -- as you sit here today, you

22  don't recall asking them about how the masseuses communicated

23  with each other?

24      A       That's correct.

25      Q       And you didn't ask them about any computers that they

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 85

1    saw inside?

2         A    I can't recall if I did.

3         Q    Right.  If you don't recall, you can say I don't

4    recall.  As far as you remember, you didn't ask them that?

5         A    I don't recall.  Listen, I had a lengthy conversation

6    with these individuals on the side of the road.  That could

7    have very well been one of my questions, but as we sit today, I

8    do not recall specifically if I asked them if there was a cash

9    register or if there was a computer system.  I simply asked

10   when they walked in, were they greeted, if they were greeted,

11   by whom, how much they paid, did they get escorted to a room,

12   et cetera.

13        Q    Right.  You didn't -- well, let me just take you back

14   to your answer for a second.  I mean, I asked you whether or

15   not you remembered questioning them about any computers inside

16   the establishment.

17        A    Right.  I don't recall.

18        Q    You don't recall that, right?

19        A    Correct.

20        Q    But you sort of answered it by saying you know you

21   could have asked them about the computers inside?

22        A    Correct.

23        Q    I mean, were you thinking at the time that there

24   might be computers inside?

25        A    I'm sure it was in my mind somewhere that there could

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 86

1    be computers inside.

2        Q    I mean, do you remember like an actual thinking, you

3    know, there might be computers in there?  That would be

4    something I would want a search warrant.

5        A    Sure.

6        Q    Okay.  And did you ask them about -- you don't

7    remember asking them about sort of how they communicated via

8    text message or by their phones or anything like that, right?

9        A    Correct.  I did -- to clarify my statement, I did ask

10   if they would just show up to the business or if they would

11   call and make an appointment.

12       Q    Call the business or call someone's cellphone?

13       A    No, call the business and make an appointment.

14       Q    Right.  Whether the john would call the business,

15   right?

16       A    That's correct.

17       Q    And you're talking about the john's experience inside

18   the business, right?

19       A    Correct.

20       Q    I'm asking you if you asked the johns about how the

21   masseuses themselves communicated while inside of the business.

22       A    I did not ask those questions, no.

23       Q    Right.  It's going to seem a little silly, right, but

24   you didn't sort of say did they text each other?  Did they

25   walkie-talkie?  Did they have like at a nice restaurant like an

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 87

1    ear piece, you didn't ask those questions?

2         A     I did not, sir, no.

3         Q     You didn't ask whether the masseuses had jewelry on

4    or expensive clothing or bright colored purses?  You didn't ask

5    about the masseuses like that, right?

6         A     Correct.

7         Q     You didn't ask if there was a safe inside?  You

8    didn't say did you see a safe?

9         A     Correct.

10        Q     And did you consider asking those kinds of follow-up

11   questions?

12        A     No.

13        Q     You didn't consider it?

14        A     I didn't see the relevancy at the time.

15        Q     Detective, in terms of your background, you went to

16   school for criminal justice, right?

17        A     That's correct.

18        Q     And you wanted to be a police officer?

19        A     That's correct.

20        Q     You wanted to be a detective?

21        A     That's correct.

22        Q     And you recently made, relatively recently made

23   detective?

24        A     Three years ago, yes.

25        Q     Well, two and change.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 88

1    A    Three in July.

2    Q    Okay.  We'll give you three today.  At the time of

3  the investigation that it begins, it's more like two-ish?

4    A    Two-ish.

5    Q    Okay.  And you're the second youngest as I understand

6  other than Brian Panczak, the second youngest detective in the

7  whole squad; is that right?

8    A    Currently?  No.

9    Q    In 2000 -- at the beginning of this investigation.

10   A    No, there's another detective that's younger than me.

11   Q    Okay.  But there are certainly -- forget whose

12  younger.  There are certainly some that are more experienced,

13  right?

14   A    There are.

15   Q    I mean, Detective Hirsch is dealing with a triple

16  homicide, right?

17        MS. ARCO:  Your Honor, object, relevancy as to whether

18        Hirsch is dealing --

19        THE COURT:  Sustained.

20  BY MR. SPIRO:

21   Q    Well, who was your boss in this investigation?

22   A    Sergeant Lilienfeld.

23   Q    And what about Sergeant Hennessy?

24   A    He was another supervisor, yes.

25   Q    Were they -- did you have a partner in this

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 89

1    investigation?

2         A     Not really, no.  It was a concerted effort.

3         Q     What was a concerted effort?

4         A     The investigation.

5         Q     It was a concerted effort to just make you not have a

6    partner?

7         A     No, sir.  It was a concerted effort to work on the

8    investigation.

9         Q     By everybody?

10        A     By everybody.

11        Q     And you had February 19th, a month away, and

12   everybody helped?

13        A     Yes, sir.

14        Q     So, Lilienfeld and Hennessy were your supervisors on

15   this.  They were co-supervising you?

16        A     Yes, sir.

17        Q     And was there anybody supervising them, or does it go

18   from them to Chief Kerr?

19        A     No, it goes to them to the major.

20        Q     Then to the major to Chief Kerr?

21        A     Correct.

22        Q     So, Chief Kerr is your boss's boss's boss?

23        A     Yes.

24        Q     And -- and we're sort of finished, right, of the

25   January 10th time period and the next step in this is the sneak

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 90

```
 1    and peek warrant, right?

 2         A     Correct.

 3         Q     And what crime were you investigating for the sneak

 4    and peek warrant?

 5         A     Deriving support from the proceeds of prostitution.

 6         Q     And had you ever investigated that crime as lead

 7    detective before?

 8         A     No, I had not.

 9         Q     What is that crime?  Can you explain it to me?

10         A     It's a felony.  It's a crime where someone receives

11    monetary funds and derives support from those monetary funds to

12    have their lifestyle, so to pay for bills, et cetera.

13         Q     Okay.  So, is it like john, masseuse.  John hands

14    money to the masseuse, private massager, okay?  You follow me

15    so far?

16         A     Yes, sir.

17         Q     Because I'm going to try to unpack this a little bit

18    so we're talking about it.  Is that masseuse deriving proceeds

19    at that time?

20         A     He is.  Or she is.

21         Q     She is?

22         A     Yes.

23         Q     So, john walks into Operation Massage massage parlor,

24    gets greeted at the front desk, goes in a private massage room,

25    the door closes behind him, he gets a massage, he gets a little
```

DocuSign Envelope ID: EF4A7C93-1F69-44CA-B71S-9B68E5C26A40

Page 91

1    more than a massage, he pays money, he leaves, the door closes.

2    That's the case.  Both solicitation of prostitution and

3    deriving proceeds in your mind?

4        A    Correct.

5        Q    And when I asked you if you had ever investigated

6    deriving proceeds or had that kind of a case before, you're not

7    in some sort of specialized prostitution unit, right?

8        A    No, I'm not.

9        Q    There are obviously police precincts and squads that

10   have a vice unit because there are significant and unique

11   factors that are involved in prostitution cases?

12           MS. ARCO:  Objection as to relevancy as to other

13       departments.

14           THE COURT:  Sustained.

15   BY MR. SPIRO:

16       Q    You're not in one of those units, correct?

17       A    I am not.

18       Q    And you don't have any advanced specialization in

19   prostitution vice cases, this is just randomly your case?

20       A    I do have certifications that have discussed and

21   given me knowledge in regards to prostitution cases and

22   criminal enterprises such as this, yes.

23       Q    Oh, sure.  Certificates that mention, but you don't

24   have any advanced training.  Advanced training.  I don't mean

25   the certificates.  I mean advanced training or experience in

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B68E6C26A46

1  particularly deriving proceeds of prostitution investigations.

2      A    I have experience in prostitution investigations.

3  Particularly, into deriving support of the proceeds of

4  prostitution, no, I do not.

5      Q    So, let's talk about the drafting of the warrant.  Do

6  you draft the warrant?

7      A    I do.

8      Q    So, and just walk me -- why don't you just tell me.

9  I don't want to go through a narrative because the judge asked

10  me not to and it's a fair request and he's the judge.

11          You get a template from the State Attorney's Office

12  of how to draft one of these warrants?

13      A    Correct.

14      Q    And whose idea is it to get a sneak and peek warrant?

15      A    It was a concerted effort between -- well, it was my

16  idea.  I met with and spoken to other agencies and they had

17  done similar investigations.  And in order to properly

18  prosecute and charge deriving support of proceeds of

19  prostitution, I would need that sneak and peek in order to

20  obtain further evidence of that crime.  So, I met with the

21  State and I said I would like to get a sneak and peek warrant.

22      Q    And was the State involved prior to those

23  conversations after January 10th when your period of

24  investigation ends?  Were they involved in those conversations

25  with you and Martin County?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B68E6C26A46

Page 93

1      A      With Martin County, no.

2      Q      And I don't want -- I don't mean this in anyway,

3   Detective, but Martin County had a very, in your mind, similar

4   case and they got a sneak and peek and that was a lot of the

5   reason why it came to your mind I should get a sneak and peek?

6      A      Correct.

7      Q      Right?  If there's no Martin County and you're just

8   investigating this case, you wouldn't be sitting at your

9   detective chair going, you know, this feels like a sneak and

10  peek.  This was based on the Martin County case, correct?

11     A      Partly, yes.

12     Q      Well, had you ever done a sneak and peek warrant in a

13  prostitution case before?

14     A      I never investigated a criminal enterprise such as

15  this.

16     Q      Yeah, I get that you keep volunteering the fact it's

17  a criminal enterprise, but I'm asking you did you ever get a

18  sneak and peek warrant in a prostitution case before?  Yes or

19  no?

20     A      No.

21     Q      Okay.  And you understand in prostitution cases

22  there's like a statute that has all the prostitution cases --

23  charges in it, right?

24     A      Yes.

25     Q      Do you know what the statute is?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B66E8C26A46

Page 94

1     A     It's enumerated under 796.  I can't give you the

2 exact numbers.

3     Q     796, right?  And, so, this criminal enterprise is not

4 a statute that you were seeking a warrant under.  You keep

5 saying criminal enterprise.  There's no criminal enterprise

6 statute that you were seeking a warrant under, correct?

7     A     I was seeking a warrant for the deriving support of

8 the proceeds of prostitution.

9     Q     Statute 796?

10    A     Under Statute 796, yes.

11    Q     So, you had never applied for a warrant like this in

12 a 7 -- if you don't want me to keep saying prostitution case --

13 you do understand this is a prostitution case, right?

14    A     Prostitution is one of the components, yes.

15    Q     Right.  But there's this 796 Statute that talks about

16 prostitution and all prostitution-related offenses, right?

17    A     Yes.

18    Q     So, it's a prostitution case, right?

19    A     Yes.

20    Q     So, in this prostitution case, you had never gotten a

21 sneak and peek warrant for a prostitution case before, correct?

22    A     That's correct.

23    Q     And, as far as you know -- let me ask you, had any of

24 the detectives that were helping you on this case, had they

25 gotten a sneak and peek warrant under Section 796 for a pure

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B68E6C26A46

```
 1    prostitution case in your precinct?

 2              MS. ARCO:  Objection.  It's not a pure prostitution

 3         case.  He's mischaracterizing what we're here for today.

 4              THE COURT:  Sustained.

 5    BY MR. SPIRO:

 6         Q    Okay.  So that we don't keep arguing about what this

 7    case is over -- I'm going to take down the calendar, but we're

 8    going to keep it very close.  And we'll call it a 796, okay,

 9    since everybody seems to --

10              MS. ARCO:  No, I would ask that you call it what it

11         is, deriving support.

12              MR. SPIRO:  With all due respect, I can phrase the

13         question as I -- unless the Court directs me otherwise of

14         how I --

15              THE COURT:  Well, the more precise the question the

16         more helpful it is to the Court.

17    BY MR. SPIRO:

18         Q    The crimes you were investigating in this case fall

19    under Section 796, correct?

20         A    Correct.  Deriving support from the proceeds of

21    prostitution.

22         Q    Right.  I mean, part of it is also -- I don't want to

23    say deriving support.  But it's a 796 investigation, correct?

24         A    For deriving the -- here's the thing.  You had

25    mentioned --
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B68E6C26A46

Page 96

1    Q    Detective, there's not a question before you.

2         MS. ARCO:  Your Honor, I would ask that he would be

3    able to finish his answer.

4         MR. SPIRO:  It wasn't an answer.

5         THE COURT:  Well, he was going to clarify his answer.

6    I'll let him finish.  Go ahead.

7  BY MR. SPIRO:

8    Q    You want to clarify the question?

9    A    I would.  This is not as it was put a run-of-the-mill

10  prostitution investigation.  This was a criminal enterprise, an

11  illicit massage business.  In order to further that

12  investigation and to have a felony and develop probable cause

13  to shut this place down, I needed a felony.

14        In such, I did all of the things as listed in my

15  warrant to investigate and to prosecute a felony case which was

16  deriving support from the proceeds of prostitution.

17   Q    You needed a felony; is that what you said?  Correct?

18   A    Yes, sir.

19   Q    The detectives that were working with you and

20  collaborating with you had not done a sneak and peek warrant

21  for a 796 deriving proceeds in support of prostitution case,

22  correct?

23   A    Correct.

24   Q    Do you know where the State's Attorney Office got the

25  template that they gave you?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B58E8C26A46

Page 97

1    A    I believe it was from a previous case.

2    Q    The Martin County case?

3    A    No, sir.

4    Q    You say that with such certainty, Detective.  Isn't

5  it a fact that the template they gave you was the same template

6  in the Martin County case?

7    A    No, the template they gave me was a case in Boca

8  Raton that happened in, if I do recall, in 2014.

9    Q    And do you remember that because when you got the

10  template it included specific information about that that you

11  might have to delete, add or change?

12    A    Correct.

13    Q    And that's how you know it was from that case?

14    A    And speaking with the State Attorney and speaking

15  with the investigator, yes.

16    Q    When you say the investigator, who is that?

17    A    I can't recall his name off the top of my head, but

18  it was the investigator in that Boca Raton case.

19    Q    So, you also conferred with him about his case?

20    A    I made a phone call, yes.

21    Q    Just one?

22    A    I believe so, yes.

23    Q    Do you know in talking to the detective from Martin

24  County whether he used the same exact template?

25    A    I don't know that, no.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 98

1    Q    Well, do you know that there are pages of your

2    affidavit that -- strike that.  Do you know that there are

3    paragraphs of your affidavit that are verbatim, exact replicas

4    of the paragraphs in the Martin County affidavit?

5    A    No, I don't.

6    Q    Would it surprise you to learn that?

7    A    No.

8    Q    Why would it not surprise you?

9    A    Because Detective Fenton and I spoke ad nauseam in

10   regards to this investigation, and during the course of those

11   meetings and everything such, I'm sure at some point we

12   exchanged notes.  Now, that wasn't the exact affidavit.

13   Q    Right.  And I can see exchanging notes and there

14   would be some similarities between the two warrants, right?

15   That would be expected?

16   A    Correct.

17   Q    But you didn't take your affidavit --

18   A    To answer your question, Mr. Spiro, I never saw the

19   final draft of Martin County's sneak and peek affidavit.  I

20   know that Detective Fenton and I did exchange emails where I

21   asked for information in regards to what he may put in such a

22   warrant, so that way I would have a better idea to draft my own

23   warrant.  But I never saw the final draft or what was exactly

24   in that warrant.

25   Q    Okay.  I think you probably anticipated my next

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 99

1    question, but now your answer is you never saw the final draft

2    of the warrant, correct?

3        A    Correct.

4        Q    You said final draft twice in that answer, correct?

5        A    Yes.

6        Q    And you don't know what exactly was in that warrant,

7    correct?

8        A    Correct.

9        Q    But you knew some of the stuff that was in that

10   warrant, correct?

11       A    Correct.

12       Q    And when you and the detective were going back and

13   forth via email, you have those emails preserved somewhere,

14   correct?

15       A    I'm sure I do, yes.

16       Q    Okay.  And when you were doing that, did he email you

17   exact passages that he was going to include in his warrant?

18       A    He emailed me various things.  If it was the exact, I

19   don't recall if that was exact.

20       Q    Well --

21       A    You're telling me that I had the exact paragraphs

22   from my warrant to their warrant and --

23       Q    Bingo.

24       A    And I'm telling you I haven't seen their final draft,

25   so I don't know exactly what was placed in that warrant.  I

Page 100

 1   know at some point he did send me a paragraph, several, and

 2   said, hey, this is kind of what we're throwing around.  Did

 3   that make its way into his final warrant, that's what you're

 4   telling me.  I don't know that.

 5       Q    Okay.  Well, those paragraphs that were kind of being

 6   thrown around that you don't know absolutely with one hundred

 7   percent certainty whether they made it into his final warrant,

 8   you did use some of those paragraphs in your warrant?

 9       A    I did.

10       Q    Okay.  So, earlier at the very beginning of my

11   questioning of you, when I was asking you about the relevance

12   and the State was going objection, you remember that at the

13   beginning?

14       A    Yes, sir, I do.

15       Q    Okay.  I think you understand why I'm asking you

16   about the Martin County affidavit, sir, don't you?

17       A    Yes.

18       Q    Because there are paragraphs in your affidavit that

19   are exactly the same as their affidavit, correct?

20            MS. ARCO:  Your Honor, the State is going to object.

21       If he's going to ask him specific questions about his

22       search warrant, why not show him the document so he can

23       know exactly what he's doing.

24            MR. SPIRO:  We'd offer that search warrant immediately

25       into evidence.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 101

1          THE COURT:  You're talking about the Martin County

2     search warrant?

3          MS. ARCO:  Not the entire Martin County warrant, the

4     paragraphs that he must be claiming they fraudulently put

5     in because they got together.  I'm assuming that's where

6     he's going.

7          THE COURT:  Isn't there a rule of completeness issue

8     on a document like that?

9          MR. SPIRO:  Exactly.  I'd like the whole warrant in

10    subject to redaction later, that's fine with me.  But I

11    don't want to trip him up on --

12         THE COURT:  I'll admit it subject to relevance issues

13    regarding the entire document, but I'll admit it.

14         MR. SPIRO:  Thank you, Judge.

15    (Thereupon, Defendant's Exhibit No. 8 was entered into

16    evidence over objection.)

17         MR. SPIRO:  So, if we could, since this is going to

18    get verbatim in terms of this, if we could distribute a

19    copy of that what's now in evidence.  I believe it's

20    Defense 8; is that right?  Thank you very much.  I'm use

21    to putting stickers on things.

22         MS. ARCO:  So, just so we can make sure that he'll

23    have a copy of his warrant that he drafted and a copy of

24    the Martin County warrant that he did not draft, so he can

25    compare side by side.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 102

1          THE COURT:  Mr. Spiro, if you're asking him to

2     compare, he has to have --

3          MR. SPIRO:  A hundred percent, Judge, a hundred

4     percent.

5          THE WITNESS:  Thank you, Counselor.

6          MR. SPIRO:  So, Judge, as Defense 9 now I would offer

7     in the sections of the warrants that are replicas of one

8     another to aid the witness in comparing the two.

9          MS. ARCO:  So, is he saying now he does not want the

10    entire search warrant in?

11         THE COURT:  Okay.  What is being offered?

12         MR. SPIRO:  Defense 9 which has the sections that are

13    identical, or very close to identical, between the two

14    warrants.

15         THE COURT:  So, you're only offering the paragraphs

16    that resemble each other?

17         MR. SPIRO:  Correct.

18         THE COURT:  Not the entire document?

19         MR. SPIRO:  I already offered and was put in evidence

20    the entire document as 8.

21         THE COURT:  Okay.  So, this is a second exhibit?

22         MR. SPIRO:  It's a second document.

23         THE COURT:  It's a second exhibit.

24         MR. SPIRO:  Correct.

25         THE COURT:  Okay.  That's fine.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 103

1          MS. MOSER:  It's a demonstrative.

2          MS. ARCO:  I understand what demonstrative is.  I am

3     saying I would like him to have -- he's claiming that

4     there's certain paragraphs that are identical, or now he's

5     saying almost identical.  I would like Detective Sharp to

6     have the ones from his own warrant and the ones from

7     Martin County that he's going to be comparing it to, so he

8     can put them side to side, you can put them side to side,

9     we can all put them side to side, so we can see what was

10    absolute identical or what he is saying now almost

11    identical.

12         MR. SPIRO:  I would love that, Judge.

13         THE COURT:  That's a very reasonable request.  So,

14    let's give the witness both complete affidavits.

15         MR. SPIRO:  So, Detective, just to make sure we're all

16    on the same page here.  So, nine is offered and admitted,

17    Judge?

18         THE COURT:  Nine are the parts that the defense claims

19    closely resemble, right?

20         MR. SPIRO:  Right.

21         THE COURT:  Any objection from the State?

22         MS. ARCO:  No, Your Honor.

23         THE COURT:  Admitted.

24    (Thereupon, Defendant's Exhibit 9 was entered into evidence

25    without objection.)

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

```
 1   BY MR. SPIRO:

 2       Q    So, what do you have?  Do you have your own

 3   affidavit, the Martin County affidavit and the comparison?

 4       A    I do have my own affidavit.  You're advising this is

 5   the Martin -- just so I don't get confused, this is the Martin

 6   County affidavit?

 7       Q    Yes, sir.

 8       A    Okay.  And then this is the one where you're advising

 9   that the similarities occurred?

10       Q    Correct.

11       A    Okay.

12       Q    So, let's start on page one.  What I'm going to do,

13   Detective, just to make sure this works well, if you could look

14   at page one of both search warrant affidavits and find the

15   language that's in the search warrants that mirrors the image

16   that's on your cheat sheet, okay?

17       A    Okay.

18       Q    All right.  Now compare the two on page one.  And

19   this isn't particularly controversial, but they're the same,

20   right?

21           THE COURT:  By the way, I have this as the - is this

22       the one?

23           MR. KRIDOS:  We don't know.  We're confused.

24           THE COURT:  I'm trying to find the Palm Beach County

25       affidavit the witness submitted.
```

DocuSign Envelope ID: EF4A7C83-1F89-44CA-B719-9B88E8C26A46

Page 105

1          MR. GOLDBERGER:  It's coming up right now, Your Honor.

2          THE COURT:  Yeah, that's what I have.

3          MS. ARCO:  And, for the record, are we looking at

4      Orchids SW affidavit dash page one where it says affidavit

5      and application for search warrant authorizing the

6      monitoring and recording of visual, non-audio conduct?  Is

7      that what you're asking him to look at?

8          MR. SPIRO:  Yes, and that's why I'm glad we entered

9      Exhibit 9 because I don't want to belabor this, but it's

10     going to be exactly -- the language is going to be exactly

11     what's on the cheat sheet.

12  BY MR. SPIRO:

13     Q    So, that's what I'm asking and it's not particularly

14  controversial.  They are exactly the same in the Martin County

15  warrant as they are in your warrant, correct?

16     A    They're the same type of warrants, so, yes.

17     Q    Right.  That's a yes?

18     A    Yes.

19     Q    Okay.  And if we go to now page eight of your

20  warrant, your affidavit, okay?  Paragraph four.

21         THE COURT:  Full paragraph four?

22         MR. SPIRO:  Correct.  That starts based on

23     surveillance.

24         MS. ARCO:  For the record, that's the fourth paragraph

25     down on page eight.

DocuSign Envelope ID: EF4A7C93-1F68-44CA-B715-9B08E8C26A46

Page 106

1        THE COURT:  Right.  It's actually the third full

2    paragraph down.

3  BY MR. SPIRO:

4    Q    So, Detective, on that paragraph in your warrant, and

5  now can look on page twenty-four, paragraph one, of the Martin

6  County warrant.

7        MS. ARCO:  Your Honor, may we approach?  There was

8    something that came to my attention I'd like to bring to

9    the Court's attention.

10        THE COURT:  Come on up.

11        THE WITNESS:  While you're approaching, may I be

12    excused to use the restroom?

13        THE COURT:  Is there any objection to the witness

14    leaving the stand?

15        MR. SPIRO:  No, Your Honor.

16        THE COURT:  You're not going to be talking with anyone

17    off the stand.

18        THE WITNESS:  I just need to use the restroom.

19        THE COURT:  Feel free to use the restroom.

20        MS. ARCO:  It's really not that it has to be a secret,

21    I guess.

22        THE COURT:  Then why are we up here?

23        MR. GOLDBERGER:  We don't need to be.

24        MS. ARCO:  Well, I was told that it was sealed.

25        MR. SPIRO:  It's not sealed.  We got a public record.

Page 107

1          MS. ARCO:  That's what I was told, Your Honor.

2          THE COURT:  I mean, can we do it without everybody up

3      here?  With the witness off the stand, for the record.

4          MS. ARCO:  It had come to my attention that it may

5      have been sealed by Ms. Miller from my office.

6          MR. SPIRO:  No.

7          MS. ARCO:  However, if defense attorney is telling me

8      it's not sealed, then we'll take his representation that

9      it's not sealed.

10         THE COURT:  Sealed?

11         MR. SPIRO:  The warrant.

12         MS. ARCO:  The Martin County warrant.

13         THE COURT:  Come on up.  Somebody said sealed and I

14     want to be careful about this, if you don't mind.

15     (Thereupon, a side-bar discussion was had outside the

16     hearing of the courtroom as follows:)

17         THE COURT:  Sealed in Martin?

18         MR. KRIDOS:  Just in abundance of caution, we were

19     informed that the Martin County search warrant, an

20     application and affidavit for search warrant were sealed.

21         THE COURT:  By Martin County?

22         MR. KRIDOS:  Yes, Judge, through their investigator.

23     But counsel is representing that he got a copy of the

24     Martin County --

25         THE COURT:  It's a public document then.

DocuSign Envelope ID: EF4A7C93-1F69-44CA-B715-9B88E8C26A46

Page 108

1           MR. KRIDOS:  That's fine, Judge.

2           THE COURT:  But it's not sealed?

3           MR. KRIDOS:  No.  We didn't know that he had received

4      a copy, so that's fine, Judge.  Are you comfortable with

5      that, Judge?

6           THE COURT:  I'm comfortable with that.  So, any

7      reference to it being sealed is inaccurate.

8           MR. SPIRO:  So, I'm going to try and go through this

9      quickly and compare the two.  The exhibit is in evidence.

10          MR. KRIDOS:  Just please point us to the specific

11     paragraphs.

12          MR. SPIRO:  There's a cheat sheet that says page and

13     paragraph.

14          MS. ARCO:  But you also have to say it out loud.

15          THE COURT:  Is this your cheat sheet?

16          MR. SPIRO:  Yeah, it's in evidence.

17          MS. ARCO:  Say it out loud.

18          MR. SPIRO:  I am but the problem is you guys all talk

19     so you don't hear me, but that's fine.  I made the cheat

20     sheet to try to be helpful.  This is not a gotcha game.

21          MR. KRIDOS:  No, no, no.  That's fine.

22          THE COURT:  We're good?

23          MS. ARCO:  We're good.

24          THE COURT:  Okay.

25     (Thereupon, the side-bar discussion was concluded.)

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E6C26A46

Page 109

1          THE COURT:  Okay.

2          MR. SPIRO:  Thank you, Judge.  May I resume?

3          THE COURT:  Yes.

4    BY MR. SPIRO:

5          Q    So, just to orient everybody again, you've got your

6    search warrant affidavit, you've got the Martin County search

7    warrant affidavit, and you got the cheat sheet.  At the top of

8    the cheat sheet in each page that we're going to go through, it

9    has the page number, the paragraph number, and then with the

10   warrant that ends up at the bottom, the Martin Bridge search

11   warrant affidavit, the page number and the paragraph number

12   okay?

13         And the words that are typed in regular font are

14   identical, and the words that are in yellow highlighting have

15   been changed.  And if there are words in red, they've been

16   added.

17         A    Okay.

18         Q    Okay.  So, are you on page two, okay, which is Orchid

19   search warrant affidavit page eight, paragraph four?

20         A    On the cheat sheet, yes.

21         Q    Okay.  And, so, as you compare them, you write based

22   on the surveillance, a review of subpoenaed documents, other

23   investigative methods and your affiant's experience in

24   investigating similar illicit, right?

25         A    Correct.

DocuSign Envelope ID: EF4A7C93-1F69-44CA-B715-9B88E8C26A46

Page 110

1       Q      And they write the same thing other than they say

2    obtained.  You say subpoenaed, they say obtained, correct?

3       A      Correct.

4       Q      And you write the overwhelmingly, parentheses, if not

5    exclusively, male customer clientele?

6       A      Correct.

7       Q      And they write the overwhelmingly, parentheses, if

8    not exclusively male customer clientele, right?

9       A      Correct.

10      Q      And this is in your warrant, the parentheses if not

11   exclusively, correct?

12      A      Correct.

13      Q      And you write that because you want to -- you're

14   writing that maybe it is even exclusively, right, there's so

15   many men, right?  That's what in parentheses, if not

16   exclusively, means, right?

17      A      Correct.

18      Q      And that's what you intend to convey when you write

19   in parentheses, if not exclusively, right?

20      A      Correct.

21      Q      Uh-huh.  And you swore to this affidavit, correct?

22      A      Yes, sir, I did.

23      Q      But you know from what we already discussed from your

24   reviews online, from seeing a couple of women go in there, you

25   know that it's not exclusively men going in there, correct?

DocuSign Envelope ID: EF4A7C93-1F69-44CA-B715-9B68E8C26A46

Page 111

```
 1       A     I know that it's overwhelmingly, if not exclusively,
 2   male customer clientele.
 3       Q     Not exactly.
 4       A     Well, there were females that entered the business,
 5   and those females that entered the business exited the business
 6   within a short amount of time leading me to believe that they
 7   did not obtain services for which the business was advertised
 8   for.
 9       Q     Wait a second, wait a second.  Let's go two steps
10   here because I don't want to go down that road, okay?
11   Overwhelmingly, sure.  Can we agree overwhelmingly?
12       A     Yes.
13       Q     Can we agree not exclusively?
14       A     I place it in my warrant I believe that, if not
15   exclusively, there is overwhelmingly an amount of male
16   clientele that entered the business.
17       Q     Okay.  We agree overwhelmingly, right?  We both agree
18   overwhelmingly, right?
19       A     I also agree if not exclusively.  That's what I
20   placed in my warrant.
21       Q     Detective, you read reviews online of women, right?
22       A     Correct.
23       Q     You already testified about that under oath in open
24   court, right?
25       A     Correct.
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 112

1      Q      So, you know that it's not exclusively.  You know

2   that women went in there.

3      A      Those women went in there prior to my surveillance.

4   So, during the course of my surveillance, it was

5   overwhelmingly, if not exclusively, male clientele.

6      Q      No, no, no.  Detective, Detective.  Overwhelmingly --

7           MS. ARCO:  Your Honor, object to the badgering of the

8           witness.  He's answering it.

9           MR. SPIRO:  It's not badgering.

10           THE COURT:  I don't know.  I mean, how many angels can

11           dance on the head of a pin?  I mean, I'm trying to

12           understand exactly what the defense argument is.  He uses

13           the three words in parentheses really to modify

14           overwhelmingly, correct?

15           MR. SPIRO:  Correct.  That would leave the reader with

16           an impression that he believes that it could be

17           exclusively, right?

18           THE COURT:  Perhaps.  But that's not entirely what he

19           says.  He says overwhelmingly and they modify each other,

20           as I read it.  We can't read one without the other.

21   BY MR. SPIRO:

22      Q      Correct.  But when you write if not exclusively, you

23   know that there were women -- so now you've -- your answer to

24   the website reviews of women is, yeah, but that wasn't during

25   my surveillance, right?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B68E6C26A46

1    A    Correct.

2    Q    But your warrant isn't limited to facts you learned

3    during your surveillance, is it?

4    A    It begins in October which is when I started my

5    investigation.  It goes into November when I began my

6    surveillance.  It follows up with further surveillance and

7    trash pulls, et cetera, that were conducted in November and in

8    January.

9    Q    It does not include only the time periods of your

10   investigation because you refer to reviews in websites that

11   happened before your investigation, correct?

12   A    Correct.

13   Q    Okay.  And you don't tell the Court in this affidavit

14   that you read female reviews, correct?

15   A    Correct.

16   Q    And, so, you know that the clientele is not

17   exclusively men, correct?

18   A    I know from my surveillance that the clientele was

19   exclusively men.

20   Q    Well, let's go to the surveillance then if you don't

21   want to answer that question.  You just testified an hour ago

22   that there were at least two women that went in there during

23   your surveillance.

24   A    That's correct.

25   Q    Uh-huh.  So, it wasn't exclusively --

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 114

1      MS. ARCO:  Your Honor, I'm going to object to the

2   comments.  This really is his witness.  He should not be

3   leading the way he's doing.

4      THE COURT:  Well, you did call the witness.  Although,

5   I don't know, is he a hostile witness?

6      MR. SPIRO:  He is if he's saying that -- if he's

7   changing his answer from whether or not there were women

8   that went in during his surveillance and now changing it

9   on the same day of the same testimony, he absolutely is

10   hostile.  I don't think he's going to do that, but if he's

11   telling me that he believes that the if not exclusively,

12   if he believes it to not be misleading, then yes, he's a

13   hostile witness.

14      THE COURT:  Well, the Court understands that the

15   highlighted portion that the Court is now reviewing, as is

16   everyone else, is designed to connect to his earlier

17   testimony; is that correct?

18      MR. SPIRO:  Designed to connect?

19      THE COURT:  To the testimony you said he gave an hour

20   ago regarding the females who went into the business.

21      MR. SPIRO:  Correct.

22      THE COURT:  So, you're now comparing, I take it, what

23   he said an hour ago with what he put in his affidavit.

24      MR. SPIRO:  Correct.  And what was in his mind at the

25   time.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1          THE COURT:  Right.

2     BY MR. SPIRO:

3          Q    So, you testified an hour ago that there were at

4     least a couple of women that went in there at the time of your

5     surveillance, correct?

6          A    Correct.

7          Q    And, so, it wasn't exclusively that men went in there

8     during the time of your surveillance either?

9          A    But what I later testified to and what I continue to

10    testify to is that those women did enter the business, but they

11    left short periods of time after.  So, that led me to believe

12    that those woman did not stay there to obtain services in which

13    the spa allegedly provided to them, which is why I wrote the

14    overwhelmingly, if not exclusively, male customer clientele

15    entered the business for a flat fee which goes directly to the

16    business.

17         Q    Well, Detective, when you said it the first time

18    today when you testified that at least two women went in there

19    during the time, you didn't explain then that you believe that

20    those women went in there and then didn't get services, right?

21              MS. ARCO:  Your Honor, I'm going to object --

22              THE WITNESS:  You didn't ask --

23              THE COURT:  I can't hear everybody over each other.

24              MS. ARCO:  I'm going to object because that was not

25         the question asked at that particular time.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 116

1          THE COURT:  Sustained.

2          MR. SPIRO:  So, the Court's heard the answer to this.

3     BY MR. SPIRO:

4          Q    How long did those women stay in there that made

5     you -- are you confident that those women that you saw go in

6     there during your surveillance, are you confident that they

7     couldn't receive services inside?

8          A    They were there for short periods of time, so I know

9     that the services in which they offer, facials, et cetera,

10    those take lengthy periods of time and I know that they weren't

11    there for a period of time long enough for them to have receive

12    that said service.

13         Q    Well, so, why don't you estimate for the Court how

14    long you think those women were inside of there.

15         A    A few minutes.

16         Q    Okay.  There's a pole camera of this, Detective?

17    There's a camera that was outside that would show those women

18    entering and exiting?

19         A    Yes.

20         Q    Would it surprise you to learn that one of the female

21    customers provided the defense with their receipt for services?

22    Would you be surprised to learn that?

23         A    Yes.

24         Q    Okay.  So, if a female patron of the spa that went in

25    there and got services while you were surveilling provided the

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 117

1    defense with a copy of a receipt for spa services that the

2    female got and she said she was in there for an hour, that

3    would surprise you?

4         MS. ARCO:  Your Honor, I'm going to object.  He's

5         testifying as to what one other person did.  It's hearsay

6         and he's testifying.  If he would like to take the stand,

7         I'll cross examine him.  I would also like the name of

8         this particular witness that he's referring to.

9         THE COURT:  Come on up.

10   (Thereupon, a side-bar discussion was had outside the

11   hearing of the courtroom as follows:)

12        THE COURT:  All right.  Is the defense going to

13        provide the name of the female patron that it's referring

14        to?

15        MR. SPIRO:  Not at this time, Your Honor.

16        THE COURT:  Okay.  Are you going to provide a copy of

17        the receipt?

18        MR. SPIRO:  If the Court would like.  I would ask to

19        preserve her identity and to keep this private.  I can

20        provide you a photograph of her, I can provide you an

21        affidavit, I can provide you a picture.  I can provide you

22        anything you'd like.  I just wouldn't want the public or

23        the media following this case to give her name.  And, in

24        fact, I would urge the Court not to provide it.

25        MS. ARCO:  Your Honor, I would like to call Mr. Spiro

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 118

1    to the stand and be able to cross examine him about this

2    information and I would like all of this particular

3    information. And I will call her as well and her name

4    will go public because I will call her.

5        MR. SPIRO: Your Honor, --

6        MS. ARCO: Excuse me. Excuse me. I let you talk.

7    But I will call her, so her name will come out and she

8    will be seen and we will investigate. But, obviously, we

9    need to do that and I would like to call Mr. Spiro, or any

10    member of his team, to find out whether or not this was

11    really happening, or whether or not she was paid because

12    Mr. Kraft does have a significant amount of money and we

13    do know that private investigators have been going up and

14    down the streets trying to get the two other women who we

15    just arrested, that situation, but that's for a whole

16    other case.

17        So, I'm concerned that this is not really true. I'm

18    concerned monies may have been paid and I'm concerned

19    because a lot of things are coming back to us from their

20    private investigators.

21        THE COURT: From what?

22        MS. ARCO: The things that are coming back to us from

23    their private investigators. So, I'm concerned there may

24    be -- there could be things going on that are untoward,

25    but I obviously don't know.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 119

1          MR. BURCK:  Judge, it's rather remarkable that the

2      State is accusing us of obstruction of justice and witness

3      tampering apparently and concocting evidence.  We reject

4      that.  We think that that's unethical.  We think that

5      violates the rules of the Bar in Florida.  They have no

6      basis to do that.

7          We have the evidence.  We will be happy to share it

8      with the Court and we would ask that the State be

9      admonished not to accuse defense counsel of criminal

10     behavior as part of their tactic.

11         The other thing I would say if the State would like to

12     call Mr. Spiro as a witness, obviously we will need to

13     call the people who wrote the affidavit as you will see

14     because this witness did not write the affidavit as you

15     will learn soon.  They wrote it.

16         MR. SPIRO:  Judge, can I say something?

17         THE COURT:  Go ahead.

18         MR. SPIRO:  On a cross examination question, I have to

19     have a good faith basis to ask a question.  I'm an officer

20     of the Court.  If I have --

21         THE COURT:  You're not on cross examination.

22         MS. ARCO:  He is cross examining --

23         MR. SPIRO:  Excuse me.  If I have a question for a

24     witness in a courtroom, I have to have a good faith basis

25     to ask it.  I have an affidavit signed and notarized.  I

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 120

1   have a photograph of the women who was in there at the

2   exact time he was surveilling and I have the receipt from

3   her visit to the spa.  And I'm sure that the Court has

4   observed that -- and I have been gentle in my cross --

5   that he did change his answer and I know that the Court

6   saw that.

7        So, I have every right to follow up with one question.

8   And I'm already done with this line of questioning.  If he

9   wants to say -- if he really want's to stand up in court

10  and say that his testimony is now that these women went in

11  and immediately darted out of there, he can say that,

12  Judge.  That record is quite clear.

13       MS. ARCO:  Number one, I did not pass discouragings on

14  them in open court, I did it up here.  And things have

15  been happening that have been getting back to us.  I don't

16  know.  I truly do not know what's going on and I don't

17  know because they never provided any of this information.

18       So, based upon a lot of things that are happening, it

19  does cause the State pause.  It does cause us concern.  I

20  don't have any evidence and that's why I would never say

21  it in open court.  I'm saying it to you up here.

22       THE COURT:  The Court's ruling is as follows:  I think

23  we need to keep in mind that what we have before us is the

24  defendant's motion to suppress.  We're not in trial and I

25  think that makes a big difference.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 121

1          If there are activities outside the courtroom that the

2      Court's not aware of that the State wishes to bring to the

3      Court's attention, it may.  With respect to this person,

4      this women who apparently obtained, perhaps, some services

5      for which she may have a receipt, the question that I

6      understand was asked is whether this witness was aware of

7      the fact that this person actually has a receipt for what

8      purports to be services.

9          Remember, it's whether or not the witness is aware.

10     That's what I understand was asked.  If it goes no further

11     than that, then I'm going to allow the question to be

12     asked.  And if there are any further proceedings that need

13     to be had, we'll take them if necessary.  Thank you.

14         MR. SPIRO:  And it was the last question about it.

15     Every time, Judge, they lodge an objection, I was already

16     moving on to another question.

17         THE COURT:  Okay.  Thank you.

18         MR. SPIRO:  Thank you, Your Honor.

19         MS. ARCO:  Thank you, your Honor.

20     (Thereupon, the side-bar discussion was concluded.)

21         MR. SPIRO:  May I proceed, Judge?

22         THE COURT:  Please.

23  BY MR. SPIRO:

24     Q    When you testified earlier today, Detective, you told

25  the Court that you know that at least two women who were not

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 122

1    customers went into the massage parlor during your

2    surveillance, correct?

3        A    Correct.

4        Q    Okay.  Your testimony now is that you don't know

5    whether they received any treatment because of the length of

6    stay that they were inside?

7        A    Correct.

8        Q    You don't know exactly how long they were inside?

9        A    Without reviewing those videos, no, I don't.

10       Q    It could have been longer than a few minutes, right,

11   couldn't it, Detective?

12       A    It could have been.

13       Q    Right.  Your surveillance details were fourteen,

14   fifteen hours sometimes where you're sitting outside of the

15   establishment, right?

16       A    Sometimes I was sitting outside the establishment,

17   other times I was reviewing live video from that camera we had

18   outside.

19       Q    And there were times when you would eat and use the

20   bathroom, right?

21       A    Absolutely.

22       Q    And you didn't rewatch all of the video, right?

23       A    I rewatched a lot of that video.  Could I account for

24   every second?  No, but I did rewatch a lot of that video which

25   is why I got the numbers that I did on the affidavit.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 123

1    Q    Right.  But you did not include any of the

2    approximately two women you saw enter the establishment during

3    that timeframe in your affidavit, correct?

4    A    May I refer to my affidavit?

5    Q    You absolutely can, sir.  Always.  It's in evidence.

6    A    Correct.  I wrote sixteen, eighteen, eighteen and I

7    wrote males.  So, I did not include the females.  More than

8    likely, like you said, that could have occurred when I was

9    taking a break.  It could have occurred at any point.

10   Q    Well, wait a second.  You said you remembered seeing

11   the two women.

12   A    Yes.  Vividly, yes, I do.

13   Q    Okay.  So, those vivid recollections did not make

14   their way into the warrant, correct?

15   A    Correct.

16   Q    The next page of our cheat sheet for comparing the

17   two warrants is page three, which is page eight of your

18   warrant, paragraph five, and page twenty-four, paragraph two of

19   the Martin County warrant.

20   A    Okay.

21   Q    And you would agree with me that these paragraphs are

22   very, very similar, sir, would you not?

23   A    Absolutely.

24   Q    Okay.  Meaning they're not the kind of things that

25   you think -- you don't think this was just random.  It's likely

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B86E8C26A46

Page 124

1    one of the paragraphs that he sent you, correct?

2         A    It could be one of the paragraphs that he sent me,

3    yes.  Like I said.  Until today I have not seen the entire

4    Martin County affidavit in its entirety, especially the final

5    draft.  But it could be that one of the paragraphs he sent me,

6    this could be one of the paragraphs that made its way into his

7    warrant.

8         Q    All right.  Let me break down that answer a little

9    bit, okay?  We can agree that your testimony is that you never

10   saw the final, okay?

11        A    That's correct.

12        Q    So, moving forward, all of my questions are about any

13   prior to final versions of paragraphs you saw, okay?

14        A    Understood.

15        Q    All right.  The second thing is my question is not

16   that it could have been a paragraph he sent you.  You're a

17   detective, don't you think it's almost certainly a paragraph

18   that he sent you based on the similarities?

19        A    It's almost a certainty that it could also have come

20   from the original affidavit that I received from the State.

21        Q    But we can agree that it's not as if you and some

22   detective in Martin County totally walled off with no notes and

23   came up with almost the same paragraph, correct?  That we can

24   agree on?

25        A    Like I stated, sir, the paragraph -- I received my

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 125

1   original template from the State Attorney's Office.  That

2   template was from an investigation that occurred years prior

3   and most of that information from that template was in my final

4   draft of this template.  So, could portions of Martin County's

5   template and Martin County's paragraph made its way into my

6   warrant exclusively, if that's what you're saying, sure.

7       Q   Okay.  So, a few more questions about this.  First is

8   you would agree that the Martin County affidavit where we're at

9   page twenty-four here, it's a lot longer than your affidavit,

10  correct?

11      A   My application affidavit is eleven pages.  It appears

12  that this one is twenty-nine, so yes.

13      Q   And they had another -- I mean, they had a several

14  month head start on you, too?

15      A   That's correct.

16      Q   And that's probably why their affidavit is longer?

17      A   Yes, sir.

18      Q   They had more time to develop more evidence?

19      A   Yes, sir.

20      Q   The second thing I want to point out to you is you

21  see that first sentence where the detective in Martin County

22  says:  Further, your affiant has specialized training and

23  experience in the investigation of prostitution organizations.

24  Do you see that?

25      A   I do.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 126

1    Q    Do you know whether that detective does?

2    A    He's told me that he does, yes.

3    Q    You had a conversation with him and he said just so

4  you know, Detective Sharp, I have training and experience in

5  the investigation of prostitution organizations?

6    A    We discussed -- yeah, absolutely.  We discussed

7  various things because I was interested in these types of

8  investigations and I would like to know to further my

9  experience and techniques.  I asked him, okay, hey, what

10 classes did you take or anything like that, so yeah, we did

11 have conversations with regards to that.

12   Q    And I'm glad you brought that up.  You wanted to

13 learn from this detective a hundred percent because it's

14 helpful to your investigation?

15   A    Absolutely.  Anybody that is involved in similar

16 investigations I like to learn from so that way I know and to

17 better myself as an investigator.

18   Q    And one of the things you do, like we talked about

19 before, there are detectives that are more senior to you that

20 you learn from, right?

21   A    Absolutely.

22   Q    And this detective in Martin County had done things

23 that you hadn't done and you wanted to learn from him?

24   A    Yes.

25   Q    And because you hadn't taken any investigation of

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 127

1    prostitution organization classes?

2         A    I had taken -- it wasn't exclusively into

3    prostitution organizations.  There was times in those courses

4    when they did discuss prostitution organizations, yes.

5         Q    What class was that?

6         A    Can I refer to --

7         Q    If you don't know, you don't know.  I'm just asking

8    if you know what class that was off the top of your head.  I'm

9    not questioning that you took the class, Detective.  I'm just

10   asking you what the name of the class is, if you remember.  You

11   can look at your warrant, I don't care.

12        A    I mean, it's in my -- so, I know in Advanced

13   Undercover Techniques and Survival there were discussions with

14   regards to that.  I know that in some of these other classes

15   that are listed there, they did touch on some of the

16   prostitution organizations, yes.

17        Q    Okay.  So, your testimony is that some of these

18   classes they touched on that experience?

19        A    Yes, sir.

20        Q    And you had, as you testified earlier here today,

21   this was your first investigation into a prostitution

22   organization, correct?

23        A    That's correct.

24        Q    And you certainly haven't been in any units that

25   specialize in investigating prostitution organizations?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 128

1    A    That's correct.

2    Q    Or specific advanced training of any kind, right?

3    A    Specific advanced training in --

4    Q    In prostitution organizations?

5    A    Like I stated, some of those classes that I have

6  tooken -- taken.  I'm sorry for bad English there.  Some of the

7  classes that I have taken have touched on criminal enterprises

8  including prostitution organizations.  Exclusively that?  No.

9  But to answer your question, I did receive training on those.

10   Q    That touched on those?

11   A    Correct.

12   Q    And you're aware that as you've already testified,

13 that the detective in Martin County had far more experience?

14   A    In this type of investigation, yes.

15   Q    Correct.  Far more experience, right?

16   A    Yes.

17   Q    And far more time?

18   A    Far more time, yes, sir.

19   Q    So, if we look at this first sentence:  Further, your

20 affiant has specialized training and experience in the

21 investigation of prostitution organizations.  And this is why

22 I'm starting with it.  It's copied and pasted.  That's not

23 exactly accurate, is it?

24   A    As I stated, I have had specialized training, too,

25 and experience with prostitution organizations because some of

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 129

1    those classes that I have taken did spend time on prostitution

2    organizations, as well as other criminal enterprises and

3    organizations.

4         Q    So, you think that if you take a course that mentions

5    prostitution organizations, that gives you specialized training

6    in prostitution organizations?  Is that your testimony?

7         A    It was a specialized training class and during the

8    course of that specialized training class, it did touch on

9    prostitution organizations.

10        Q    Okay.  But there's another word there that says

11   experienced, okay?  And we've been at this awhile.  We can both

12   agree, okay, that you don't have specialized -- you personally

13   do not have specialized experience investigating prostitution

14   organizations because you had never before even investigated a

15   prostitution organization?

16        A    I have experience in prostitution cases.  So, that

17   says specialized training and experience in the investigation

18   of prostitution organizations.  Experience goes to -- I've

19   attended several meetings.  I've read several documents and

20   several other things from various places that gave me that

21   experience.  I participated in prostitution stings and

22   prostitution investigations.  So, I believe right now we're --

23   I'm not trying to be hostile with you, sir, but I believe right

24   now we're just kind of arguing semantics.

25        Q    Sir, this is a sworn affidavit that went in front of

Page 130

1   a judge.  I don't think this is semantics and so I have to ask

2   you these questions.

3        MS. ARCO:  I'm going to object to him rendering an

4        opinion.  He's not taking the stand.  He's an attorney.

5        THE COURT:  Sustained.

6   BY MR. SPIRO:

7        Q    So, there is a change that you make between the

8   Martin County affidavit and the affidavit that you signed and

9   swore to which is that the Martin County affidavit says lack of

10  financial records relating back to the employees, right?  And

11  you don't have that.  You have analysis of banking and

12  financial records, right?

13       A    Yes.

14       Q    You didn't check before you submitted this warrant of

15  whether or not there was a lack of financial records relating

16  back to employees, correct?

17       A    Correct.

18       Q    Next page.  Your search warrant affidavit page eight,

19  paragraph six.  Martin County page twenty-four, paragraph

20  three.

21       A    Thank you for the cheat sheet.

22       Q    I thought it would be helpful.

23       A    It's very helpful.  Thank you.

24       Q    Do you see any similarities between those two

25  paragraphs?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 131

1       A       They appear to be the same.

2       Q       We can agree that either because you both started

3    with the same template or because he emailed you the exact

4    paragraph, that would be the only two explanations that would

5    give rise to two detectives in two different counties having

6    verbatim paragraphs in their warrants, correct?

7       A       Like I stated, my original template came from the

8    State Attorney's Office.  That paragraph was exactly how it was

9    in that template.

10      Q       And you didn't change it?

11      A       No, I did not.

12      Q       Go to the next page.  This is your affidavit page

13   eight, paragraph seven.  The Martin County affidavit page

14   twenty-four, paragraph four.  Do you see similarities between

15   these two paragraphs?

16      A       I do.

17      Q       You would agree with me that the only two logical

18   explanations are either that you got that paragraph from the

19   original template or he emailed that paragraph, correct?

20      A       Correct.

21      Q       And you changed firstly from first, it looks like?

22      A       Like I said, most of the information that was

23   contained in my warrant was from the template that I received

24   from the State Attorney's Office.  That is how the template was

25   given to me from the State Attorney's Office.  So, if he also

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 132

1    had a copy of that, I don't know.  And, secondly, that is

2    exactly how it was written there as the template that I

3    received from the State.  It said firstly oftentimes and then

4    it goes on to say further things.

5         Q    Got it.  So, it seems like the Martin County

6    detective changed firstly to first; is that what you're saying?

7         A    If that's what you are.

8         Q    Sure.  All right.  Let's move on to something

9    slightly more significant.  At the bottom of your paragraph,

10   you're talking about an undercover himself engaging in active

11   prostitution theoretically, right?

12        A    Correct.

13        Q    And you say that that's a crime nonetheless that is

14   at the crux of the investigation?

15        A    Yes.

16        Q    You wrote that?

17        A    Correct.

18        Q    You added that?

19        A    Correct.

20        Q    Next page.  Page nine, paragraph two of your

21   affidavit.  Page twenty-five, paragraph two of the Martin

22   County affidavit.  Do you see any similarities between these

23   paragraphs?

24        A    I do.

25        Q    In fact, again, the only words that are different are

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 133

1   the ones added in yellow or added in red, right?

2       A    Correct.

3       Q    You changed -- well, I think you're going to tell me

4   that the template said Asian and Latin massage parlors and he

5   took out Latin; is that what you're going to tell me?

6       A    If he had the same template.  It appears as though he

7   did, yes.

8       Q    Well, do you remember if he emailed you this exact

9   paragraph?

10      A    I don't recall, no.  Like I testified previously,

11  this template was from the State.  So, if the State also

12  emailed him and he had that same template, I don't know that.

13      Q    Right.  I get what you don't know, but we can agree

14  that either -- again, the answer to these has to be same

15  template or he gave you the paragraph, right?  Not coincidence.

16      A    Okay.  Correct.

17      Q    You agree with me though?

18      A    Sure.

19      Q    Okay.  But it doesn't end up a template, right?

20  We're talking about templates here.  It ends up an affidavit

21  that goes before a judge, right?

22      A    Correct.

23      Q    That's signed by a judge, right?

24      A    Correct.

25      Q    That's sworn to in front of a judge?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1    A    Yes, sir.

2    Q    That ends up with a video sneak and peek warrant that

3    videotaped private citizens naked in massage rooms, correct?

4    A    It engaged individuals who were paying for and

5    receiving sexual acts from a illicit massage business, yes.

6    Q    It ended up -- well, we already know from the Brady

7    disclosure, right, that it also videotaped -- even according to

8    you, Detective Sharp, completely innocent people naked in the

9    massage rooms, right?

10    A    Correct.

11    Q    So, this template didn't end up a template.  It ended

12    up a sworn to executed judicially authorized sneak and peek

13    warrant that watched naked citizens in massage rooms, correct?

14    A    Correct.

15    Q    In your page nine, paragraph two, when referring to

16    the masseuses, you say thus these girls, right?

17    A    Yes, sir.

18    Q    First question.  During either the changing up ever

19    so slightly of the template or the transmission of paragraphs

20    between you and Martin County, do you read the final version of

21    what you swore to and what went before the judge?  Did you read

22    it?

23    A    My final version?

24    Q    Yes.

25    A    Yeah, absolutely.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

1      Q      Okay.  When you use the word girls, normally people

2   are talking about young, you know, sixteen, seventeen,

3   twenty-one year old girls, right?  The woman who worked in the

4   spa were not girls, they were women, right?

5      A      Again, it's like semantics.  Women, girls, I can use

6   those terms colloquially here.  But if you would like to say

7   that word refers to women that are young, then that's your

8   testimony.  That's not my testimony.  My testimony is that

9   they're girls, women.  I would use that term similarly.

10      Q      Right.  But you do understand -- and we're almost

11   moving off the girls point, okay?

12      A      Okay.

13      Q      You do understand that while colloquially, you used

14   that word just now, semantics, you used that word now.  When

15   you're getting an affidavit that's sworn to in front of a

16   judge, you understand words matter, right?

17      A      Sure.

18      Q      Judge Coates wasn't with you observing the

19   surveillance, right?

20      A      Correct.

21      Q      He doesn't know when he authorizes this affidavit

22   that there were women customer reviews.  He doesn't know that,

23   correct?

24      A      Correct.

25      Q      And he doesn't know that it's not, if not exclusively

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 136

1   men.  He thinks it's exclusively men when he reads this.

2        MS. ARCO:  Your Honor, I'm going to object.  If he

3        wants to know what Howard Coates thinks, he needs to bring

4        Howard Coates in here.  He cannot testify as to what

5        Howard Coates thinks.

6        THE COURT:  I'll sustain the objection.

7   BY MR. SPIRO:

8        Q    Isn't it very possible that in the template that was

9   sent to you, that investigation was a massage parlor, or

10  whatever kind of investigation it was, that involved younger

11  women, whereas the massage parlor at issue in this case had

12  middle-aged women?  Isn't that possible?

13       A    It's possible and I'm sure this will come out later

14  on, but some of the women that were working inside of the spa I

15  know of their ages because they were identified.  But there was

16  one women that I still can't identify, so I don't know her name

17  or her age.

18       Q    Yeah, but Detective, at the time that you -- when

19  we're doing this exercise of what's in the warrant, okay, I'm

20  not asking you about ways you could go back in time and

21  recharacterize, or what you learned later that then can

22  reinforce what you said here.

23            At the time you did this warrant, you had no

24  information that there were young women working inside there.

25  You had information that there were middle-aged women working

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B86E8C26A46

Page 137

1    inside there, correct?

2         A    I had information that there were middle-aged women

3    working inside there, yes.

4         Q    Next page.  Your report, page nine, paragraph three.

5    Martin County page twenty-five, paragraph three.  You see a lot

6    of similarities?

7         A    I do.

8         Q    And you notice that the Martin County affidavit

9    charges and is investigating crimes of money laundering and

10   they add a sentence about that and they include money

11   laundering, correct?

12        A    Correct.

13        Q    Not your warrant, correct?

14        A    Correct.

15        Q    Your warrant, page nine, paragraph four.  Martin

16   County warrant page twenty-six, paragraph one.  Can you take a

17   look at those paragraphs, Detective, and tell me if you see

18   similarities?

19        A    I do.

20        Q    They are nearly identical, correct?

21        A    Nearly, yes.

22        Q    Only changes are what you call this type of warrant,

23   correct?

24        A    And the letters in red, correct.

25        Q    And they add the stuff about the money laundering,

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 138

```
1    right?

2        A     Correct.

3        Q     They have twenty-six pages, you don't have twenty-six

4    pages?

5        A     That's correct.

6        Q     They have money laundering, you don't have money

7    laundering?

8        A     Correct.

9        Q     Same template it looks like, right?

10       A     Very similar, yes.  Like I stated, I don't know if

11   they had this.

12       Q     I get it, Detective.  This is not some logical leap

13   I'm asking you to make.  It looks like the same template?

14       A     It looks like the same template, yes.

15       Q     They had more time than you, right?

16       A     Yes, they did.

17       Q     The detective, like you said, had more experience

18   than you?  In these type of cases.

19       A     Yes.

20       Q     Page nine, paragraph five.  And by the way,

21   Detective, when the warrant in this case is drafted and begins,

22   the first sections are kind of like what we already talked

23   about, right?  It says what you're investigating which is the

24   796 offense of deriving proceeds, right?

25       A     Yes.
```

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 139

1      Q      And then it launches into the Googling internet

2   searches, the surveillance from the exterior in which you saw

3   overwhelmingly, parentheses, if not exclusively men.  It

4   involves that type of stuff and then it gets right into these

5   paragraphs that we're talking about, right, because this is

6   page eight and nine almost every paragraph.  You can see that,

7   right?

8      A      Yes, sir.

9      Q      Do you see any similarities between your page nine,

10  paragraph five and Martin County's page twenty-six, paragraph

11  two?

12     A      Yes.

13     Q      It says the affiant has strongly considered the 1990

14  10th Circuit Court of Appeals decision U.S. v. Mesa-Rincon.

15  Do you see that?

16     A      Yes, sir, I do.

17     Q      You didn't write this paragraph?

18     A      It was in that template.

19     Q      Right.

20     A      The State Attorney's Office advised me of this.  They

21  placed it in there, therefore I placed it in my warrant.

22     Q      Totally fine.  I totally get it.  I figured that's

23  what happened but the question is was this not in the template

24  and got injected by the State Attorney's Office, or was it in

25  the template and they told you leave it in?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 140

1    A    It was in the template.  They advised me I needed to
2  leave it in.

3    Q    Okay.  And this is not honestly meant to be -- as I
4  think you said confrontational a minute ago.  When it says your
5  affiant has strongly considered this Court of Appeals case, it
6  may be that the template was talking about something else, but
7  you personally have not strongly considered this case law as
8  some sort of a legal guideline, have you?

9    A    They advised me of the case law.

10   Q    Detective, have you ever read that case?

11   A    Not prior to this warrant, no.

12   Q    Did you print out these cases and read them, these
13 legal cases before you signed this form?

14   A    I did not, no.

15   Q    Okay.  So, you've never read -- this is not meant to
16 be hostile or a trick.  This case, you didn't go on a legal
17 search engine and print out a legal case and read Judge McKay's
18 decision in the 10th Circuit prior to this, right, you didn't
19 do that?

20   A    No, I conferred with the State Attorney.  I asked
21 questions in regard to this case.  I said what does this case
22 involve?  They said this advised, you know, what's written in
23 the warrant and I said okay.

24   Q    So, what did they tell you that that case involves?

25   A    It addressed the parameters regarding what was then

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 141

1    Title III searches, wiretaps.

2        Q    Did they read to you parts of the case and tell you

3    what the actual rules were?

4        A    Did they read me directly something from a legal

5    search?  No.  We just spoke about that has to stay in there

6    because it deals with wiretaps and it's relevant to this case.

7        Q    Two separate questions.  I totally, totally get that

8    they told you that paragraph, Detective, that has to stay in

9    the warrant, right?

10       A    Yes.

11       Q    They were a hundred percent clear on that, correct?

12       A    Yes.

13       Q    And you and I are a hundred percent clear that you

14   never read any of these cases, correct?

15       A    Correct.

16       Q    They never told you any language from any of these

17   cases.  They never told you that this case -- it's not a trick

18   question.  They never told you what these cases say in terms of

19   in Mesa-Rincon, Judge McKay writes so on and so forth.  They

20   never did that?

21       A    Right.

22       Q    And, in fact -- and I don't want this to be some sort

23   of legal pop quiz.  I really don't mean it that way.  But you

24   don't know what the requirements are for Title III video,

25   wiretap warrants in the State of Florida under the current

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 142

1   statutory scheme, Federal Constitution, Florida Constitution,

2   you don't know how all that works and know the legal

3   requirements, do you?

4        A    No, I don't.  That was the State Attorney's

5   requirement.

6        Q    Okay.  Good.  But the warrant itself, when you say

7   that you have strongly considered this Court of Appeals

8   decision, I mean, Detective, no you haven't, right?

9        A    The State told me, hey --

10       Q    I know what you're saying.  It's on them.  But you

11  didn't strongly consider it.

12       A    Okay.

13       Q    And that's sort of how the warrant concludes with

14  your assessment of the legal standard, right?  And page eleven,

15  paragraph two, yours.  Page twenty-eight, paragraph five,

16  theirs.  And, again, everything is the same.  Change of

17  location.  They add money laundering.  You don't have money

18  laundering.  Agreed?

19       A    Agreed.

20       Q    Page eleven, paragraph two of your warrant and page

21  twenty-nine, paragraph one, their warrant.  Right?

22       A    Okay.

23       Q    Your warrant and their warrant have the same there as

24  their conclusion, correct?  With two differences, right?

25       A    Correct.

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 143

1    Q    Difference one, location, right?  That's easy.  And

2  that's correct throughout your warrant.  The location is

3  correct every time.  And what statute you're relying on, 796,

4  right?  That's not what they said.  They say they're also

5  relying on 896, money laundering, correct?

6    A    Correct.

7    Q    And they have -- by the way, when they say based on

8  all the foregoing information, they have at that point, help me

9  with the math here, eighteen more pages of information than you

10  have in your warrant?

11    A    Yes.

12    Q    And then we get to the end.  Yours, page eleven,

13  theirs, page twenty-nine.  You sign the warrant affiant.

14  Honorable Judge Coates signs the warrant.  Their warrant is

15  dated September 21st, right?  Correct?

16    A    Yes, sir.

17    Q    And yours is dated January 15th, correct?

18    A    Yes, sir.

19        THE COURT:  Counsel?

20        MR. SPIRO:  Yes.

21        THE COURT:  Have you concluded going over this exhibit

22    with this witness?

23        MR. SPIRO:  Yes, sir.

24        THE COURT:  The reason I ask is this a good time to

25    break for lunch?

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 144

1          MR. SPIRO:  This was going to be my last question.

2          THE COURT:  Do you promise?

3          MS. ARCO:  Do you mean last question last question?

4          MR. SPIRO:  Does everybody want this to be the last

5     question?

6          THE COURT:  We're not trial by community.

7     BY MR. SPIRO:

8     Q    Okay.  Just back to our only poster board exhibit and

9     favor exhibit, I'm adding in another month of handwriting,

10    right?  September, they already have their warrant, right?

11    A    Yes, sir.

12    Q    They're already sneaking and peeking, right?

13    A    Yes, sir.

14    Q    You don't even get involved until October, right?

15    A    Correct.

16    Q    And then you do the Googling and the watching the

17    front door, and the Herzog inspection in November.  And then

18    there's nothing in November, nothing in December, nothing in

19    January until the john stops, and yet you both have the same

20    day this has to be finished, correct?

21    A    Correct.

22         MR. SPIRO:  Let's break for lunch, Judge.

23         MR. KRIDOS:  Judge, we need to approach the bench

24    before we break to discuss a matter with Your Honor.

25         THE COURT:  Sure.  Come on up.  Are we finished?  Can

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 145

1      we excuse everybody else?

2           MR. KRIDOS:  Yes, Your Honor.

3           THE COURT:  Okay.  Everybody who wants to go to lunch,

4      please feel free to do so.  Well, I'll tell you what, can

5      we clear the courtroom, then nobody has to approach the

6      bench.

7           MR. KRIDOS:  That would be great, Judge.

8           THE COURT:  If everybody could leave the courtroom and

9      take their lunch break and we'll continue -- it's quarter

10     to 1:00, come back at quarter to 2:00.

11          THE BAILIFF:  Judge, you want everybody out?

12          THE COURT:  Well, technically, I cannot close the

13     courtroom.

14          MR. KRIDOS:  Right.  So, we need to discuss this,

15     Judge, at least initially because it's a sensitive issue.

16          THE COURT:  Okay.  Well, let me put on the noise.

17     (Thereupon, a side-bar discussion was had outside the

18     hearing of the courtroom as follows:)

19          MR. KRIDOS:  Judge, for the State's side, the

20     expectation of privacy is the lynchpin to this case.

21          THE COURT:  Right.

22          MR. KRIDOS:  With that said, on cross of the

23     detective, the State intends to play the videos of Robert

24     Kraft.  And we do so, Judge, and I give you this proffer

25     beforehand, is that there are -- I can get my notes, but

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 146

1      I'm going to say there's eight different times that

2      Mr. Kraft is in the massage room with one or both women

3      engaging in sexual acts.  And during that time, the door

4      on January - I'm sorry, the first time that he's there,

5      the door opens eight different times.

6          The door, when it opens, has Mr. Kraft in a position

7      where he's on the massage table on his back with his feet

8      towards the door, his legs spread, completely naked.  At

9      times -- every time they open the door you can see him

10     naked, but at various times you can see at least one of

11     the women manipulating his penis and wiping it off.  And

12     there's other times that he can be seen when that door is

13     open being kissed and hugged and his stomach and his thigh

14     touched by the woman.

15         And if they've mentioned it one hundred times, they've

16     mentioned it a thousand times that he has an expectation

17     of privacy, which the State does not agree with anyway

18     legally, in there.  But this certainly is the emphasis to

19     that argument by the State that he had no expectation of

20     privacy.

21         When that door opens up those eight occasions, he

22     makes no effort whatsoever to hide his body, to cover

23     himself, to do anything to create an expectation of

24     privacy in what is occurring.  And we think, Judge, that

25     it's critical.  We can stand here all day and explain to

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 147

1      Your Honor from the State's side, but honestly the best

2      evidence is the video where Your Honor can see and take

3      whatever he wants to from the strength of that video

4      because it goes directly and absolutely to the argument of

5      expectation of privacy.

6           THE COURT:  Okay.

7           MR. SPIRO:  Judge, so first of all, I think Mr. Kridos

8      has not told you -- I've only seen the video one time when

9      I was invited over by Detective Sharp.  But the video is

10     caught from the top in the ceiling looking down.

11     Mr. Kraft is lying down on a bed in a closed area.  This

12     claim that the door is somewhat open; is that what you

13     said?

14          MR. KRIDOS:  Opens.

15          MR. SPIRO:  Opens and closes.  The idea that somehow

16     the fact that there's a door that opens and closes while

17     he's lying face down while the masseuses are coming in and

18     out, the masseuses of course are going to see him naked

19     which is probably why he doesn't cover himself.  Which I

20     think if anyone had a massage, they would probably agree

21     with that.  And they are the ones controlling the blanket.

22          The expectation of privacy doesn't disappear because

23     he's getting a massage from two masseuses.  If that were

24     the case, everybody who gets a massage would have no

25     expectation of privacy.  Anybody who goes to the doctor

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 148

1    would have no expectation of privacy.  Anybody who gets

2    any kind of treatment at all who is uncovered would have

3    no expectation of privacy because there's a person coming

4    in and out of the room.

5        I don't think that's really what the State wants to

6    say, but beyond that, Judge, as we put in our paper, the

7    law in Florida, there's a statute that says a person who

8    is in a place exactly like this where they're disrobed,

9    even a tanning salon and changing rooms, places where

10   people come in and out all the time.  A person who is

11   buying clothes, the salesperson will come in and hand the

12   clothes to them.

13       So, in those cases, the State of Florida has a

14   statute, there's a reasonable expectation of privacy.

15   It's not even a doubt.  And, of course, Florida can add as

16   much as they want to the federal constitution.  Florida

17   Law says that anybody in this position has a reasonable

18   expectation of privacy.

19       And the reason why I mentioned the camera angle,

20   Judge, and where it's aligned is because I don't want you

21   to be confused by the fact that somehow there's a camera

22   angle where people see him looking outside of an open door

23   and he's aware that the door is open and that the door is

24   ajar, all those things.  Judge, if you see it, it's like

25   anybody lying on a bed.  He doesn't know exactly when the

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 149

1       door is opened and closed.  As far as he knows, the only

2       people there are masseuses.  And, in fact, Judge, the only

3       people that come in there are the masseuses.

4           MR. KRIDOS:  Judge, the door opens directly in front

5       of him.  And it's something we can both argue but --

6           THE COURT:  Let me say this.  I don't mean to cut you

7       off and you can add whatever you want.  What I'm hearing

8       so far is that the Court needs to see the video.

9           MR. KRIDOS:  Yes.

10          THE COURT:  I mean, quite frankly, you're arguing

11      different perspectives of the same piece of evidence.  I

12      need to come to my own conclusion, so clearly I'm going to

13      have to watch what the State is offering.  You're going to

14      offer it when it's your turn to present evidence, right?

15          MR. KRIDOS:  Yes, Judge.

16          THE COURT:  And I will clear the courtroom, okay?  So,

17      I will view it and we'll clear the courtroom.

18          MR. KRIDOS:  All right, Your Honor.

19          MR. BURCK:  We have absolutely no problem with that,

20      Judge.  The only thing to clear up, Judge, is we would

21      want to clear the cameras and everyone else out of the

22      room as well.

23          THE COURT:  Yeah, and actually what we ought to do is

24      put paper over the windows.

25          MR. BURCK:  Yes.  One suggestion is we would encourage

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 150

1    the Court to take it and view it in-camera.  I don't know

2    why the Court would want to watch it --

3         MS. ARCO:  We would like it out here so we can --

4         MR. KRIDOS:  This is the motion to suppress --

5         THE COURT:  Yeah, I'll see it in the courtroom.  At

6    the point at which the courtroom is closed, this becomes

7    my chambers.

8         MS. ARCO:  Right.

9         THE COURT:  So, we really do need to put paper over

10   those windows.  I'll ask my JA to do so.

11        MR. BURCK:  Your Honor, I just want to make one last

12   point.  The idea that they're going to question the

13   detective about Mr. Kraft's reasonable expectation of

14   privacy in a room --

15        MR. KRIDOS:  No, this is our one opportunity to show

16   the Court that he did not have an expectation of privacy.

17   This is part of the testimony of the Defendant.

18        THE COURT:  And I certainly think it's important for

19   the State to be able to present their argument to the

20   Court and for the defense to argue otherwise.  So, I think

21   we know what we're going to do, okay?

22        MR. BURCK:  Thank you, Your Honor.

23        THE COURT:  Let me just ask, are we going to finish

24   this today?

25        MR. KRIDOS:  No, Judge.  I'm going to spend a long

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 151

1      time with their expert, Judge.

2          MR. BURCK:  Judge, we have a lot more to do with

3      him -- not a lot more.  But there's a bunch of stuff we

4      have to go through and, of course, they're going to have

5      their cross and we'll probably have a redirect.

6          We also have Detective Kimbar (phonetic) -- officer,

7      I'm sorry.  He won't be nearly as long, Judge, but he'll

8      be a little bit of time.  And then we have Detective

9      Hirsch who actually I don't think is going to be that long

10     but still like an hour or two.

11         So, even just those three witnesses.  And then we're

12     going to have to ask for -- one thing we have to deal with

13     at some point, Judge, is obviously our minimization point

14     is that they saw a bunch of people who were naked and

15     getting massages and we're going to ask that.  But we

16     don't know, Judge, who the officers who saw those people

17     are because they won't tell us.

18         THE COURT:  Well, you haven't participated in

19     discovery either.

20         MR. BURCK:  You're right, Judge.  That's why I have to

21     put thirty people on.  I'm going to have to say did you

22     see them?  No.  Did you see them?  Yes.

23         MR. KRIDOS:  That's why I asked Detective Sharp to

24     watch the video.

25         MR. GOLDBERGER:  With that in mind, Your Honor, we

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 152

1    have a scheduling problem.

2         THE COURT:  When do you want to resume this hearing?

3         MR. GOLDBERGER:  Well, I think the more important

4    issue is that we do have thirty witnesses under subpoena

5    and I've asked them all to call my office today.  I think

6    what Mr. Burck is saying is that we will use the rest of

7    the day for Detective Sharp, Herzog and the officers.

8         MR. BURCK:  We may not even get through all of them.

9         MR. KRIDOS:  The video themselves -- we're asking the

10   Court to see both videos because the other video the door

11   is cracked open.

12        THE COURT:  You're not even on the stage yet.

13        MR. KRIDOS:  No, and for Your Honor's scheduling

14   purposes, the videos are only an hour.

15        THE COURT:  The reason I ask is I have to keep in mind

16   my docket for next week.  I cannot give you Monday

17   morning.  I can probably give you Monday afternoon if you

18   want.  I don't know that I can give you Tuesday morning.

19   I know I can give you Tuesday afternoon.  And if it goes

20   beyond that, I'll have to ask a judge to take over a trial

21   set for Wednesday.

22        MR. GOLDBERGER:  May we talk about that over the lunch

23   break?

24        THE COURT:  Sure.  If we can get to a lunch break.

25        MR. GOLDBERGER:  Exactly.  May I release those other

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 153

1      witnesses?

2            THE COURT:  Let me just say, the Court's intent is to

3      close at 5 o'clock today.

4            MR. GOLDBERGER:  Okay.  Thank you, Your Honor.

5            THE COURT:  Thank you.

6       (Thereupon, the side-bar discussion was concluded.)

7            THE COURT:  Oh, by the way.  I meant to do this.  I've

8      got an order here.

9            MR. KRIDOS:  No issue, Judge.

10           THE COURT:  All right.  This is the order we discussed

11     at the beginning of the case?

12           MR. BURCK:  Yes, Your Honor.

13           THE COURT:  Okay.  Court's on recess.

14             (Thereupon, a luncheon recess was taken.)

15      (Thereupon, the proceedings are continued in Volume II.)

16

17

18

19

20

21

22

23

24

25

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 154

1

2                        C E R T I F I C A T E

3

4       THE STATE OF FLORIDA,)

5       COUNTY OF PALM BEACH.)

6               I, Tamara Miga, Notary Public, do hereby certify

7   that I was authorized to and did stenographically report the

8   foregoing transcript of proceedings at the time and place

9   aforesaid and that the preceding pages are a true and correct

10  transcription of my stenograph notes taken at said proceedings.

11

12                  DATED THE  28th  day of April, 2019

13
                          DocuSigned by:
14                        Tamara Miga
                          EBCFBF42DBCA438...
                          TAMARA MIGA
15                        Professional Reporter
                          Notary Public, State of Florida
16                        My Commission Expires: March 8, 2022

17

18

19

20

21

22

23

24

25

**A**

a.m 1:20
ability 38:23
able 14:20 25:19
  26:1 27:9 35:16
  39:6 63:11 72:2
  96:3 118:1 150:19
abrogated 22:24
absolute 103:10
absolutely 14:11
  20:22 26:7 31:14
  35:2 38:15 39:6
  41:19 47:8 49:1
  70:2 73:23 100:6
  114:9 122:21
  123:5,23 126:6,15
  126:21 134:25
  147:4 149:19
abundance 107:18
access 46:23
account 72:7
  122:23
accurate 128:23
accurately 50:3
accuse 119:9
accusing 119:2
active 132:10
activities 121:1
activity 75:22,22
acts 134:5 146:3
actual 72:2 86:2
  141:3
ad 98:9
add 69:20 97:11
  137:10,25 142:17
  148:15 149:7
added 109:16
  132:18 133:1,1
adding 144:9
additional 12:16
  14:15
address 12:18,21
  12:24 13:18 17:22
  21:23
addressed 15:6
  140:25
addressing 17:9
admit 101:12,13
admitted 54:10
  74:10 103:16,23

admitting 29:6
admonished 119:9
advanced 91:18,24
  91:24,25 127:12
  128:2,3
advertised 51:3,8
  111:7
advertisements
  51:13
advised 12:8 41:19
  42:1,4,16,18 52:2
  81:5 139:20 140:1
  140:9,22
advising 44:14
  104:4,8
affiant 125:22
  128:20 139:13
  140:5 143:13
affiant's 109:23
affidavit 29:21
  31:12,13,15,19
  35:7 36:23 38:22
  39:23,25 40:22
  42:24 43:1,7,10
  45:24 49:4 50:4
  78:7 98:2,3,4,12
  98:17,19 100:16
  100:18,19 104:3,3
  104:4,6,25 105:4
  105:4,20 107:20
  109:6,7,11,19
  110:21 113:13
  114:23 117:21
  119:13,14,25
  122:25 123:3,4
  124:4,20 125:8,9
  125:11,16 129:25
  130:8,8,9,18
  131:12,13 132:21
  132:22 133:20
  135:15,21 137:8
affidavits 29:15,24
  30:8,8,17,20 41:1
  103:14 104:14
affirmative 73:16
  73:20,21 74:1
aforesaid 154:9
afternoon 152:17
  152:19
age 63:24 136:17

agencies 43:21
  44:16 73:12 92:16
agency 68:22
ages 136:15
ago 5:24 6:3,5,7
  32:17 34:14 62:16
  71:24 87:24
  113:21 114:20,23
  115:3 140:4
agree 15:2 16:4
  18:3,6,7,9 28:5
  30:7 61:21 71:7
  79:15 111:11,13
  111:17,17,19
  123:21 124:9,21
  124:24 125:8
  129:12 131:2,17
  133:13,17 146:17
  147:20
agreed 46:7 142:18
  142:19
agreement 28:4
ah-ha 47:1
ahead 15:3 34:10
  37:4 39:5 56:11
  56:23 60:23 61:25
  65:11 75:2 82:12
  96:6 119:17
aid 102:8
ajar 148:24
alarm 64:24 65:15
alert 41:4
alerting 60:7
ALEX 2:17
aligned 148:20
allegation 9:13
allegedly 115:13
alleging 11:21
ALLISON 3:8
allow 14:21 26:3
  27:10 28:15 33:11
  35:21 121:11
allowed 25:11 33:9
  61:23
ambush 8:5
amend 5:17 8:8,9
amendment 6:13
  8:14 9:14 13:15
  13:15
amount 49:1,2

69:21 111:6,15
  118:12
analogy 49:8
analysis 130:11
Andrew 4:7 28:20
  32:3
angels 112:10
angle 55:25 148:19
  148:22
angles 55:24
announced 34:15
announcement
  35:4
answer 47:25 85:14
  96:3,4,5 98:18
  99:1,4 112:23
  113:21 114:7
  116:2 120:5 124:8
  128:9 133:14
answered 51:5
  61:22 85:20
answering 112:8
answers 82:25
anticipated 98:25
anybody 6:15 18:4
  18:20 23:23 26:17
  32:23 61:2 64:2
  89:17 126:15
  147:25 148:1,17
  148:25
anymore 76:11
anyway 93:2
  146:17
apart 8:18
apologize 27:25
apparently 119:3
  121:4
Appeals 139:14
  140:5 142:7
appear 18:2,22,24
  22:4 131:1
APPEARANCES
  2:2 3:2
appears 55:18,20
  56:6 125:11 133:6
application 29:21
  31:15 35:8,11
  45:24 73:18 105:5
  107:20 125:11
applied 94:11

apply 24:10
appointment 86:11
  86:13
appreciate 11:16
  59:14 74:23
approach 83:5
  106:7 144:23
  145:5
approaching
  106:11
appropriate 7:21
  47:5 60:25
approximate 50:2
approximately
  34:14 42:3 44:24
  49:6 50:5 71:22
  123:2
approximation
  49:18 50:9,10
April 1:17 6:3
  17:18,19 19:25
  154:12
ARCO 2:6 29:19
  30:1,12 31:10,23
  32:25 34:6 35:6
  38:16 46:5,14
  47:5,22 50:23
  51:5 54:4,9 55:4,8
  60:3,18 61:22
  64:4 65:4 74:5,9
  76:14,17 81:25
  82:5 88:17 91:12
  95:2,10 96:2
  100:20 101:3,22
  102:9 103:2,22
  105:3,24 106:7,20
  106:24 107:1,4,7
  107:12 108:14,17
  108:23 112:7
  114:1 115:21,24
  117:4,25 118:6,22
  119:22 120:13
  121:19 130:3
  136:2 144:3 150:3
  150:8
area 54:16 55:16
  62:15 66:4 68:4
  147:11
argue 9:18 16:6
  149:5 150:20

**arguing** 33:8 95:6
129:24 149:10
**argument** 10:2,23
13:14 14:1 16:11
112:12 146:19
147:4 150:19
**argumentive** 13:10
**arguments** 11:3
13:5
**arose** 5:13
**arrange** 12:8
**arrest** 36:15,23
81:22 82:1,2,18
83:1
**arrested** 118:15
**arrests** 29:24 38:13
**ASA** 2:6,6,7
**Asia** 31:15,16,17
31:18,19 33:20
45:12 60:7 62:12
**Asian** 133:4
**asked** 8:23 12:12
17:21 19:6 22:24
33:10 47:8 51:5
61:22 83:17 85:8
85:9,14,21 86:20
91:5 92:9 98:21
115:25 121:6,10
121:12 126:9
140:20 151:23
152:5
**asking** 13:10 15:19
15:22 18:16 19:3
43:6 47:3 52:24
83:25 84:6,7,8,13
84:14,15,22 86:7
86:20 87:10 93:17
100:11,15 102:1
105:7,13 127:7,10
136:20 138:13
152:9
**asserts** 18:5
**assessment** 142:14
**assist** 10:16 63:11
63:17,18 81:17
**assistant** 6:25
**assume** 10:7 22:12
48:14 74:4
**assuming** 29:20
101:5

**AT&T** 19:11,13,21
19:24 20:6,6,11
20:14,17,23 21:2
21:5
**ATHERTON** 3:5
**attached** 30:2
**attack** 65:10
**attempted** 8:13
**attempting** 28:6
**attended** 129:19
**attention** 24:14
41:12 106:8,9
107:4 121:3
**ATTERBURY**
2:11
**attorney** 2:5 31:6
73:3 96:24 97:14
107:7 130:4
140:20
**Attorney's** 40:6,15
43:18 82:24 92:11
125:1 131:8,24,25
139:20,24 142:4
**attorneys** 11:6 25:1
**Australian** 2:12
**authority** 23:3
**authorized** 134:12
154:7
**authorizes** 135:21
**authorizing** 105:5
**available** 55:11
63:14,14,16
**Avenue** 2:12,18
**avoid** 43:6 58:18
61:19
**aware** 24:12 46:12
46:15 47:3 50:18
50:21 121:2,6,9
128:12 148:23
**awhile** 129:11

———— **B** ————

**B** 1:5,5 4:12 80:24
**back** 27:22 38:9
40:15 49:7,9 54:7
55:16 66:22,22
69:15 71:21,23
72:17,21,23 73:6
75:19,24 76:1,2
80:6 85:13 99:12

118:19,22 120:15
130:10,16 136:20
144:8 145:10
146:7
**background** 87:15
**bad** 128:6
**badgering** 112:7,9
**BAILIFF** 29:9
145:11
**baloney** 80:24
**banking** 130:11
**banks** 73:5
**Bar** 119:5
**based** 7:21 14:6,7
18:5,21 23:2,21
23:21 28:3 31:2
66:19 68:4 93:10
105:22 109:21
120:18 124:18
143:7
**basically** 77:14
78:24
**basis** 20:4 22:8
23:5,15,15 39:4
119:6,19,24
**bathroom** 122:20
**Beach** 1:3,18,19,22
1:23 2:8,12 3:6,9
38:18 40:5 41:10
41:15 43:21 63:4
63:10 104:24
154:5
**bearing** 38:17
**bed** 53:13 147:11
148:25
**began** 6:8 42:6,20
113:5
**beginning** 42:25
43:6 44:2,12 46:6
75:1 88:9 100:10
100:13 153:11
**begins** 88:3 113:4
138:21
**behalf** 2:4,10,20
3:4 24:6
**behavior** 119:10
**belabor** 43:23
105:9
**belief** 22:22
**believable** 63:5,7

**believe** 10:8 13:11
23:15 24:12 25:18
33:9 36:6 40:9,23
41:13 43:20 44:8
59:9,23 68:4 83:7
83:10,21 97:1,22
101:19 111:6,14
115:11,19 129:22
129:23
**believed** 41:20
52:14
**believes** 13:25 14:2
112:16 114:11,12
**believing** 52:19
**bench** 83:5 144:23
145:6
**benefit** 16:7
**Bentley** 37:17
**best** 6:11 48:1
147:1
**better** 31:9 55:6
98:22 126:17
**beyond** 8:23 9:19
9:25 148:6 152:20
**big** 23:1 120:25
**bills** 90:12
**Bingo** 99:23
**biological** 69:15
72:24
**bird** 84:10
**bit** 14:23 55:6
56:11 70:17 90:17
124:9 151:8
**blanket** 147:21
**blocked** 74:16
**board** 57:23 58:6
77:11 144:8
**Boca** 97:7,18
**body** 80:14 146:22
**bomb** 60:17 61:1
62:21 63:15,24
64:9,13 65:2,19
**border** 41:11
**boss** 88:21 89:22
**boss's** 89:22,22
**bottom** 10:25 56:3
56:13 109:10
132:9
**Boulevard** 1:22
**bound** 11:12,15

**Brady** 134:6
**break** 14:4 123:9
124:8 143:25
144:22,24 145:9
152:23,24
**break-in** 44:9
**breath** 14:18
**breathe** 9:10
**Brian** 88:6
**Bridge** 109:10
**brief** 83:4
**briefing** 15:7
**briefly** 15:10 24:3
**bright** 87:4
**bring** 18:16,17
21:15 24:14 45:22
46:8 106:8 121:2
136:3
**bringing** 19:6
21:18
**brothel** 48:23
**brought** 9:1 34:16
41:12 45:18,24
46:10 126:12
**building** 62:19
**buildings** 60:6
**bunch** 151:3,14
**Burck** 2:14 13:18
14:22,23 16:23
17:5,10,12,20,23
18:8,14,25 19:4,9
19:12,15,19 20:10
21:8,13,24 22:12
22:19,21 23:7,10
23:25 24:17 119:1
149:19,25 150:11
150:22 151:2,20
152:6,8 153:12
**burden** 9:5,8,20
10:2,6,7,9,9 16:10
16:15,16
**business** 9:23 14:10
36:6 41:20,22
42:10,10,17 48:20
49:11 51:18 52:2
52:15,19,20,22
53:8 59:5,8,9,22
60:1 61:2,3,5 62:6
64:17,18,25 65:23
69:1,16 71:1,4,14

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B86E8C26A46

81:17 86:10,12,13
86:14,18,21 96:11
111:4,5,5,7,16
114:20 115:10,15
115:16 134:5
business' 59:11
businesses 42:12
51:15 58:20,22,24
59:14,18 61:9,10
61:20 62:13 64:21
buy 6:11 51:11
buying 148:11

**C**
C 5:2 154:2,2
calendar 74:3,7,14
74:14,15 95:7
call 6:13 26:14
28:19 41:4 42:24
44:8 63:21,22
69:6 70:13 77:5
78:13 86:11,12,12
86:13,14 95:8,10
97:20 114:4
117:25 118:3,4,7
118:9 119:12,13
137:22 152:5
called 8:8 79:7
calling 59:21
calls 45:6
camera 33:19,20
34:4,4 48:16,16
48:19,19 49:21
58:5 60:20 64:5
65:5 66:3 67:25
80:14 116:16,17
122:17 148:19,21
cameras 57:11,18
57:21,24 58:1,16
58:18 61:8 65:21
76:19 149:21
cans 68:18,19
captured 67:25
car 37:14 38:2,6,7
78:12,15
card 69:21,21
70:13,14,15,16,22
cards 69:24 84:3
care 21:20 127:11
careful 59:13

107:14
cares 48:1
cars 37:1,15
cart 49:7
case 1:4 8:18,20 9:8
10:18,20 11:12,13
13:6 14:3,15 22:3
22:6 24:24 25:22
26:5,15,17 27:3
27:11 29:14,25
30:10,10 32:21
33:16,19 39:13
40:2 45:23 46:3,8
46:10,12 47:4
48:3 56:4 68:25
70:9 82:9 91:2,6
91:19 93:4,8,10
93:13,18 94:12,13
94:18,20,21,24
95:1,3,7,18 96:15
96:21 97:1,2,6,7
97:13,18,19
117:23 118:16
136:11 138:21
140:5,7,9,10,16
140:17,21,21,24
141:2,6,17 145:20
147:24 153:11
cases 8:5 9:2 11:15
15:8,12 25:25
30:10,18 41:2
91:11,19,21 93:21
93:22 129:16
138:18 140:12,13
141:14,17,18
148:13
cash 66:3 69:21
83:20,21,23 84:3
85:8
catch 21:3
catches 27:13
categories 69:4
category 72:22,22
caught 47:12
147:10
cause 29:15,20,23
31:11,12,18 36:15
36:23 44:10 78:16
82:18 96:12
120:19,19

caution 107:18
ceiling 31:16 57:23
58:6 147:10
cellphone 20:20
86:12
cellular 17:8
certain 12:13 31:6
33:11 45:9 46:23
103:4
certainly 23:18
88:11,12 124:17
127:24 146:18
150:18
certainty 97:4
100:7 124:19
certificate 69:21
certificates 51:12
91:23,25
certifications 91:20
certify 154:6
cetera 17:17,17
52:20 59:13 85:12
90:12 113:7 116:9
chair 93:9
challenging 17:1
chambers 150:7
change 23:12 34:7
87:25 97:11 120:5
130:7 131:10
142:16
changed 109:15
131:21 132:6
133:3
changes 137:22
changing 114:7,8
134:18 148:9
Chapter 23:6,12
characterizes
17:25
charge 36:14 81:2
81:5,22 92:18
charged 66:20 79:9
79:12
charges 34:16 35:4
93:23 137:9
charging 36:19
81:10
cheat 104:16
105:11 108:12,15
108:19 109:7,8,20

123:16 130:21
check 45:9,11
130:14
Chief 89:18,20,22
chilling 64:1
choice 64:14
Christmas 75:23
Circuit 1:3 2:5
139:14 140:18
circumstances 14:6
CIs 81:3
cited 15:11,12
cites 11:14
citizens 134:3,13
city 41:22
civilian 36:20,21
claim 9:2 147:12
claiming 101:4
103:3
claims 103:18
clarification 54:23
clarify 21:22 24:7
86:9 96:5,8
class 127:5,8,9,10
129:7,8
classes 126:10
127:1,14,18 128:5
128:7 129:1
clause 8:1 35:14
clean 53:22,23
cleaned 79:1
clear 10:1 14:6
19:1,4 22:21
23:14,15,24 26:5
31:10 35:22 58:3
60:6 61:2 62:18
63:25 64:9 77:18
81:16 82:21 84:12
120:12 141:11,13
145:5 149:16,17
149:20,21
clearing 62:12
clearly 149:12
Clerk 32:4
clerk's 40:23
client 20:25
clientele 110:5,8
111:2,16 112:5
113:16,18 115:14
clients 71:3

close 95:8 102:13
145:12 153:3
closed 61:9,20
147:11 149:1
150:6
closely 103:19
closes 90:25 91:1
147:15,16
clothes 148:11,12
clothing 87:4
CNTY 1:5
co-supervising
89:15
Coates 9:6 31:17
35:11 44:24 57:2
135:18 136:3,4,5
143:14
coincidence 133:15
collaborating
96:20
collateral 12:6
colloquially 81:8
135:6,13
colored 87:4
come 28:4 37:5,15
41:5 57:8 71:23
80:6 81:22,23
106:10 107:4,13
117:9 118:7
124:19 136:13
144:25 145:10
148:10,11 149:3
149:12
comes 41:4 68:13
comfortable 61:17
108:4,6
coming 49:2 57:5
105:1 118:19,22
147:17 148:3
comments 12:5
114:2
Commission
154:16
common 12:11
25:25
communicated
84:22 86:7,21
communication
37:23
community 144:6

companies 70:14 70:16
company 70:25,25
compare 101:25 102:2 104:18 108:9 109:21
compared 9:1
comparing 102:8 103:7 114:22 123:16
comparison 104:3
complained 52:13 52:17 53:3
complaints 53:8
complete 103:14
completely 27:13 55:22 134:8 146:8
completeness 101:7
components 94:14
computer 83:23 85:9
computers 84:25 85:15,21,24 86:1 86:3
Con 62:19
concept 7:24
concepts 11:20
concern 21:2 60:12 60:15 63:23 120:19
concerned 20:14 76:22 118:17,18 118:18,23
concerning 26:24
concerted 89:2,3,5 89:7 92:15
concluded 11:10 108:25 121:20 143:21 153:6
concludes 142:13
conclusion 142:24 149:12
concocting 119:3
condone 8:4
conduct 12:12 30:21 43:10 105:6
conducted 27:5 36:5 113:7
conducting 41:20
confer 43:12,13,15

59:19 68:12
conference 29:10 35:10 36:7,9,11 36:13 38:10,11 78:1
conferred 39:15 41:24 44:22 97:19 140:20
conferring 29:11
confident 78:1 116:5,6
confidential 53:11 81:4,7
confrontation 35:14
confrontational 140:4
confused 104:5,23 148:21
connect 39:5,6 114:16,18
connected 51:11
consider 7:22 60:25 62:17,20,23 64:8,12,19 81:10 81:13,19,21,23 87:10,13 142:11
consideration 28:14
considered 82:10 139:13 140:5,7 142:7
consistent 56:14,17
constitution 8:1,2 142:1,1 148:16
cont 3:4
contact 12:9 37:11
contained 131:23
contesting 33:7
context 5:23
continue 115:9 145:9
continued 153:15
contrasted 9:2
control 23:3
controlling 147:21
controversial 104:19 105:14
conversation 62:13 62:25 85:5 126:3

conversations 63:23 92:23,24 126:11
convey 110:18
cooperate 81:23
coordinated 73:10 73:11
copied 128:22
copies 28:22
copy 6:15 39:22,24 40:24 101:19,23 101:23 107:23 108:4 117:1,16 132:1
Copyright 1:24
corners 35:7 60:19
correct 29:23 33:17 33:18,22 34:1,12 34:13,18,21,24 36:2,18,21,25 37:3,8,13,16,19 37:22 38:1,4,8,11 39:13,14,17,18,20 39:21,23 40:12,14 40:17,20 41:3 42:7,19 43:2 44:3 45:2,5,8,13,17,21 46:1 48:3,4,7,8,11 48:13 49:13,20 50:7,14,17 51:23 52:1,7,25 53:1,5 53:15,18,19 55:17 56:24,25 57:3,5,6 57:12,15,16,18,19 57:21,22,24 58:13 58:18,19 59:25 60:8,11 62:2,3,7 63:17 64:10,11 65:13 66:1,4,5,9 66:12,13,15,16,17 66:18,20,21 67:8 67:12,13,16 68:6 68:7,10,14,17 69:3,8,10,17,17 69:18,23,25 71:6 71:10,16,19 72:9 72:14,16,20,25 73:4,18 74:2,19 75:3,10,12,15 76:6,8,10 77:7,9

77:12,17,19,20 78:17,19,21,23 79:3,19,24 80:22 82:16 83:8,15 84:5,20,24 85:19 85:22 86:9,16,19 87:6,9,17,19,21 89:21 90:2 91:4 91:16 92:13 93:6 93:10 94:6,21,22 95:19,20,23 96:17 96:22,23 97:12 98:16 99:2,3,4,7,8 99:10,11,14 100:19 102:17,24 104:10 105:15,22 109:25 110:2,3,6 110:9,11,12,17,20 110:21,25 111:22 111:25 112:14,15 112:22 113:1,11 113:12,14,15,17 113:24 114:17,21 114:24 115:5,6 122:2,3,7 123:3,6 123:14,15 124:1 124:11,23 125:10 125:15 127:22,23 128:1,11,15 130:16,17 131:6 131:19,20 132:12 132:17,19 133:2 133:16,22,24 134:3,10,13,14 135:20,23,24 137:1,11,12,13,14 137:20,23,24 138:2,5,8 141:11 141:14,15 142:24 142:25 143:2,3,5 143:6,15,17 144:15,20,21 154:9
correctly 22:19
counsel 107:23 119:9 143:19
Counselor 102:5
counter 15:18
counties 38:14 42:2 44:9 131:5

counts 66:20
county 1:2,3,5,18 30:18,22,23,25 31:2,3,11,13,21 38:9,17,18,22 39:12,15 40:5,19 40:21 41:4,8,9,10 41:11,15 43:12,20 43:25 44:7,7,15 44:18,19 45:7 53:7,12 63:4,10 75:2 92:25 93:1,3 93:7,10 97:2,6,24 98:4 100:16 101:1 101:3,24 103:7 104:3,6,24 105:14 106:6 107:12,19 107:21,24 109:6 123:19 124:4,22 125:8,21 126:22 128:13 130:8,9,19 131:13 132:5,22 134:20 137:5,8,16 154:5
County's 98:19 125:4,5 139:10
couple 10:24 16:23 68:11 110:24 115:4
course 15:18,25 16:2,5,8 22:2,15 25:1 28:12 29:15 35:13 39:16 43:12 47:21 55:12 67:2 70:6 98:10 112:4 129:4,8 147:18 148:15 151:4
courses 127:3
court 1:2 5:4,6,10 5:15,21,23 6:15 6:19,22 7:1,4,7,10 8:12,16,24 9:11 9:12,12 10:1,3,10 10:16,23,24 11:12 11:14,14,15,25 12:17,20,23 13:3 13:6,9,11,17,25 14:2,3,4,7,8,15,22 15:3,7,19,22,23 16:4,6,10,13,19

16:22 17:4,6,15
17:21,21 18:3,7,9
18:20 19:8,20,24
20:2,3,12,14,17
21:2,5,9,12,17,20
22:7,9,11,18,25
23:2,2,3,8,11,11
23:14,18,24 24:5
24:11,20,25 25:8
25:13 26:16,17,18
26:19,21 27:10,16
27:19,22,25 28:2
28:5,8,9,10,18
29:4,8,13,18,18
30:5,7,22 31:7,8
31:14,20 32:17,20
33:2,5,10 34:10
35:1,12,16,18,20
35:21,22,24 38:19
38:21 39:1,2,7,9
46:11,15,18 47:23
51:1,6 54:8,10,14
55:2,10 60:4,23
61:12,14,25 64:6
65:9 74:8,10
76:16,22 80:25
81:11 82:12,23,25
83:3 88:19 91:14
95:4,13,15,16
96:5 101:1,7,12
102:1,11,15,18,21
102:23,25 103:13
103:18,21,23
104:21,24 105:2
105:21 106:1,10
106:13,16,19,22
107:2,10,13,17,21
107:25 108:2,6,15
108:22,24 109:1,3
111:24 112:10,18
113:13 114:4,14
114:14,15,19,22
115:1,23 116:1,13
117:9,12,16,18,24
118:21 119:8,17
119:20,21 120:3,5
120:9,14,21,22
121:17,22,25
130:5 136:6
139:14 140:5

142:7 143:19,21
143:24 144:2,6,25
145:3,8,12,16,21
147:6 149:6,8,10
149:16,23 150:1,2
150:5,9,16,18,20
150:23 151:18
152:2,10,12,15,24
153:2,5,7,10,13
**Court's** 5:12 15:4
22:3 24:14 27:22
29:15 35:19 38:23
106:9 116:2
120:22 121:2,3
153:2,13
**courtesy** 59:14
**courthouse** 1:18
43:18
**courtroom** 8:15
24:22 25:4,7,12
25:15,16 26:3
61:11,17 81:23
107:16 117:11
119:24 121:1
145:5,8,13,18
149:16,17 150:5,6
**cover** 146:22
147:19
**covers** 24:8
**covert** 65:21
**cracked** 152:11
**create** 40:2 146:23
**created** 7:14 9:3
**credit** 69:24 70:13
70:14,15,16,22
84:3
**credited** 83:12
**CRIM** 1:5
**crime** 14:11 82:2
90:3,6,9,10 92:20
132:13
**crimes** 95:18 137:9
**criminal** 23:16
41:9 87:16 91:22
93:14,17 94:3,5,5
96:10 119:9 128:7
129:2
**criminality** 48:22
53:13,25
**critical** 146:25

**cross** 27:4 75:13,16
82:11 117:7 118:1
119:18,21,22
120:4 145:22
151:5
**crossed** 77:11
**crux** 132:14
**current** 141:25
**Currently** 88:8
**curtain** 54:19
**customer** 66:11,12
110:5,8 111:2
115:14 135:22
**customers** 65:24
66:2 116:21 122:1
**cut** 149:6

**D**

**D** 4:3 5:2 79:7 83:8
84:7
**D.C** 2:16
**Dana** 2:22 24:6
**dance** 112:11
**dark** 58:14
**darted** 120:11
**dash** 105:4
**date** 1:17 35:3 36:4
72:4,10 73:13
**dated** 143:15,17
154:12
**dates** 37:2,7 73:17
**Datura** 3:6
**day** 6:1,10 32:22
33:17 35:5 36:5
36:10,11,13 38:9
38:10 40:21 49:17
63:24 73:10 74:20
75:7 114:9 144:20
146:25 152:7
154:12
**days** 32:17,22
33:17 36:7 49:24
67:19 75:16
**deal** 7:16 17:3
81:22 151:12
**dealing** 88:15,18
**deals** 141:6
**dealt** 5:14 73:5
**December** 75:13,14
144:18

**decency** 12:12
**decide** 15:19 35:8
**decides** 9:24
**decision** 10:16,17
13:11 16:1,3
139:14 140:18
142:8
**declare** 33:9
**declared** 33:8
**declined** 12:15
**defendant** 1:11
2:10 9:12 13:2,23
14:9 22:10 30:11
150:17
**defendant's** 4:16
4:17,18,19,20,21
4:22,23 31:24
54:11 55:13
101:15 103:24
120:24
**defendants** 70:9
**defense** 5:9 6:5 9:1
9:2,4,8 10:13,25
11:5,8,9,10 12:2
13:17 14:1 17:7
18:3,5,6,21 20:4,9
20:19,21 23:23
29:14 46:18 54:3
54:18 65:9,11
74:3,11 101:20
102:6,12 103:18
107:7 112:12
116:21 117:1,12
119:9 150:20
**defy** 21:19
**delete** 97:11
**deliver** 6:24
**demand** 12:11
22:20 47:19
**demanded** 47:6,9
**demanding** 17:16
**demonstrate** 9:11
**demonstrative**
103:1,2
**deny** 34:10 35:24
39:2 60:23 82:12
**department** 27:2
32:13 42:21 48:10
53:7,17 58:5 62:9
68:12

**departments** 91:13
**depicted** 56:5
**derives** 90:11
**deriving** 90:5,18
91:3,6 92:1,3,18
94:7 95:11,20,23
95:24 96:16,21
138:24
**described** 67:1
**designed** 114:16,18
**desk** 90:24
**detached** 9:7
**details** 122:13
**detection** 58:18
**detective** 4:7 20:18
29:8 31:1 32:3,9
32:11 34:14 39:12
45:7 47:3 49:19
53:25 54:25 55:6
55:9 56:11 59:17
65:1,16 69:9
71:22 78:10,22
82:14 83:2,7
87:15,20,23 88:6
88:10,15 90:7
93:3,9 96:1 97:4
97:23 98:9,20
99:12 103:5,15
104:13 106:4
111:21 112:6,6
115:17 116:16
121:24 122:11
124:17,22 125:21
126:1,4,13,22
127:9 128:13
132:6 134:8
136:18 137:17
138:12,17,21
140:10 141:8
142:8 145:23
147:9 150:13
151:6,8,23 152:7
**detectives** 63:3
68:22 94:24 96:19
126:19 131:5
**determination**
35:19
**determine** 17:17
**determined** 13:13
**develop** 40:4 73:17

96:12 125:18
developed 44:9,20
  59:2 74:1,2 75:8
  75:17,18
devices 29:3
difference 120:25
  143:1
differences 142:24
different 14:6
  15:21 20:15 25:2
  45:19,19,20 55:22
  55:24 70:11 131:5
  132:25 146:1,5
  149:11
difficult 73:6
digits 70:13
Direct 4:8 32:7
directed 8:17
directing 21:5,16
direction 9:10
directly 41:5
  115:15 141:4
  147:4 149:4
directs 95:13
disagree 15:10
  16:19 26:4
disappear 147:22
disclosed 23:19
disclosure 134:7
discount 84:3,8,11
discouragings
  120:13
discovery 12:11
  22:5,10,13,14,20
  22:24 23:1,6,17
  24:9,11,13 30:16
  46:9 47:6,9,18
  80:21 151:19
discretion 28:10
  79:22,25
discretionary 28:5
discuss 64:3 127:4
  144:24 145:14
discussed 46:18
  47:23 91:20
  110:23 126:6,6
  153:10
discussing 24:24
discussion 107:15
  108:25 117:10

121:20 145:17
  153:6
discussions 127:13
dispose 16:24
dispositive 15:14
disrobed 148:8
distribute 101:18
District 43:18
districts 44:6
DIVISION 1:5
divulge 58:4
Dixie 1:18 2:7
docket 152:16
doctor 147:25
document 7:5,19
  9:3 35:7 36:15,19
  37:1 40:2,3,4,10
  40:13,18 60:19
  73:22 100:22
  101:8,13 102:18
  102:20,22 107:25
documents 13:8
  17:1 18:5,16,23
  19:5 21:16,18
  46:20,23 47:2,4,6
  47:9,24,25 69:2
  70:21 72:3,23
  109:22 129:19
doing 11:23,25
  22:22 43:21 51:21
  60:17 68:16 73:11
  99:16 100:23
  114:3 136:19
door 56:15,17
  59:11 90:25 91:1
  144:17 146:3,5,6
  146:8,9,12,21
  147:12,16 148:22
  148:23,23 149:1,4
  152:10
doubt 52:5 148:15
dozen 14:3 44:25
draft 21:8,9 92:6
  92:12 98:19,22,23
  99:1,4,24 101:24
  124:5 125:4
drafted 40:13
  101:23 138:21
drafting 84:19 92:5
drive 2:22 53:17

drove 37:1
duces 16:25 17:8
  17:13,25 18:10,12
due 7:24,25 13:9
  95:12
duly 32:4

_____ E _____

E 4:3,12 5:2,2
  154:2,2
ear 87:1
earlier 21:25 22:1
  51:18 64:8 77:2
  100:10 114:16
  121:24 127:20
early 48:6,15,24
  53:6 84:10
easier 23:13
easy 20:11 74:17
  143:1
eat 122:19
eating 62:5
Edison 62:19
edit 40:11
edited 40:13
edits 40:16
effect 64:1,2
effected 7:14
effectively 22:17
effects 5:20
efficiently 28:21
  29:3,12
effort 89:2,3,5,7
  92:15 146:22
efforts 11:16
egregious 79:21
eight 49:6,24
  105:19,25 109:19
  123:17 130:18
  131:13 139:6
  146:1,5,21
eighteen 123:6,6
  143:9
either 16:14 46:4
  115:8 131:2,18
  133:14 134:18
  151:19
elected 46:8
electronic 40:10
eleven 125:11

142:14,20 143:12
ELIZABETH 2:7
Elmo 54:13
email 99:13,16
emailed 99:18
  131:3,19 133:8,12
emails 98:20 99:13
EMANUEL 2:14
emergency 72:13
emphasis 146:18
employee 62:19
employees 57:17
  130:10,16
enclosed 66:7
encourage 149:25
ended 134:6,11
endorsed 48:9
ends 92:24 109:10
  133:20 134:2
enforcement 31:1
  33:6 64:2 75:22
enforcement's
  30:21
engage 14:11
engaged 134:4
engaging 132:10
  146:3
engine 140:17
English 128:6
ensure 64:21
enter 21:5 115:10
  123:2
entered 31:24
  54:11 55:13 56:2
  58:17 74:11
  101:15 103:24
  105:8 111:4,5,16
  115:15
entering 116:18
enterprise 93:14,17
  94:3,5,5 96:10
enterprises 91:22
  128:7 129:2
entire 5:21 6:1,10
  10:18 39:9 59:3
  101:3,13 102:10
  102:18,20 124:3
entirely 112:18
entirety 124:4
enumerated 94:1

equipment 6:11
escorted 85:11
especially 124:4
ESQUIRE 2:11,14
  2:15,17,22 3:5,8
essentially 23:2
  40:5
establishment
  14:10,10 37:10
  48:23 49:7 50:12
  50:15 53:17 85:16
  122:15,16 123:2
estimate 116:13
et 17:17,17 52:20
  59:13 85:12 90:12
  113:7 116:9
evacuate 62:14
  64:18
eve 8:10
evening 5:16 49:5
  63:11,17
event 44:18 83:7
events 57:14
everybody 60:9
  65:2,19 89:9,10
  89:12 95:9 107:2
  109:5 115:23
  144:4 145:1,3,8
  145:11 147:24
evidence 4:16,17
  4:18,19,20,21,22
  4:23 16:14 17:16
  29:14 31:25 39:10
  41:21 54:6,12
  55:13 72:17 73:17
  74:1,2,7,11 75:8
  80:16 92:20
  100:25 101:16,19
  102:19 103:24
  108:9,16 119:3,7
  120:20 123:5
  125:18 147:2
  149:11,14
exact 48:17 50:8
  71:25 94:2 97:24
  98:3,12 99:17,18
  99:19,21 120:2
  131:3 133:8
exactly 65:20,20
  98:23 99:6,25

100:19,23 101:9
105:10,10,14
111:3 112:12
122:8 128:23
131:8 132:22 148:8
148:25 152:25
**examination** 4:8
27:5 32:7 82:11
119:18,21
**examine** 117:7
118:1
**examined** 32:4
**examining** 119:22
**example** 64:24
**excellent** 11:6
**exception** 25:6
**exchange** 98:20
**exchanged** 98:12
**exchanging** 98:13
**exclusively** 110:5,8
110:11,14,16,19
110:25 111:1,13
111:15,19 112:1,5
112:17,22 113:17
113:19,25 114:11
115:7,14 125:6
127:2 128:8
135:25 136:1
139:3
**excuse** 36:8 72:8
118:6,6 119:23
145:1
**excused** 24:22 25:3
106:12
**execute** 36:10
**executed** 134:12
**execution** 72:18
**exercise** 136:19
**exercised** 79:25
**exhibit** 4:18,19,20
4:21,22,23 54:19
55:7,13 74:11
101:15 102:21,23
103:24 105:9
108:9 143:21
144:8,9
**Exhibits** 4:16,17
31:24 54:3,7,11
**existence** 33:25
**exited** 37:21 111:5

**exiting** 116:18
**exits** 37:18
**expect** 14:24 15:1
**expectation** 9:2,10
9:15,17 10:3,14
13:2,12,24 14:5
14:12,18 15:11,13
16:12 145:20
146:16,19,23
147:5,22,25 148:1
148:3,14,18
150:13,16
**expected** 98:15
**expedite** 73:1
**expedited** 73:3
**expeditiously** 73:6
**expensive** 87:4
**experience** 86:17
91:25 92:2 109:23
125:23 126:4,9
127:18 128:13,15
128:20,25 129:13
129:16,17,18,21
138:17
**experienced** 88:12
129:11
**expert** 25:6,8,9,15
25:19,21,22,23
26:1,3,6,13,14,23
27:10,12 28:6,15
151:1
**Expires** 154:16
**explain** 17:24
35:17,21 41:16
60:21 90:9 115:19
146:25
**explaining** 8:19
**explanations** 131:4
131:18
**extended** 61:5
**extent** 28:12 33:12
**exterior** 139:2
**eyewitness** 36:19

F

**F** 154:2
**face** 147:17
**facials** 50:22 52:12
52:20,24 116:9
**fact** 9:1 11:9 15:13

23:5 49:5 52:19
52:22 53:16 56:5
57:20 64:12,23
80:5,23 93:16
97:5 117:24 121:7
132:25 141:22
147:16 148:21
149:2
**factors** 91:11
**facts** 13:6 15:17
16:1,2,7,17 45:20
113:2
**fair** 7:25 11:20 22:7
27:18 56:13 58:5
92:10
**fairly** 12:2
**fairness** 26:19
27:14
**faith** 10:22 119:19
119:24
**fall** 44:11 75:2
95:18
**familiar** 25:14
**Fantastic** 74:16
**far** 15:1 37:4 56:2
85:4 90:15 94:23
128:13,15,17,18
149:1,8
**faster** 73:4
**fault** 80:20
**favor** 144:9
**February** 35:4 36:2
36:5 73:10,14
76:5 89:11
**federal** 43:18 142:1
148:16
**fee** 115:15
**feel** 106:19 145:4
**feels** 11:9 93:9
**feet** 11:6 146:7
**felony** 70:9 90:10
96:12,13,15,17
**felt** 76:23
**female** 49:3 50:5
52:16 113:14
116:20,24 117:2
117:13
**females** 52:18
56:10 111:4,5
114:20 123:7

**Fenton** 98:9,20
**fewer** 15:1
**field** 26:17
**fifteen** 27:17,19,20
122:14
**FIFTEENTH** 1:2
**fifty** 6:21 7:19
**figured** 139:22
**file** 8:24 29:16
45:22,25 46:4,8
46:10,13 47:4,21
48:3
**filed** 5:17,18,24,25
6:4,5,6 7:19,22
8:7,11,24 17:17
17:18 30:9
**files** 6:13 8:11 19:7
**filing** 7:22 22:20
**final** 98:19,23 99:1
99:4,24 100:3,7
124:4,10,13 125:3
134:20,23
**finally** 31:5
**financial** 130:10,12
130:15
**find** 46:3 66:25
68:18,24 70:14,22
78:15,16 104:14
104:24 118:10
**finding** 13:1,3
**finds** 11:14,15
68:18
**fine** 20:21 30:4
43:11 101:10
102:25 108:1,4,19
108:21 139:22
**finish** 27:7 96:3,6
150:23
**finished** 78:9 89:24
144:20,25
**fire** 63:4,6,8,11
64:24 65:15
**first** 9:8,24 10:21
15:23 17:18,23
24:2,18 27:6,24
32:4 34:15,19
46:21 66:3 75:16
115:17 125:7,21
127:21 128:19
131:21 132:6

**134:18 138:22
146:4 147:7
firstly** 131:21 132:3
132:6
**fit** 21:11 35:25 73:8
**five** 32:22 33:17
123:18 138:20
139:10 142:15
**flat** 115:15
**flip** 78:25 81:3,23
82:15,17
**flipping** 81:11
**Floor** 2:18
**Florida** 1:3,7,19,23
2:4,8,12,23 3:6,9
8:1 9:25 14:4,8
15:12 16:10 42:2
80:3 119:5 141:25
142:1 148:7,13,15
148:16 154:4,15
**fluid** 69:15 73:20
**folks** 29:2
**follow** 38:2 61:24
69:7 70:1,3 78:12
90:14 120:7
**follow-up** 45:6
83:14 87:10
**followed** 71:7
**following** 117:23
**follows** 32:5 78:14
107:16 113:6
117:11 120:22
145:18
**followup** 72:22,23
**font** 109:13
**foregoing** 143:8
154:8
**foremost** 9:25
**forget** 14:8 88:11
**form** 140:13
**Fort** 2:23 43:18
**forth** 33:6 40:15
54:7 99:13 141:19
**forthright** 83:8
**forward** 9:5,24
10:5 11:1,8,17,19
13:4,13 16:8,20
39:4 124:12
**found** 50:18 51:17
67:18 69:20

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

**four** 35:7 60:18
66:6 70:13 105:20
105:21 109:19
131:14 137:15
**fourteen** 122:13
**fourth** 9:13 13:15
13:15 105:24
**framework** 47:13
**frankly** 48:1
149:10
**fraudulently** 101:4
**free** 106:19 145:4
**freely** 61:11
**Friday** 1:17
**front** 7:18 32:20
59:18 60:1 66:3,8
90:24 129:25
133:25 135:15
144:17 149:4
**FUGATE** 3:8
**full** 80:24 105:21
106:1
**functions** 8:12
**funds** 90:11,11
**further** 14:12 65:7
70:8 72:3 92:20
96:11 113:6
121:10,12 125:22
126:8 128:19
132:4

**G**

**G** 5:2
**game** 108:20
**gas** 62:17 63:6,8
64:25 65:15
**gatekeeper** 8:3,12
**gathered** 84:9
**gathering** 59:1
**general** 64:2 78:25
**generalized** 71:14
**generated** 31:21
**gentle** 120:4
**getting** 9:23 29:9
47:12 65:3,19
120:15 135:15
147:23 151:15
**gift** 51:11 69:21
**girls** 134:16 135:1
135:3,4,5,9,11

**gist** 79:4
**give** 6:1 10:20
11:11 14:13 21:10
26:18 27:15,17,19
28:9 50:22 55:6
63:20 65:11 73:24
82:22 88:2 94:1
103:14 117:23
131:5 145:24
152:16,17,18,19
**given** 22:16 24:23
28:7 31:4 40:5
82:3 91:21 131:25
**gives** 129:5
**glad** 6:17 7:8 105:8
126:12
**go** 6:12 7:10 9:5,24
10:12 11:19 13:4
13:13 15:9,15
16:8,20 32:24
34:10 37:6 38:9
39:4,5 40:4 41:9
51:15 59:11,19
60:23 61:25 62:19
64:22,22,22 65:1
65:11,17 66:6,22
77:14 79:17,23
81:11 82:12 89:17
92:9 96:6 105:19
108:8 109:8
110:24 111:9,10
113:20 116:5
118:4 119:17
131:12 136:20
140:16 145:3
151:4
**goes** 31:7 41:1
47:17 89:19 90:24
113:5 115:15
121:10 129:18
132:4 133:21
147:4,25 152:19
**going** 6:10 10:7,17
11:1,8,16 13:18
19:17 21:1,18
22:13 25:9 26:14
26:18,24,25 27:10
27:11 28:23,25
29:2,6 31:4 32:25
33:12 35:18,23

36:10,11,12 38:16
38:21 39:6 43:4
46:5 47:20 49:2
49:12 50:23 54:2
55:5,9 57:5 59:10
61:7,16 63:24
65:18 67:10,10,20
68:1 73:8 75:13
75:16 76:14 78:13
81:5,12,13,25
86:23 90:17 93:9
95:7,8 96:5 99:12
99:17 100:12,20
100:21 101:6,17
103:7 104:12
105:10,10 106:16
108:8 109:8
110:25 114:1,10
115:21,24 117:4
117:12,16 118:13
118:24 120:16
121:11 130:3
133:3,5 136:2
143:21 144:1
146:1 147:18
149:12,13 150:12
150:21,23,25
151:4,9,12,15,21
**Goldberger** 2:11
2:11 5:9,11,16
6:17,20 7:3,6,8,11
8:19 11:18 12:4
12:19,21 13:18
14:25 25:5,9,14
25:18 26:5,22
27:7,9 105:1
106:23 151:25
152:3,22,25 153:4
**golf** 49:7
**good** 5:4,5 10:22
15:8 32:9,10 47:8
67:19 68:5 108:22
108:23 119:19,24
142:6 143:24
**Goodfellas** 59:7
62:5,8,11
**Google** 51:17,22,24
66:25 67:3
**Googling** 139:1
144:16

**gotcha** 47:10,13
108:20
**gotten** 43:25 44:5,6
45:14 52:12 80:20
94:20,25
**grand** 36:22 72:13
73:3
**great** 11:8 57:20
65:1,16 74:16
145:7
**greater** 28:10
**greeted** 85:10,10
90:24
**GREG** 2:6
**groundwork** 65:10
**group** 24:6 49:6
**Groupon** 51:16
**Groupons** 51:10
**guess** 38:24 54:6
76:24 106:21
**guidance** 10:15
**Guide** 51:14
**guideline** 140:8
**guys** 108:18

**H**

**H** 4:12
**hace** 2:17
**half** 6:3,5,7 8:7
11:22,23 12:1
14:3 44:25 77:16
**hallmark** 82:11
**hallway** 54:19
**hand** 148:11
**handed** 40:7
**handle** 20:12
**hands** 49:9 90:13
**handwriting** 144:9
**hang** 12:23
**HANSER** 1:14
**happen** 14:24
**happened** 38:16,17
67:7 97:8 113:11
139:23
**happening** 21:4
118:11 120:15,18
**happens** 67:6 78:24
79:11,14 80:2
84:18
**happy** 119:7

**he'll** 101:22 151:7
**head** 97:17 112:11
125:14 127:8
**Health** 48:10 68:13
**hear** 6:17 15:17,24
16:15 25:23 31:6
108:19 115:23
**heard** 13:7 24:3
31:8 39:10 65:7
74:8 80:25 116:2
**hearing** 5:19 6:2,2
6:8 7:25 8:10
11:10,20 12:12
15:3,6,20,25 16:5
16:9,20 29:1,7
35:14 47:24 77:21
107:16 117:11
145:18 149:7
152:2
**hears** 27:3
**hearsay** 117:5
**held** 1:13 67:4
**help** 6:20 12:15
56:1 143:8
**helped** 89:12
**helpful** 16:2 95:16
108:20 126:14
130:22,23
**helping** 94:24
**Hennessy** 76:11
88:23 89:14
**Herzog** 68:12
144:17 152:7
**hey** 8:9 59:12 80:6
100:2 126:9 142:9
**hi** 78:10
**hid** 18:12
**hidden** 57:11 58:17
**hide** 57:20 146:22
**highlighted** 114:15
**highlighting**
109:14
**Highway** 1:18 2:7
**hint** 83:2,2
**Hirsch** 88:15,18
151:9
**holding** 35:20
**hole** 57:23
**homicide** 9:22
88:16

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

Page 163

honest 76:12 83:8
honestly 10:22
  13:21 140:3 147:1
Honor 5:5,8,9,11
  5:25 6:1,10,18,21
  7:3,8,13,18,24 8:3
  8:10 9:3,24 10:5
  11:19 12:5 13:19
  14:17,23 15:9,15
  15:18 16:3,12,23
  17:1,10,14,23
  18:15,25 19:9,19
  19:21 20:10,13,16
  20:24 21:13,14,24
  21:24 22:1,13
  23:21,25 24:1,3
  24:16,17 25:5,19
  25:19 26:15,23
  27:24 28:7 29:1
  32:25 46:5,14
  47:5 50:23 54:9
  64:4 76:14 81:25
  82:7 88:17 96:2
  100:20 103:22
  105:1 106:7,15
  107:1 112:7 114:1
  115:21 117:4,15
  117:25 118:5
  121:18,19 136:2
  144:24 145:2
  147:1,2 149:18
  150:11,22 151:25
  153:4,12
Honor's 152:13
Honorable 1:14
  143:14
hope 35:18
hopes 28:21
hoping 56:1
hostile 33:8,9 34:7
  114:5,10,13
  129:23 140:16
hot 53:13
hour 56:24 67:25
  77:16,16 113:21
  114:19,23 115:3
  117:2 151:10
  152:14
hours 5:19 6:9
  15:16 32:22 33:17

33:23 49:24,25
  61:7 77:8 122:14
Howard 136:3,4,5
hugged 146:13
hunch 69:16,17
hundred 49:25
  100:6 102:3,3
  126:13 141:11,13
  146:15

I
idea 7:16 31:9
  60:12,14 92:14,16
  98:22 147:15
  150:12
ideas 61:6
identical 102:13,13
  103:4,5,10,11
  109:14 137:20
identification
  36:16
identified 6:7
  136:15
identify 12:13
  136:16
identity 117:19
II 153:15
III 141:1,24
illicit 42:12 49:11
  51:14,20 52:2,14
  52:22 65:23 67:3
  81:17 96:11
  109:24 134:5
image 104:15
immediately 35:17
  54:1 100:24
  120:11
impeach 26:12
  27:1 28:6
impeaching 26:21
impeachment
  26:22
implicate 23:8
implicated 23:13
implicates 23:6
important 150:18
  152:3
impression 112:16
in-camera 150:1
inaccurate 108:7

inappropriate
  47:10
include 99:17
  113:9 123:1,7
  137:10
included 30:23
  31:13 97:10
including 23:17
  128:8
incorrect 36:3
  39:24
incredible 8:6
Indian 38:10 43:13
  43:15,19
indicate 37:23
individual 14:5,8,9
individuals 61:4
  66:14 71:15 79:6
  82:1 85:6 134:4
informants 53:11
  81:4,8
information 14:13
  39:19 43:24 50:3
  58:8 70:24 71:3,9
  71:14,21,23,25
  72:1 73:19 78:3
  79:17 81:16 82:23
  82:25 97:10 98:21
  118:2,3 120:17
  125:3 131:22
  136:24,25 137:2
  143:8,9
informed 10:17
  107:19
inherent 23:3
initially 42:4
  145:15
injected 139:24
injects 83:2
innocent 134:8
inquiry 68:19
inside 9:16 37:5
  49:9 53:20 55:23
  56:7,9,10 57:11
  57:14 58:14 59:1
  60:20 61:5 62:5
  64:5,18,25 65:5
  65:25 66:15 67:7
  67:7 76:19 79:22
  81:6 83:20 85:1

85:15,21,24 86:1
  86:17,21 87:7
  116:7,14 122:6,8
  136:14,24 137:1,3
inspection 48:10
  68:13 144:17
Inspector 68:12
install 57:24 58:1
  59:19 65:21
installation 61:7
installed 57:11
instance 46:21
instruct 82:24
intelligence 41:8,9
  59:1
intend 110:18
intends 22:20
  145:23
intent 23:11,18
  153:2
intention 81:16
interested 126:7
internal 34:3
internet 67:19
  139:1
interrogator 55:3
interrupted 27:25
intervene 5:22
intervenors 2:20
  3:4 24:7
introduce 30:2
  78:10
inventory 30:2
  31:17
investigate 63:9
  96:15 118:8
investigated 90:6
  91:5 93:14 129:14
investigating 42:25
  48:24 67:14 90:3
  93:8 95:18 109:24
  127:25 129:13
  137:9 138:23
investigation 27:5
  39:16,16,20 41:13
  41:14,14,20 42:1
  42:5,17,20 43:9
  44:20 45:15 48:6
  63:19 64:1 66:23
  67:5,17 69:11

70:7 73:4 79:16
  79:20 88:3,9,21
  89:1,4,8 92:24
  95:23 96:10,12
  98:10 113:5,10,11
  125:2,23 126:5,14
  126:25 127:21
  128:14,21 129:17
  132:14 136:9,10
investigations
  43:22 79:12,14
  92:1,2,17 126:8
  126:16 129:22
investigative 48:17
  57:25 109:23
investigator 97:15
  97:16,18 107:22
  126:17
investigators
  118:13,20,23
invited 147:9
invoke 8:12 24:19
invoked 24:20
involve 140:22
involved 36:15,20
  91:11 92:22,24
  126:15 136:10
  144:14
involves 29:24
  60:16 139:4
  140:24
irrelevant 35:11,19
  46:9 47:10
issue 8:25 12:6,18
  13:19 15:21 23:1
  24:13 29:13 31:14
  32:21 39:13 56:4
  65:6 101:7 136:11
  145:15 152:4
  153:9
issued 9:6 10:11
  20:23 21:24 24:25
  72:5
issues 6:7 7:13,15
  7:17 11:9 12:14
  15:5,16 16:1,5,24
  101:12
issuing 21:1
items 24:9,11,13
  68:24 72:2 73:6

**J**

J 2:22
JA 150:10
JACK 2:11
JANOUSEK 20:16
20:18 21:7
January 37:2 44:24
46:25 47:1 57:12
57:15,15 66:17,17
73:15,25 75:9,17
75:19 76:1,2 77:5
89:25 92:23 113:8
143:17 144:19
146:4
Jesus 49:9
jewelry 87:3
john 73:16 77:5,6
77:10,13 78:13,13
86:14 90:13,13,23
144:19
john's 86:17
johns 78:8 80:6
86:20
JR 3:5
judge 6:24 8:17,23
9:6,9,19,20 10:1
10:12,15,16,21
12:18 13:1,21
14:12,16,20 16:8
16:17,21 18:18
19:18,23 21:7
23:20,21,22 24:19
25:13 26:4,18,19
27:6,13,14,17,25
28:3,17,19,20
29:11 30:4,19
31:17,22,23 32:17
32:20 33:4,16
35:11 39:7 44:23
47:12 57:2 58:9
61:13,17 82:21
92:9,10 101:14
102:3,6 103:12,17
107:22 108:1,4,5
109:2 119:1,16
120:12 121:15,21
130:1 133:21,23
133:25 134:21
135:16,18 140:17
141:19 143:14

144:22,23 145:7
145:11,15,19,24
146:24 147:7
148:6,20,24 149:2
149:4,15,20,20
150:25 151:1,2,7
151:13,16,20
152:20 153:9
judged 6:22
judicial 1:3 2:5
6:24 23:9 29:16
29:18 30:7,13
31:14
judicially 134:12
JUDITH 2:6
July 88:1
jump 37:4 56:23
jumping 56:11
jumps 53:25
Jupiter 27:2 32:13
41:11,22 42:20
45:10 53:12,16
58:4 62:9
Jupiter's 50:20
51:4
jury 36:22 72:13
73:4
justice 87:16 119:2

**K**

keep 33:4 55:8 83:3
93:16 94:4,12
95:6,8 117:19
120:23 152:15
Kerr 89:18,20,22
Kimbar 151:6
kind 6:1 12:5 26:16
69:1 73:24 74:16
75:1 83:20 91:6
100:2,5 123:24
128:2 129:24
136:10 138:22
148:2
kinds 79:14 87:10
kissed 146:13
kites 53:12
knew 58:25 61:6
73:7 83:1 99:9
knock 59:11
know 5:11 6:22

9:19,20 11:22,25
14:17 16:17 22:8
26:14 28:8 30:25
33:12 36:9,12
37:17 44:14,14
46:2 47:21 48:3,6
48:14,15 50:18,19
51:3,8,10,16
52:20 53:2,23
56:6 57:8,17 58:4
59:8 60:1 62:9
65:16 67:15 68:3
69:6 72:4,10 73:1
75:23 76:2 79:17
80:19,23,24 81:2
81:12 85:20 86:3
93:9,25 94:23
96:24 97:13,23,25
98:1,2,20 99:6,25
100:1,4,6,23
104:23 108:3
110:23,25 111:1
112:1,1,10,23
113:16,18 114:5
116:8,10 118:13
118:25 120:5,16
120:16,17 121:25
122:4,8 126:1,4,8
126:16 127:7,7,8
127:12,14 132:1
133:12,13 134:6
135:2,21,22,25
136:3,15,16
138:10 140:22
141:24 142:2,2,10
148:25 150:1,21
151:16 152:18,19
knowledge 48:1
91:21
knows 18:14 46:22
46:23,24 47:14,25
149:1
Kraft 1:10 2:10
9:13 13:2 14:9
34:16 35:4 36:16
37:2 66:14,19
118:12 145:24
146:2,6 147:11
Kraft's 150:13
Kridos 2:6 5:8 6:24

8:16,17 12:18
13:1,9,21 14:16
16:8,17,19,21
17:11 18:6,12,14
18:18 19:3,10,13
19:16,23 20:1,8
21:16,19 22:18,19
23:20 24:19 25:13
26:4,18 27:6,7,8
27:10,13,17,24
28:3,17 104:23
107:18,22 108:1,3
108:10,21 144:23
145:2,7,14,19,22
147:7,14 149:4,9
149:15,18 150:4
150:15,25 151:23
152:9,13 153:9
Kridos's 12:5

**L**

L 2:15 3:5
label 52:6
labeled 51:18 52:8
lack 130:9,15
Lakes 1:22
language 20:8
104:15 105:10
141:16
large 21:2
late 41:5 58:23 59:4
59:15,16 61:8
64:20
Latin 133:4,5
latitude 28:11
65:11
Lauderdale 2:23
launches 139:1
laundering 137:9
137:11,25 138:6,7
142:17,18 143:5
law 8:18,18,20,21
8:21 10:20 11:12
11:13 14:3,15
25:18 26:5,15,17
27:11 30:20 31:1
33:6 64:2 75:22
82:8 140:7,9
148:7,17
lawful 26:10 76:19

lawfully 9:6 10:11
lawyer 50:24
Lawyers' 1:22,24
lay 25:16 26:11
laying 65:9
lead 33:1 34:9 45:7
45:14 68:6 90:6
leading 32:25 34:6
111:6 114:3
leak 62:18 63:6,8
65:15
leap 138:12
learn 42:8 98:6
116:20,22 119:15
126:13,16,20,23
learned 43:24 70:8
84:13 113:2
136:21
leave 19:2 57:8
65:2,17 112:15
139:25 140:2
145:8
leaves 91:1
leaving 37:10,12
78:13 106:14
led 115:11
ledgers 70:4
left 26:17 56:3,13
64:14 79:2 115:11
legal 10:20 15:5,16
16:1,5 60:20 64:5
65:5,6 76:21 82:9
140:8,13,16,17
141:4,23 142:2,14
legally 9:15 60:21
82:1 146:18
legitimate 35:9
60:20
legs 146:8
Lei 70:10
length 59:4 122:5
lengths 57:20
lengthy 85:5
116:10
LEONARD 1:14
let's 76:12 92:5
103:14 104:12
111:9 113:20
132:8 144:22
letter 18:13 20:25

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B88E8C26A46

**letters** 137:24
**level** 81:24
**license** 37:18
**licensed** 48:7 68:3
**licenses** 48:12
**lie** 81:1
**lifestyle** 90:12
**lifted** 49:9
**lifting** 6:20
**light** 11:6
**lights** 38:5
**Lilienfeld** 88:22
  89:14
**limited** 72:1 113:2
**line** 10:25 120:8
**listed** 49:4 70:4
  96:14 127:15
**listen** 8:9 26:2,8,11
  85:5
**little** 14:23 20:14
  32:16 55:6 56:11
  70:17 75:23 86:23
  90:17,25 124:8
  151:8
**live** 26:21 122:17
**living** 56:8,10,21
  61:5
**LLP** 2:14
**lobby/foyer** 54:16
**location** 142:17
  143:1,2
**LOCICERO** 2:21
**locked** 6:8
**lodge** 121:15
**log** 37:17
**logical** 131:17
  138:12
**long** 6:21 32:24
  36:8,8,9 50:15
  116:4,11,14 122:8
  150:25 151:7,9
**longer** 122:10
  125:9,16
**look** 54:3 55:22
  66:7 67:19 70:12
  104:13 105:7
  106:5 127:11
  128:19 137:17
**looked** 71:13,20
**looking** 17:7 48:5

48:21 56:12 64:25
  71:17 105:3
  147:10 148:22
**looks** 131:21 138:9
  138:13,14
**lot** 10:12 15:2,8
  32:22 37:11,15
  38:3 76:7,8,9,13
  93:4 118:19
  120:18 122:23,24
  125:9 137:5 151:2
  151:3
**lots** 28:22
**loud** 108:14,17
**louder** 61:16
**love** 103:12
**LOVELADY** 3:8
**low** 81:24
**Lucie** 41:10
**Lulu** 70:6
**lunch** 143:25
  144:22 145:3,9
  152:22,24
**luncheon** 153:14
**lying** 147:11,17
  148:25
**lynchpin** 145:20

— M —

**Madison** 2:18
**magistrate** 9:7
**main** 70:4
**major** 89:19,20
**majority** 49:4 50:1
**making** 13:1,7 16:2
  81:10
**male** 37:12,18 49:3
  49:3,4 110:5,8
  111:2,15 112:5
  115:14
**males** 49:6 50:2
  123:7
**mall** 50:13 81:18
**malls** 63:25
**maneuver** 5:20,23
  7:23
**manipulating**
  146:11
**manipulation** 79:1
**manner** 21:22

33:11
**Maps** 51:14 67:1
  70:7
**March** 5:24 154:16
**marked** 38:5 78:7,8
  78:15
**Martin** 3:5 30:18
  30:22,23,25 31:2
  31:3,11,13,21
  38:9,17,22 39:12
  39:15 40:19,21
  41:4,8,9 43:12,25
  44:7,14,18 45:7
  45:15 53:7 75:2
  92:25 93:1,3,7,10
  97:2,6,23 98:4,19
  100:16 101:1,3,24
  103:7 104:3,5,5
  105:14 106:5
  107:12,17,19,21
  107:24 109:6,10
  123:19 124:4,22
  125:4,5,8,21
  126:22 128:13
  130:8,9,19 131:13
  132:5,21 134:20
  137:5,8,15 139:10
**Marx** 23:20,22
  30:19 32:20 33:16
**Marx's** 32:17
**massage** 13:24 37:9
  42:12 43:4,5
  45:10,10,11 48:5
  48:7,23 49:11,11
  51:14 52:9,14
  52:17,22 53:3
  54:16,20 55:17
  56:4,5,9,14,16,18
  58:2,17 59:22
  63:25 64:10 65:22
  65:23,25 66:6,15
  66:23 67:6,15
  70:5 77:16,16
  78:14,25 79:22
  81:17 90:23,23,24
  90:25 91:1 96:11
  122:1 133:4 134:3
  134:5,9,13 136:9
  136:11 146:2,7
  147:20,23,24

**massager** 90:14
**massages** 151:15
**masseuse** 66:11
  90:13,14,18
**masseuses** 45:19
  48:12 56:8,21
  57:8 66:11 73:21
  84:22 86:21 87:3
  87:5 134:16
  147:17,18,23
  149:2,3
**material** 31:20
**materials** 26:9
**math** 143:9
**matter** 5:13,22
  7:14 8:13 12:10
  25:25 135:16
  144:24
**matters** 7:14 21:21
**MCAULIFFE** 3:5
**McELROY** 2:22
  24:3,5,6,6,16
**McKay** 141:19
**McKay's** 140:17
**mean** 6:15 8:4 18:9
  19:2 30:20 33:4
  38:20 39:12 43:9
  73:1 76:12 79:15
  81:10 85:14,23
  86:2 88:15 91:24
  91:25 93:2 95:22
  107:2 112:10,11
  125:13 127:12
  141:23 142:8
  144:3 149:6,10
**Meaning** 48:9
  80:17 123:24
**meaningful** 44:19
**meaningfully** 64:9
**means** 22:12 24:21
  110:16
**meant** 82:22 140:3
  140:15 153:7
**media** 117:23
**meet** 10:7
**meeting** 41:8,8
  42:3,8,9 43:17,24
  43:24 45:1,3,4
  64:3
**meetings** 41:12

44:4 63:5 98:11
  129:19
**member** 118:10
**members** 43:19,20
  43:21 63:4,6,10
**men** 49:12 67:2,6
  67:10,10 68:4
  110:15,25 113:17
  113:19 115:7
  136:1,1 139:3
**mention** 53:2 91:23
**mentioned** 17:18
  38:11 70:7,8
  95:25 146:15,16
  148:19
**mentions** 129:4
**merchandise** 71:14
  72:6
**merchandising**
  71:17,20
**merchant** 70:24,25
  71:25 72:7,8
**Mesa-Rincon**
  139:14 141:19
**message** 86:8
**met** 10:6,9 32:11
  32:13 34:19,23
  40:3 41:24 63:3
  92:16,20
**methods** 109:23
**microphone** 61:15
**microphones** 30:6
**mid-November**
  68:15
**Middle** 2:22
**middle-aged**
  136:12,25 137:2
**midnight** 59:5,20
**Miga** 154:6,14
**Miller** 107:5
**mind** 19:6 47:14,17
  64:14 67:1,9 81:7
  82:8 85:25 91:3
  93:3,5 107:14
  114:24 120:23
  151:25 152:15
**minimal** 12:3
**minimization**
  151:13
**minute** 62:16 140:4

minutes 27:16,17
27:19,20 32:14
83:1 116:15
122:10
mirrors 104:15
mischaracterizing
95:3
misdemeanor
29:24 34:15 36:23
66:20 82:3,19
misleading 114:12
mistaken 52:22
mixed 49:3
modify 112:13,19
moment 35:22 81:8
Monday 152:16,17
monetary 90:10,11
money 83:15,17
90:14 91:1 118:12
137:9,10,25 138:6
138:6 142:17,17
143:5
monies 118:18
monitoring 105:6
month 5:24 35:10
76:2,4 89:11
125:14 144:9
month's 76:7
months 34:14
moot 18:18
morning 1:15 5:4,5
32:9,10 76:12
152:17,18
MOSER 2:15
103:1
motion 5:17,17,24
5:25 6:4,5,14 7:22
8:2,11,11,25 9:18
9:21 11:1 12:24
13:4,14,22 17:7
17:15 21:22 24:25
28:11 34:8 46:6
120:24 150:4
motions 17:22
move 12:20 15:3
29:12,13 30:15
61:11 132:8
moving 35:15
121:16 124:12
135:11

multiple 61:7
murder 79:16
murders 79:16

N

N 1:18 4:3 5:2
naked 65:24 66:15
134:3,8,13 146:8
146:10 147:18
151:14
name 42:21 70:6
97:17 117:7,13,23
118:3,7 127:10
136:16
names 70:5,6 73:21
napkins 68:25
narrative 33:11,13
92:9
nature 38:14 51:21
nauseam 98:9
nearly 59:20
137:20,21 151:7
necessary 121:13
necessity 82:9,11
need 5:21 6:20
12:24 16:15 20:2
35:8 58:8 59:12
62:14 83:4 92:19
106:18,23 118:9
119:12 120:23
121:12 144:23
145:14 149:12
150:9
needed 12:9 32:23
59:2 62:19 64:16
64:17 65:20 73:2
96:13,17 140:1
needs 5:13 13:12
21:5 25:23,23
26:2 27:9 136:3
149:8
negative 64:2
neighboring 38:14
41:11 58:20,22
61:3,19
neither 11:13
NETO 2:7
neutral 9:7
never 10:20 39:24
47:8,9 55:18 79:9

79:12 84:14 93:14
94:11,20 98:18,23
99:1 120:17,20
124:9 129:14
140:15 141:14,16
141:17,18,20
new 2:18,18 7:13
7:17 75:23
nice 53:22 86:25
night 5:13 6:9,18
6:25 7:4,15,20
11:2,24 58:23
59:4,15,16 61:9
64:20
nine 103:16,18
132:20 134:15
137:4,15 138:20
139:6,9
noise 145:16
non-audio 105:6
nonissue 25:22
normal 22:15
normally 135:1
North 2:7
notarized 80:10
119:25
Notary 154:6,15
note 37:1 57:7,9
noted 37:17
notes 98:12,13
124:22 145:25
154:10
notice 11:21 29:16
29:18 30:8,13
31:14 137:8
noticed 30:22
notion 12:1
November 33:21
34:5 42:6 70:20
73:24,25 74:18,20
75:4,7,8,9 113:5,7
144:17,18
number 12:23 50:2
50:8 109:9,9,11
109:11 120:13
numbers 51:17
69:24 70:22 71:2
77:25 78:1 94:2
122:25
numerous 51:17

NW 2:15

O

O 5:2
o'clock 5:16,19
7:15 11:24 153:3
oath 32:5 111:23
Obj 4:16,17,18,19
4:20,21,22,23
object 31:11 32:25
38:16 46:5,14
50:23 55:4 76:14
76:16 81:25 88:17
100:20 112:7
114:1 115:21,24
117:4 130:3 136:2
objection 29:17,19
30:12 31:25 34:6
34:10 35:6,24,25
39:2,3,4 46:11
51:5 54:4,5,9,12
55:7,14 60:3,18
60:23 61:22 64:6
65:4 74:5,6,8,9,12
82:4,5,7,12,22
91:12 95:2 100:12
101:16 103:21,25
106:13 121:15
136:6
objections 83:4
obligated 18:21
20:6
observed 120:4
observing 135:18
obstacle 11:8
obstruct 82:22
obstruction 119:2
obtain 44:10 46:20
71:2 92:20 111:7
115:12
obtained 110:2,2
121:4
obviously 7:11 8:17
9:1,4 10:6,9,15
15:10,24 29:6
91:9 118:8,25
119:12 151:13
occasions 83:15,18
146:21
occurred 36:7

79:22 81:6 82:19
104:9 123:8,9
125:2
occurring 35:10
146:24
occurs 41:9,10,10
October 41:5 44:23
74:24 113:4
144:14
offense 36:17 81:24
138:24
offenses 94:16
offer 54:5 55:5 74:6
100:24 102:6
116:9 149:14
offered 102:11,19
103:16
offering 102:15
149:13
offguard 27:14
office 2:5 12:9
34:15 40:6,16
43:18,20 82:24
92:11 96:24 107:5
125:1 131:8,24,25
139:20,24 152:5
officer 26:8 31:2
59:10 78:9 87:18
119:19 151:6
officer's 82:8
officers 53:16
62:12 151:16
152:7
oftentimes 132:3
oh 38:15 49:23
59:10 63:13 83:2
91:23 153:7
okay 5:10 7:8 10:24
11:12 12:17 16:22
17:4 21:20 23:24
24:20 27:19,22
28:2,8,18 29:8
30:5 31:20 33:14
39:2 42:24 43:8
43:10 46:2,15
47:23 50:11 53:11
55:5,10 56:12
58:8,11 62:23
63:2 66:23 67:17
69:6,7 70:11

73:15 75:1,7,17
81:21 86:6 88:2,5
88:11 90:13,14
93:21 95:6,8
98:25 99:16 100:5
100:10,15 102:11
102:21,25 104:8
104:11,16,17
105:19,20 108:24
109:1,12,17,18,18
109:21 111:10,17
113:13 116:16,24
117:16 121:17
122:4 123:13,20
123:24 124:9,10
124:13 125:7
126:9 127:17
129:10,11,12
133:16,19 135:1
135:11,12 136:19
140:3,15,23 142:6
142:12,22 144:8
145:3,16 147:6
149:16 150:21
153:4,13
old 135:3
once 16:6 33:12
52:23 78:8
ones 45:18 103:6,6
133:1 147:21
ongoing 42:1
online 51:8,13
52:16,25 84:10,13
110:24 111:21
open 58:24 59:5,8
62:2,6 73:3
111:23 120:14,21
146:9,13 147:12
148:22,23 152:11
open-ended 33:5
opened 61:21 149:1
opens 146:5,6,21
147:14,15,16
149:4
operating 41:22
42:12 81:18
operation 42:21
43:4,5 45:11 53:6
60:17 66:23 67:6
67:15 90:23

opine 44:16
opinion 25:11,20
25:20,23 26:1,10
26:25 27:1,3
130:4
opportunity 7:12
11:12 150:15
opposite 61:23
option 61:4,8 62:17
63:6,12,13 64:9
71:18 81:21,21
options 62:20,23,25
82:10
Orchid 42:18 60:7
109:18
Orchids 31:15,16
31:17,18,19 33:20
45:11 62:12 105:4
order 5:12 19:8
20:3,12 21:5,9,12
21:23,25 22:2,4,7
22:9,15,23,25
23:2,21,22 24:8,9
25:10 26:25 30:23
30:24,24 31:16
44:9 59:2 63:5
65:20 73:1,2
92:17,19 96:11
153:8,10
orderly 12:12
ordinary 72:15
organization 21:3
127:1,22 129:15
organizations
125:23 126:5
127:3,4,16,25
128:4,8,21,25
129:2,3,5,6,9,14
129:18
orient 109:5
original 124:20
125:1 131:7,19
ought 149:23
Outback 64:22
outcome 22:3
outside 33:20 34:5
35:6 37:9 38:24
39:8 48:16,18,19
49:7 67:22 68:19
107:15 116:17

117:10 121:1
122:14,16,18
145:17 148:22
overlook 16:9
Overruled 61:25
overwhelmingly
110:4,7 111:1,11
111:11,15,17,18
112:5,6,14,19
115:14 139:3
owners 57:17

P

P 5:2
P.A 2:11 3:5
p.m 1:20 6:18
59:16,18 84:11
package 58:21
59:11,12,19,24
60:9,13,16 61:1,2
62:10,14
packages 63:25
page 4:5,14 7:19
103:16 104:12,14
104:18 105:4,19
105:25 106:5
108:12 109:8,9,11
109:18,19 123:16
123:17,17,18
125:9 130:18,18
130:19 131:12,12
131:13 132:20,20
132:21 134:15
137:4,4,5,15,16
138:20 139:6,9,10
142:14,15,20,20
143:12,13
pages 6:21 98:1
125:11 138:3,4
143:9 154:9
paid 70:25 85:11
118:11,18
Palm 1:3,18,19,22
1:23 2:8,12 3:6,9
38:17 40:5 41:10
41:15 63:4,10
104:24 154:5
Panczak 88:6
paper 15:8 148:6
149:24 150:9

paperwork 69:1,19
paragraph 100:1
105:20,21,24
106:2,4,5 108:13
109:9,11,19
123:18,18 124:16
124:17,23,25
125:5 130:19,19
131:4,8,13,14,18
131:19 132:9,20
132:21 133:9,15
134:15 137:4,5,15
137:16 138:20
139:6,10,10,17
141:8 142:15,15
142:20,21
paragraphs 98:3,4
99:21 100:5,8,18
101:4 102:15
103:4 108:11
123:21 124:1,2,5
124:6,13 130:25
131:6,15 132:23
134:19 137:17
139:5
parameters 140:25
parentheses 110:4
110:7,10,15,19
112:13 139:3
parking 37:11,15
38:3
Parkway 3:9
parlor 13:24 43:5
45:10 48:5,7,24
49:11 52:9,17
53:3 54:16 55:17
58:17 59:22 64:1
64:10 65:22 78:14
90:23 122:1 136:9
136:11
parlors 133:4
part 29:15 36:16,17
42:1 83:22 95:22
119:10 150:17
participate 41:7
46:8
participated
129:21 151:18
particular 55:25
115:25 117:8

118:2
particularly 22:6
92:1,3 104:19
105:13
parties 5:7 13:5
21:10,11 24:12,22
30:7 83:3
Partly 93:11
partner 88:25 89:6
parts 36:14 40:23
56:7 103:18 141:2
pass 120:13
passages 99:17
pasted 128:22
patrol 38:6 78:15
patron 66:11
116:24 117:13
patrons 50:6 64:21
pause 120:19
pay 77:14,15 90:12
paying 9:16 134:4
pays 91:1
peek 41:2 44:1,5,8
44:17 72:18 75:5
90:1,4 92:14,19
92:21 93:4,5,10
93:12,18 94:21,25
96:20 98:19 134:2
134:12
peeking 144:12
pending 22:2 24:25
27:11 30:19
penis 146:11
people 9:21,22
18:16,22 37:5
49:2,2 57:5 59:23
60:16 62:5 67:20
71:3,8 79:12
119:13 134:8
135:1 148:10,22
149:2,3 151:14,16
151:21
percent 100:7
102:3,4 126:13
141:11,13
performed 70:5
period 49:17 61:5
64:10 67:11 68:16
77:10 89:25 92:23
116:11

DocuSign Envelope ID: EF4A7C93-1F69-44CA-B715-9B88E8C26A46

**periods** 113:9
    115:11 116:8,10
**permission** 26:3
**person** 37:20 38:7
    40:7,9 62:9 64:13
    64:25 70:5 78:14
    79:21 117:5 121:3
    121:7 148:3,7,10
**personal** 20:20
**personally** 67:23
    129:12 140:7
**persons** 64:18
**perspective** 15:22
**perspectives**
    149:11
**persuasive** 11:14
    11:15
**phone** 45:6 97:20
**phones** 86:8
**phonetic** 151:6
**photo** 56:1,3
**photograph** 66:8
    117:20 120:1
**photographs** 54:24
    54:24 55:19
**phrase** 95:12
**physical** 36:6 40:24
**pick** 37:20 38:6
    67:11 76:2
**picked** 30:5
**picks** 75:24
**picture** 55:16 56:13
    117:21
**piece** 87:1 149:11
**Pierce** 43:19
**pin** 112:11
**Pizza** 59:7 62:5,8
    62:11
**place** 1:18 15:12
    45:19 51:16 53:22
    59:17 64:5 65:5
    67:19,22 68:3
    96:13 111:14
    148:8 154:8
**placed** 7:14 16:16
    99:25 111:20
    139:21,21
**places** 64:23
    129:20 148:9
**Plaintiff** 1:8

**plate** 37:18
**play** 145:23
**plaza** 59:4
**plea** 81:22
**pleading** 6:12 7:23
    8:14
**please** 5:6 21:9
    27:22 29:8 108:10
    121:22 145:4
**plus** 49:25
**point** 12:4 16:13
    18:18,25 21:14
    24:1 28:11 31:11
    38:20,25 39:3
    43:17 45:9 47:11
    49:10 53:6 67:17
    68:8 76:25 81:4
    98:11 100:1
    108:10 123:9
    125:20 135:11
    143:8 150:6,12
    151:13,13
**pointed** 82:18
**pointing** 56:3
**pole** 33:19 34:4
    48:16 49:21
    116:16
**police** 25:10 26:24
    27:2 32:13 42:21
    53:7,17 58:5 62:9
    75:22 87:18 91:9
**pop** 141:23
**portion** 114:15
**portions** 125:4
**position** 8:22 13:22
    15:18 146:6
    148:17
**positive** 69:18
**possible** 20:24 29:3
    83:4 136:8,12,13
**poster** 144:8
**practices** 25:10
    26:24
**preceding** 154:9
**precinct** 41:6 80:6
    95:1
**precincts** 91:9
**precise** 33:2,14
    95:15
**preliminarily**

46:19
**preliminary** 5:12
    21:21
**prepare** 20:3
**prepared** 13:19
**preparing** 6:2,8
**prepay** 69:21
**presence** 38:24
    39:8 82:3,20
**present** 12:14 13:5
    63:7 149:14
    150:19
**presented** 16:14
**preserve** 117:19
**preserved** 80:17
    99:13
**press** 35:10 36:7,10
    36:12 38:10,11
    77:25
**pressure** 76:13,18
    76:23,25
**presumed** 9:5
**pretty** 11:6 16:24
    78:1
**prevent** 43:3
**previous** 58:25
    97:1
**previously** 133:10
**print** 140:12,17
**prior** 22:10 72:18
    83:15,18 92:22
    112:3 124:13
    125:2 140:11,18
**privacy** 9:3,11,15
    9:18 10:3,14 13:2
    13:12,24 14:5,12
    14:19 15:11,14
    16:12 145:20
    146:17,20,24
    147:5,22,25 148:1
    148:3,14,18
    150:14,16
**private** 66:7 90:14
    90:24 117:19
    118:13,20,23
    134:3
**pro** 2:17
**probable** 29:14,20
    29:23 31:11,12,18
    36:15,23 44:10

78:16 82:18 96:12
**probably** 28:10
    30:5 42:4 63:7
    98:25 125:16
    147:19,20 151:5
    152:17
**problem** 10:18
    108:18 149:19
    152:1
**procedurally** 9:4
    9:19 10:4
**procedure** 34:7
**proceed** 5:7 16:4
    22:15 24:2 121:21
**proceeding** 8:3
    24:21 36:22
**proceedings** 1:13
    23:4 30:15 121:12
    153:15 154:8,10
**proceeds** 90:5,18
    91:3,6 92:1,3,18
    94:8 95:20 96:16
    96:21 138:24
**process** 5:21 7:24
    7:25 82:22
**produce** 18:4,22,23
**produced** 19:6
**production** 47:23
**Professional**
    154:15
**proffer** 145:24
**prohibits** 24:23
**promise** 144:2
**promoted** 50:20
**properly** 92:17
**proposed** 30:23,24
**prosecute** 92:18
    96:15
**prosecution** 55:7
**prosecutor's** 28:24
**prostitutes** 9:16
**prostitution** 79:11
    90:5 91:2,7,11,19
    91:21 92:1,2,4,19
    93:13,18,21,22
    94:8,12,13,14,16
    94:18,20,21 95:1
    95:2,21 96:10,16
    96:21 125:23
    126:5 127:1,3,4

127:16,21,25
    128:4,8,21,25
    129:1,5,6,9,13,15
    129:16,18,21,22
    132:11
**prostitution-rela...**
    94:16
**protection** 22:5
**protective** 21:23,25
    22:8,14 24:8
    30:24
**protects** 22:2
**prove** 9:12,17
    10:10 16:11
**proven** 13:23
**provide** 39:8
    117:13,16,20,20
    117:21,21,24
**provided** 23:17
    28:23 39:19,22
    40:10 115:13
    116:21,25 120:17
**provider** 17:8
**provisions** 40:16
**public** 22:16 23:19
    50:13 68:4 106:25
    107:25 117:22
    118:4 154:6,15
**Publix** 64:22
**pull** 8:6 38:7 68:20
    68:21,24 70:19,21
    70:23 72:5 78:8
    78:15,16,18
**pulled** 64:24 81:20
**pulls** 73:15,19
    74:17 113:7
**pure** 94:25 95:2
**purports** 121:8
**purpose** 26:20 29:7
**purposes** 152:14
**purses** 87:4
**pursuant** 20:25
    57:11 72:12
**put** 5:23 14:20 20:8
    20:23 33:6 43:1
    52:24 57:23 58:17
    59:23 60:1,20
    64:20 66:8 76:19
    79:1 82:17 96:9
    98:21 101:4

DocuSign Envelope ID: EF4A7C93-1F89-44CA-B715-9B56E6C26A46

102:19 103:8,8,9
114:23 145:16
148:6 149:24
150:9 151:21
putting 15:17
54:13,18 81:17
101:21

**Q**
quarter 145:9,10
quash 17:7,15
question 26:22
33:2,10 37:7 47:8
47:16,19,24 49:6
55:9 56:10 65:8
65:14 70:12 81:19
82:14 95:13,15
96:1,8 98:18 99:1
113:21 115:25
119:18,19,23
120:7 121:5,11,14
121:16 124:15
128:9 134:18
139:23 141:18
144:1,3,3,5
150:12
questioning 46:24
85:15 100:11
120:8 127:9
questions 33:5
35:16,21 38:23
55:1 58:3 81:6
83:14,22 84:7
85:7 86:22 87:1
87:11 100:21
124:12 125:7
130:2 140:21
141:7
quick 45:3
quickly 16:24
30:16 108:9
QUINN 2:14
quite 20:4 48:1
120:12 149:10
quiz 141:23
quote 51:18

**R**
R 5:2 154:2
radios 78:14,14

raised 7:17 11:3,7
15:5
ran 69:13
random 123:25
randomly 91:19
rank 63:22
Raton 97:8,18
read 7:4,7,10,11
11:1,2 15:7 22:6
22:25 40:25
111:21 112:20,20
113:14 129:19
134:20,21 140:10
140:12,15,17
141:2,4,14
reader 112:15
reading 22:4
reads 136:1
ready 5:7,8,9 6:12
realize 10:13 27:25
31:12
realized 52:21
really 40:24 56:23
64:13 76:20 89:2
106:20 112:13
114:2 118:11,17
120:9 141:23
148:5 150:9
reason 38:7 62:18
63:20 64:15 78:15
93:5 143:24
148:19 152:15
reasonable 15:13
103:13 148:14,17
150:13
recall 38:12 40:8,9
59:8 83:25 84:1
84:22 85:2,3,4,5,8
85:17,18 97:8,17
99:19 133:10
receipt 116:21
117:1,17 120:2
121:5,7
receipts 69:1,20
70:12
receive 19:21 44:15
84:11 116:7,11
128:9
received 39:24 44:8
44:16 70:19 78:25

108:3 122:5
124:20,25 131:23
132:3
receives 90:10
receiving 134:5
recess 27:20,21
153:13,14
recharacterize
136:21
recognize 12:11
74:14,15
recognized 9:15
20:25 25:5,24
recollection 19:24
recollections
123:13
record 14:20 17:6,7
20:23 21:15 22:16
26:23 84:12 105:3
105:24 106:25
107:3 120:12
recorded 57:14
61:15 66:15 80:12
80:13
recording 33:23
105:6
recordings 65:24
66:19 80:15
records 19:14,17
19:21 20:9,20
21:1 23:9 130:10
130:12,15
red 37:12 109:15
133:1 137:24
redaction 101:10
redirect 151:5
REEDER 3:5,5
refer 43:4 56:12
113:10 123:4
127:6
reference 31:1,9
108:7
referral 45:14
referring 117:8,13
134:15
refers 135:7
reflect 50:3
regard 24:15
140:21
regarding 30:10

45:22 72:17 73:19
81:6 101:13
114:20 140:25
regardless 25:20
regards 70:24
91:21 98:10,21
126:11 127:14
register 66:4 77:15
83:20,21,24 85:9
regular 49:10
109:13
reinforce 136:22
reject 119:3
relate 71:1
related 30:18 41:2
42:12 69:24 83:23
relating 30:20
130:10,15
relatively 87:22
release 152:25
releasing 23:22
relevance 38:21
39:1,3 100:11
101:12
relevancy 35:6
46:6 60:3,18 64:4
65:4 76:15,17
82:5 87:14 88:17
91:12
relevant 12:14
46:13 60:22 67:2
67:5,9,14 141:6
relying 143:3,5
remain 16:6 27:11
28:15
remaining 21:22
remarkable 53:18
119:1
remember 35:5
38:13 84:6,8 85:4
86:2,7 97:9
100:12 121:9
127:10 133:8
remembered 85:15
123:10
Remembering
61:14
remove 61:4
render 25:11,19,20
25:23 26:1,25

27:1,3
rendering 130:3
renew 35:25
Repeat 65:14
repeated 77:25
repeating 43:3
repetitively 43:6
rephrase 76:24
replicas 98:3 102:7
report 46:25 53:7
62:17 67:10 137:4
154:7
Reporter 154:15
Reporting 1:22,24
represent 19:20
20:17,18 51:15
representation
52:19 107:8
representations
31:6
representing
107:23
request 10:25 19:8
20:5,22 46:7
92:10 103:13
requirement 18:4
142:5
requirements
141:24 142:3
requires 8:2
rescue 63:4,6,9,11
research 7:13 28:4
50:19
resemble 102:16
103:19
reserve 31:20
Reserved 1:25
respect 13:9 95:12
121:3
respond 7:12 13:17
19:25 20:6 21:6
22:18 33:10
response 5:17 6:4,6
6:14 8:7,13,24,24
8:25 10:13,23
11:2,3,7,11 18:15
responsibility 26:9
rest 45:25 152:6
restaurant 59:5
86:25

**restroom** 106:12
106:18,19
**result** 72:21
**results** 72:23
**resume** 109:2
152:2
**retrieved** 72:2
**return** 30:2 31:18
**review** 26:9 52:16
109:22
**reviewing** 114:15
122:9,17
**reviews** 51:17,24
51:24 52:1,25
53:3 110:24
111:21 112:24
113:10,14 135:22
**rewatch** 122:22,24
**rewatched** 49:22
49:24 122:23
**right** 5:6,14 7:25
10:23 11:20 16:21
17:20 18:20 19:13
20:2 21:13,20
22:21 23:10 25:14
25:16 26:6,7,10
26:12 27:24 30:1
30:13 32:11,18,24
33:21 34:5,17,20
34:23,25 35:14
36:17,20,24 37:6
37:6,7,11,12,15
37:18,24 38:3
39:5 40:16 43:7
44:4,11 45:1,10
45:11,16,20 46:4
46:9 48:10,21,24
49:19 50:13,16,25
51:22,25 53:4,14
53:20,22 55:2,20
55:20 57:8,10
58:12,21 59:16
61:21 62:6 64:15
64:24,25 65:15,18
65:19 66:3 67:3,5
67:18,19,20,23
68:1,11,15,15,23
68:25 69:2,7,9,19
69:22,24 71:5,9
71:13,15,18 72:13

72:19 73:16,24,25
74:18,24 75:2,5
75:11,14,17,20,24
76:3,24 77:6,8,11
77:16 78:16 79:1
79:7,13,18,20
80:19,21,25 81:3
81:19 82:9,15
84:12,13,14,17,19
85:3,13,17,18
86:8,14,15,18,23
86:23 87:5,16
88:7,13,16 89:24
90:1 91:7 93:7,23
94:3,13,15,16,18
95:22 98:13,14
101:20 103:19,20
104:18,20 105:1
105:17 106:1
109:24 110:8,14
110:15,16,19
111:17,18,21,24
112:17,25 115:1
115:20 117:12
120:7 122:10,13
122:15,20,22
123:1 124:8,15
126:20 128:2,15
129:22,23 130:10
130:12 132:8,11
133:1,13,15,19,21
133:23 134:7,9,16
135:3,4,10,16,19
138:1,9,15,23,24
139:4,5,7,19
140:18 141:9,21
142:8,14,21,24
143:1,4,15 144:10
144:10,12,14
145:14,21 149:14
149:18 150:8
151:20 153:10
**rights** 1:25 9:14
13:16 15:25
**rise** 131:5
**risk** 22:15
**River** 2:22 38:10
43:13,15,19
**road** 78:20 80:11
81:15 84:16 85:6

111:10
**Robert** 1:10 2:10
9:12 13:2 14:9
145:23
**room** 29:10 56:12
56:14,14,16,18
85:11 90:24 146:2
148:4 149:22
150:14
**rooms** 37:9 54:20
56:2,4,5,6,6,8,9,9
56:10,20,21 58:2
58:11,14 65:25
66:6,7,10,10,15
134:3,9,13 148:9
**routine** 68:13
**rub** 43:1 51:14,19
66:25 70:7
**rule** 10:8,17 23:8,9
23:12 24:19,20,23
25:6 28:8 47:18
101:7
**ruled** 23:4,16 24:14
**rules** 23:16 34:7
119:5 141:3
**ruling** 10:1,5 14:8
16:10 23:5 24:25
31:20 120:22
**rulings** 14:4,4,7
16:10
**run** 28:21
**run-of-the-mill**
96:9
**ruse** 58:23 59:3,22
60:15 64:9

**S**

**S** 4:12 5:2
**safe** 58:7 87:7,8
**salesperson** 148:11
**salon** 148:9
**SANDRA** 2:15
**sat** 40:24
**saw** 6:18 7:2 49:12
50:5 51:13 55:23
74:22 82:25 85:1
98:18,23 99:1
116:5 120:6 123:2
124:10,13 139:2
151:14,16

**saying** 13:4 27:12
40:18 52:16,23
53:13 62:17 65:1
65:17 67:2,6,7
73:2 81:11 85:20
94:5,12 102:9
103:3,5,10 114:6
120:21 125:6
132:6 142:10
152:6
**says** 15:12 22:7
25:21 28:13 46:25
78:15 105:4
108:12 112:19,19
125:22 129:10,17
130:9 138:23
139:13 140:4
148:7,17
**scare** 61:1,9 62:21
63:15 64:9,13
65:2,19
**scared** 64:23
**scares** 63:24
**scaring** 60:16
61:19
**scary** 64:20
**scheduling** 152:1
152:13
**scheme** 142:1
**school** 87:16
**science** 58:4
**scream** 10:19
**screen** 29:4,5
**screens** 29:3
**sealed** 106:24,25
107:5,8,9,10,13
107:17,20 108:2,7
**search** 9:5,8 10:10
29:22 30:3,8,9,16
30:17 31:16 35:8
36:6 39:22,25
40:2,3 43:16
51:17 56:7,24
64:16 68:9 72:2
73:11 84:19 86:4
100:22,24 101:2
102:10 104:14,15
105:5 107:19,20
109:6,6,10,19
130:18 140:17

141:5
**searches** 139:2
141:1
**seated** 5:6 27:23
**second** 12:23 62:6
85:14 88:5,6
102:21,22,23
111:9,9 122:24
123:10 124:15
125:20
**secondly** 132:1
**secret** 58:4 106:20
**secretly** 57:24
**Section** 94:25
95:19
**sections** 102:7,12
138:22
**see** 6:19,23 9:22
12:9 21:11 32:23
38:21 39:1 48:22
48:25 49:1 57:5
78:7 82:2 87:8,14
98:13 103:9
119:13 125:21,24
130:24 131:14
132:22 137:5,17
139:6,9,15 146:9
146:10 147:2,18
148:22,24 149:8
150:5 151:22,22
152:10
**seedy** 48:23
**seeing** 110:24
123:10
**seek** 22:5,12,13,14
**seeking** 94:4,6,7
**seen** 6:16 13:7
37:24 38:6 40:21
40:23 55:18,25
99:24 118:8 124:3
146:12 147:8
**sees** 35:25 78:12
**semantics** 129:24
130:1 135:5,14
**seminal** 73:20
**send** 20:9 100:1
**sending** 19:16
20:11
**senior** 126:19
**sense** 26:1

sensitive 145:15
sent 19:13 124:1,2
  124:5,16,18 136:9
sentence 125:21
  128:19 137:10
separate 141:7
separately 17:14
September 143:15
  144:10
sergeant 41:25
  63:3 76:11 88:22
  88:23
sergeant's 76:17
series 53:8
serious 63:19
served 17:8,16
  18:10 19:11 20:6
service 17:8 69:20
  116:12
services 70:25,25
  71:25 72:7,8
  111:7 115:12,20
  116:7,9,21,25
  117:1 121:4,8
session 1:15 27:22
set 36:9 47:17
  152:21
setting 29:1
seven 131:13
seventeen 5:19 6:9
  135:2
severity 64:12
sex 9:16 51:14
sexual 51:21,25
  134:5 146:3
sham 7:23 8:14
share 119:7
Sharp 4:7 20:18
  28:20 29:8 32:3,9
  32:11 55:9 78:11
  78:22 103:5 126:4
  134:8 147:9
  151:23 152:7
sheet 104:16
  105:11 108:12,15
  108:20 109:7,8,20
  123:16 130:21
Sheriff's 43:20
shifts 10:10
shopping 63:25

short 27:21 111:6
  115:11 116:8
shorts 37:12
shout 10:19
show 9:11 10:3
  27:12 86:10
  100:22 116:17
  150:15
showed 84:11
showing 28:23
  32:21
shows 78:22
SHULLMAN 3:8
shut 59:3 96:13
side 11:13 16:14,16
  78:20 80:11 81:15
  84:15 85:6 101:25
  101:25 103:8,8,8
  103:8,9,9 145:19
  147:1
side-bar 107:15
  108:25 117:10
  121:20 145:17
  153:6
sign 21:10 80:9
  143:13
signed 119:25
  130:8 133:23
  140:13
significant 64:10
  68:24 91:10
  118:12 132:9
signs 48:22 143:14
silly 86:23
similar 38:14 43:22
  92:17 93:3 109:24
  123:22 126:15
  138:10
similarities 98:14
  104:9 124:18
  130:24 131:14
  132:22 137:6,18
  139:9
similarly 135:9
simply 20:4 30:7
  85:9
single 8:25 52:3
sir 20:7,18 23:7
  32:12,15,19 33:24
  36:3 38:12 42:23

43:11 44:21 50:10
  54:21 55:21,24
  56:22 57:13 58:7
  58:10 65:14 66:9
  66:24 67:21,24
  68:2 72:11 74:19
  74:21,23,25 75:6
  75:18,21,25 77:4
  77:24 78:2 79:8
  80:18 81:9 87:2
  89:7,13,16 90:16
  96:18 97:3 100:14
  100:16 104:7
  110:22 123:5,22
  124:25 125:17,19
  127:19 128:18
  129:23,25 134:1
  134:17 139:8,16
  143:16,18,23
  144:11,13
siren 38:5
sit 25:12,14,16 26:3
  26:6,8,11 62:4
  83:24 84:2,6,21
  85:7
site 51:11 67:3
sites 51:20 67:3
sitting 12:7 93:8
  122:14,16
situation 46:3
  118:15
six 49:17 130:19
sixteen 123:6 135:2
skylights 58:12
slang 42:25
slightly 132:9
  134:19
slows 75:23
smell 62:18 64:25
smoothly 28:22
sneak 41:2 43:25
  44:5,8,16 72:18
  75:5 89:25 90:3
  92:14,19,21 93:4
  93:5,9,12,18
  94:21,25 96:20
  98:19 134:2,12
sneaking 144:12
sole 26:20
solicitation 34:15

36:14 66:20 91:2
somebody 21:9
  26:20 30:6 37:11
  37:24 65:16 79:16
  79:16 107:13
someone's 86:12
somewhat 33:5
  147:12
soon 20:24 21:1
  119:15
sorely 52:21
sorry 22:1 24:4
  76:16 128:6 146:4
  151:7
sort 36:14,22 42:25
  43:3,23 46:2
  47:13 48:9,22,25
  49:8 51:21 52:23
  54:19 56:19 60:16
  67:18 68:23 71:14
  72:21 75:19 77:13
  78:12 79:6 80:5
  81:11 85:20 86:7
  86:24 89:24 91:7
  140:8 141:22
  142:13
sound 13:10
South 2:12
spa 9:16,17 33:20
  34:3,5 37:5,21,25
  39:13 42:18 50:3
  50:19 53:13,24
  57:12,14 58:20
  59:2 60:7 64:5,14
  65:5 71:9 76:19
  83:15,18 115:13
  116:24 117:1
  120:3 135:4
  136:14
spa's 57:17
speak 38:24 63:21
  78:11
speaking 31:1 82:4
  82:7 97:14,14
special 84:10
specialization
  91:18
specialize 127:25
specialized 91:7
  125:22 128:20,24

129:5,7,8,12,13
  129:17
specific 51:25
  97:10 100:21
  108:10 128:2,3
specifically 41:11
  85:8
specifics 42:9,10,11
spend 83:15 129:1
  150:25
spent 32:13 49:18
  83:17
Spiro 2:17 4:8 5:5
  24:17 28:18,19
  29:5,11,23 30:4
  30:14 31:4,22
  32:8,10 33:3,4,14
  33:15 34:11 35:12
  35:13 36:1 38:19
  38:20 39:6,11
  46:12,17,21 47:12
  48:2 51:2,7 54:2,5
  54:13,15 55:5,10
  55:12,15 60:5,21
  60:24 61:13,16,18
  61:23 62:1 64:7
  65:6,12 74:3,6,13
  76:24 77:1 82:4,7
  82:13,21 83:6
  88:20 91:15 95:5
  95:12,17 96:4,7
  98:18 100:24
  101:9,14,17 102:1
  102:3,6,12,17,19
  102:22,24 103:12
  103:15,20 104:1
  105:8,12,22 106:3
  106:15,25 107:6
  107:11 108:8,12
  108:16,18 109:2,4
  112:9,15,21 114:6
  114:18,21,24
  115:2 116:2,3
  117:15,18,25
  118:5,9 119:12,16
  119:18,23 121:14
  121:18,21,23
  130:6 136:7
  143:20,23 144:1,4
  144:7,22 147:7,15

DocuSign Envelope ID: EF4A7C93-1F69-44CA-B718-9B88E6C26A46
Case 9:19-cv-80513-RAR   Document 96-1   Entered on FLSD Docket 10/10/2019   Page 172 of 176

Page 172

spoke 32:17 62:11
98:9 141:5
spoken 92:16
spread 146:8
squad 88:7
squads 91:9
St 41:10
stage 152:12
stand 10:19 26:12
28:14 50:24
106:14,17 107:3
117:6 118:1 120:9
130:4 146:25
standard 142:14
standing 9:13
start 33:8,12 45:15
76:1 84:19 104:12
125:14
started 6:2 46:19
51:20,21 59:17
113:4 131:2
starting 128:22
starts 28:20 74:24
75:1 105:22
state 1:7 2:4,5 5:17
5:20 6:3,6,12,13
7:23 8:6,10 9:24
10:8,10 11:21
12:10,13 13:25
14:2 15:10 17:1
17:25 18:6,7 23:1
24:19 25:21 27:13
27:15 30:6,12
31:10 35:9,24
40:4,5,15 42:2,13
48:9 54:8 55:11
80:2 82:15,17,24
83:2 92:11,21,22
97:14 100:12,20
103:21 119:2,8,11
120:19 121:2
124:20 125:1
131:8,24,25 132:3
133:11,11 139:20
139:24 140:20
141:25 142:4,9
145:23 146:17,19
148:5,13 149:13
150:19 154:4,15
State's 5:8 7:21

8:13 11:2,3,7
13:21 39:4 73:3
81:25 96:24
145:19 147:1
stated 51:18 52:1
124:25 128:5,24
131:7 138:10
statement 80:7,9
80:11 81:13 86:9
states 8:1 14:3,7
16:9 20:4 43:17
statute 15:12 93:22
93:25 94:4,6,9,10
94:15 143:3 148:7
148:14
statutory 8:18,20
23:14 47:13,18
142:1
stay 65:2,18 115:12
116:4 122:6 141:5
141:8
stenograph 154:10
stenographically
154:7
step 10:21 66:22
89:25
steps 68:11 111:9
sticker 48:10
stickers 101:21
stings 129:21
stock 6:11
stomach 146:13
stop 19:16 78:9
79:17
stopped 79:12,21
stops 73:16 77:5,6
77:10,13 144:19
straight 34:22,25
Street 2:15 3:6
streets 118:14
strength 147:3
stricken 8:2,20
13:23
strike 7:22 8:11,13
98:2
striking 14:17
strip 81:18
stronger 20:8
strongly 139:13
140:5,7 142:7,11

struck 30:24
stuck 7:19
stuff 68:5,18,19
73:25 99:9 137:25
139:4 151:3
subject 20:19 27:4
79:7 80:24 101:10
101:12
Subjects 83:8 84:7
submitted 104:25
130:14
Subparagraph
28:9
subpoena 12:16
17:7,25 18:1,12
19:17,19,21 20:22
70:14 71:21 72:3
72:4,5,12,13,13
72:15 73:4 152:4
subpoenaed 9:20
12:7,22 14:25
20:20 25:3 70:22
70:24 109:22
110:2
subpoenas 9:21
16:25 17:2,13,14
17:15 18:10,10
19:1,10 20:5,7,19
20:21 21:6 70:16
73:3
subsequent 68:19
substantive 45:3
sudden 7:18
suggest 16:15
suggested 69:16
suggesting 11:18
46:22
suggestion 12:6
149:25
Suite 1:22 2:12,15
2:22 3:6,9
SULLIVAN 2:14
summarize 77:13
Sunday 20:1 21:1
supervising 89:17
supervisor 88:24
supervisors 89:14
supplement 11:11
supplemental 15:6
supplied 13:25

14:2
support 8:21 10:20
90:5,11 92:3,18
94:7 95:11,20,23
96:16,21
supporting 8:21
suppose 76:20
suppress 5:18,24
5:25 6:4,6,14 9:18
9:21 12:25 13:4
13:14,22 28:12
34:8 46:7 120:24
150:4
suppression 35:14
Supreme 10:1 14:3
14:4,7,8 16:9
sure 5:15 21:24
22:25 24:8,13
25:13 27:8 29:8
30:25 31:4 47:20
62:4 65:15 85:25
86:5 91:23 98:11
99:15 101:22
103:15 104:13
111:11 120:3
125:6 132:8
133:18 135:17
136:13 144:25
152:24
surprise 11:4,5
12:2 98:6,8
116:20 117:3
surprised 11:4 12:2
116:22
surrounding 62:13
surveil 48:19
surveillance 42:6
56:24 57:1,5,7
58:25 67:25 68:16
74:18,20 105:23
109:22 112:3,4,25
113:3,6,6,18,20
113:23 114:8
115:5,8 116:6
122:2,13 135:19
139:2
surveilled 33:20
surveilling 67:12
116:25 120:2
Survival 127:13

suspect 11:5,7 22:9
suspicious 58:21
59:10,12,19,23
60:9,13,16 61:1,2
62:10,14,18 63:25
sustain 46:11 64:6
76:22 136:6
Sustained 51:1,6
60:4 88:19 91:14
95:4 116:1 130:5
SW 105:4
swore 110:21 130:9
134:21
sworn 32:4 129:25
133:25 134:12
135:15
system 27:14 83:23
85:9

T
T 4:12 154:2,2
table 28:24 146:7
tactic 61:1 119:10
tactical 58:23 59:3
59:22
tailors 28:13
take 27:15 28:14
29:16,18 30:7,13
31:14 32:24 50:24
54:2 61:7 66:22
70:12,21 71:2
79:18 85:13 95:7
98:17 107:8
114:22 116:10
117:6 121:13
126:10 129:4
137:16 145:9
147:2 150:1
152:20
takedowns 38:14
taken 21:20 27:21
49:21 54:24
126:25 127:2
128:6,7 129:1
153:14 154:10
takes 26:16 71:23
talk 14:23 25:1
54:25 92:5 108:18
118:6 152:22
talked 32:16 52:11

75:5 126:18
138:22
**talking** 28:1 29:21
31:2 34:3 86:17
90:18 97:23 101:1
106:16 132:10
133:20 135:2
139:5 140:6
**talks** 50:22 94:15
**Tamara** 154:6,14
**tampering** 119:3
**tangible** 17:16 18:4
18:23
**tanning** 148:9
**target** 42:17
**targets** 42:11,14,15
42:16
**team** 7:13 57:10
118:10
**technically** 145:12
**technique** 65:10
**techniques** 27:2
48:18 58:1 126:9
127:13
**tecum** 16:25 17:8
17:13 18:1,11,12
**telephone** 17:8
**tell** 14:17 39:7
41:18 42:14 48:18
56:2,9 57:4 58:22
77:14 92:8 113:13
133:3,5 137:17
140:24 141:2
145:4 151:17
**telling** 12:19 44:13
99:21,24 100:4
107:7 114:11
**template** 40:1,4
92:11 96:25 97:5
97:5,7,10,24
125:1,2,3,4,5
131:3,7,9,19,23
131:24 132:2
133:4,6,11,12,15
133:19 134:11,11
134:19 136:8
138:9,13,14
139:18,23,25
140:1,6
**templates** 133:20

**ten** 27:16 75:16
**term** 42:25 135:9
**terms** 69:19 87:15
101:18 135:6
141:18
**test** 69:13,18 72:24
**testified** 32:5 83:1
84:14 111:23
113:21 115:3,9,18
121:24 127:20
128:12 133:10
**testify** 25:3,10
26:24 27:9 115:10
136:4
**testifying** 25:15,17
26:7,13 28:16
47:14,22 50:24,25
117:5,6
**testimony** 4:7
24:23 25:24 26:2
27:4 28:7 84:9,14
114:9,17,19
120:10 122:4
124:9 127:17
129:6 135:8,8,8
150:17
**text** 86:8,24
**thank** 16:22 19:9
21:7,13 23:25
24:16,17 28:17,19
31:22,23 61:13
101:14,20 102:5
109:2 121:13,17
121:18,19 130:21
130:23 150:22
153:4,5
**thanks** 79:17
**theirs** 142:16
143:13
**theoretically**
132:11
**therapeutic** 52:8
**thigh** 146:13
**thing** 7:21 10:15
11:24 18:8,20
22:3 23:20 27:18
48:14 70:4 79:21
84:18 95:24 110:1
119:11 124:15
125:20 149:20

151:12
**things** 10:24 12:24
20:15 29:7 37:17
40:16 43:3 48:21
51:12 52:23 66:25
67:1 68:25 69:20
76:1,9 96:14
99:18 101:21
118:19,22,24
120:14,18 123:24
126:7,18,22
129:20 132:4
148:24
**think** 5:13,20 10:21
11:2,20 12:1
14:16 15:8,14,15
15:20,23 16:2,23
18:7,9 20:2 21:4
21:20 22:1,14
23:24 25:21 28:10
29:16 30:15 31:8
33:6,7 35:21
38:21,25 44:22
49:18 50:5 54:7
56:13,20 68:5
76:11 79:6,15
98:25 100:15
114:10 116:14
119:4,4 120:22,25
123:25,25 124:17
129:4 130:1 133:3
140:4 146:24
147:7,20 148:5
150:18,20 151:9
152:3,5
**thinking** 85:23
86:2
**thinks** 35:18 136:1
136:3,5
**third** 106:1
**thirty** 9:21,22 12:6
12:7 14:24 15:1
151:21 152:4
**THOMAS** 2:21
**thought** 53:18
63:19 130:22
**thousand** 146:16
**three** 57:8 87:24
88:1,2 112:13
123:17 130:20

137:4,5 151:11
**threshold** 56:15,17
65:6
**threw** 61:6
**throwing** 76:25
100:2
**thrown** 100:6
**tie** 71:1
**tied** 42:10
**ties** 14:10 41:14,16
41:23
**tile** 57:23
**time** 1:20 10:18
13:20 15:4,9,15
17:2 26:19 27:15
31:11 32:24 41:21
43:14,19 44:7
45:9,15 47:11
49:3,5 50:6,16
53:18 58:25 59:4
61:6 63:8 64:10
67:11 71:2 75:4
76:7,8 80:2 85:23
87:14 88:2 89:25
90:19 111:6 113:9
114:25 115:4,8,11
115:17,19,25
116:8,10,11
117:15 120:2
121:15 125:18
128:17,18 129:1
136:18,20,23
138:15 143:3,24
146:3,4,9 147:8
148:10 151:1,8
154:8
**timeframe** 123:3
**timeline** 67:18 73:8
73:9 77:3,3
**timely** 21:4
**times** 44:22 49:24
122:17,19 127:3
146:1,5,9,10,12
146:15,16
**tip** 45:14 69:20,22
**tipped** 79:2
**Title** 141:1,24
**today** 6:2 7:16,18
9:23 11:1,19
14:24 20:23 21:4

21:10 28:7 31:3
34:3,25 45:22
54:25 55:1 62:4
76:20 83:24 84:2
84:6,21 85:7 88:2
95:3 115:18
121:24 124:3
127:20 150:24
152:5 153:3
**told** 20:11 21:16
23:20 32:20 33:16
39:12 42:14,16
45:1 58:20 62:9
77:18 78:24 83:10
83:12 84:9 106:24
107:1 121:24
126:2 139:25
141:8,16,17,18
142:9 147:8
**tons** 15:7
**tooken** 128:6
**top** 97:17 109:7
127:8 147:10
**totally** 124:22
139:22,22 141:7,7
**touch** 44:19 127:15
129:8
**touchdown** 49:8
**touched** 127:18
128:7,10 146:14
**towel** 79:2
**towels** 68:25 69:6,7
69:11,13 72:22
**Town** 50:20 51:3
**traffic** 68:4 78:9
**training** 91:24,24
91:25 125:22
126:4 128:2,3,9
128:20,24 129:5,7
129:8,17
**tramples** 7:24
**transcript** 1:13
154:8
**transcription**
154:10
**transmission**
134:19
**trash** 68:18,19,20
68:21,24 70:19,21
70:22 72:5 73:15

DocuSign Envelope ID: EF4A7C83-1F69-44CA-B719-9B68E8C26A46

73:19 74:17 113:7
treatment 122:5
 148:2
trial 22:7,10 23:3
 28:11 120:24
 144:6 152:20
trick 140:16 141:17
tried 7:9,11 12:8,10
trip 101:11
triple 88:15
trouble 77:21,23
true 18:14,15
 118:17 154:9
truly 120:16
truth 44:13
truthful 34:23,25
try 28:25 29:2
 61:16 70:13 81:3
 90:17 108:8,20
trying 8:5 28:21
 29:12 46:20 47:10
 58:3 104:24
 112:11 118:14
 129:23
Tuesday 152:18,19
tug 43:1 51:19
turn 82:15 149:14
turned 47:6
twenty 32:14
twenty-eight
 142:15
twenty-five 132:21
 137:5
twenty-four 106:5
 123:18 125:9
 130:19 131:14
twenty-nine 125:12
 142:21 143:13
twenty-one 135:3
twenty-six 17:15
 17:24 18:22 21:14
 137:16 138:3,3
 139:10
twice 99:4
two 6:3,4,6 8:6
 11:22,23,25 20:15
 29:20,23 30:10
 34:14 36:14 37:2
 49:17,24 50:5
 52:23 57:8 66:20

68:23 69:4 87:25
 98:14 102:8,13
 104:18 108:9
 109:18 111:9
 113:22 115:18
 118:14 121:25
 123:2,11,17,18
 130:24 131:4,5,5
 131:15,17 132:20
 132:21 134:15
 139:11 141:7
 142:15,20,24
 147:23 151:10
two-ish 88:3,4
type 38:5 41:21
 48:16 56:15,17
 61:1 83:21 105:16
 128:14 137:22
 138:18 139:4
typed 109:13
types 43:22 126:7

U
U.S 139:14
Uh-huh 110:21
 113:25
uncovered 148:2
undercover 38:7
 127:13 132:10
understand 22:19
 35:17 37:5 39:3
 58:9,9 59:21
 68:23 88:5 93:21
 94:13 100:15
 103:2 112:12
 121:6,10 135:10
 135:13,16
understanding
 22:22 65:9 77:23
understands 21:17
 114:14
understood 43:25
 49:10 77:15
 124:14
unethical 119:4
unfortunately
 54:25 63:10 73:7
uniformed 38:5
unique 46:3 91:10
unit 78:8,9 91:7,10

United 8:1 14:3,7
 16:9 43:17
units 91:16 127:24
unlawful 15:21
unmarked 37:14
 37:24 78:12
unpack 90:17
untoward 118:24
urge 117:24
urgent 72:12
URQUHART 2:14
USA 51:14
usasexguide.nl
 70:8
use 15:8 49:8 55:9
 61:1 63:6,24
 81:16 100:8
 101:20 106:12,18
 106:19 122:19
 135:1,5,9 152:6
useful 15:23
uses 58:5 112:12

V
v 139:14
valid 64:16
various 99:18
 126:7 129:20
 146:10
vehicle 37:24
verbatim 98:3
 101:18 131:6
Vero 38:10 43:21
version 134:20,23
versions 124:13
versus 84:3
vice 2:17 91:10,19
video 14:17 22:2,13
 22:16 24:8,15
 32:21,23,23 48:19
 49:21 50:1 56:24
 57:1,4,7 122:17
 122:22,23,24
 134:2 141:24
 147:2,3,8,9 149:8
 151:24 152:9,10
videos 23:22 34:2,3
 34:4 122:9 145:23
 152:10,14
videotape 23:17,18

37:6,11 81:12
videotaped 32:22
 33:16 134:3,7
view 55:7 149:17
 150:1
viewed 66:2
violated 9:14 13:16
violates 119:5
violation 13:15
visit 120:3
Vista 3:9
visual 105:6
vivid 123:13
Vividly 123:12
Volume 1:9 4:5
 153:15
volunteer 82:24
volunteered 56:20
volunteering 93:16
vs 1:9

W
W/O 4:16,17,18,19
 4:21,22,23
wait 111:9,9 123:10
waited 61:20
waived 22:23
waiver 22:5
waiving 15:24
walk 53:24 54:1,18
 92:8
walked 49:7,9
 85:10
walkie-talkie 86:25
walks 90:23
walled 124:22
Wang 70:10
want 8:9 11:19
 12:14 13:10 14:12
 15:4 16:8 18:17
 22:9,21,25 31:9
 41:18 43:23 45:9
 45:11 48:17,25
 56:23 57:25 59:3
 66:22 77:13 86:4
 92:9 93:2 94:12
 95:22 96:8 101:11
 102:9 105:9
 107:14 110:13
 111:10 113:21

117:22 125:20
 141:22 144:4
 145:11 148:16,20
 149:7,21 150:2,11
 152:2,18
want's 120:9
wanted 8:8 48:14
 49:1 50:12 59:23
 60:6 87:18,20
 126:12,23
wants 5:12 11:11
 15:7 20:21 27:1
 120:9 136:3 145:3
 147:3 148:5
warrant 9:6,8
 10:11 15:20 29:13
 29:22 30:3,8,17
 31:16 33:7 35:8
 36:6,10 39:22,25
 40:2,3,22 43:16
 44:1,5,8,10,23
 54:7 56:7 57:11
 64:16 68:9 72:2
 72:18 73:11,18
 75:5,9 84:19 86:4
 90:1,4 92:5,6,14
 92:21 93:12,18
 94:4,6,7,11,21,25
 96:15,20 98:22,23
 98:24 99:2,6,10
 99:17,22,22,25
 100:3,7,8,22,24
 101:2,3,9,23,24
 102:10 103:6
 104:14 105:5,15
 105:15,20 106:4,6
 107:11,12,19,20
 109:6,7,10,11,19
 110:10 111:14,20
 113:2 123:14,18
 123:19 124:7
 125:6 127:11
 130:14,18 131:23
 134:2,13 136:19
 136:23 137:13,15
 137:16,22 138:21
 139:21 140:11,23
 141:9 142:6,13,20
 142:21,23,23
 143:2,10,13,14,14

144:10
**warrants** 30:9,17
41:1,2 44:17
92:12 98:14 102:7
102:14 104:15
105:16 123:17
131:6 141:25
**Washington** 2:16
**wasn't** 11:18 41:24
59:15 63:20 71:18
72:1,12 73:8 74:1
74:2 96:4 98:12
112:24 113:25
115:7 127:2
135:18
**waste** 15:4,16 17:2
**watch** 57:1,4
149:13 150:2
151:24
**watched** 37:14 50:1
134:13
**watching** 37:10
144:16
**way** 17:25 22:6,25
23:4,16 25:20
37:4 44:19 47:20
50:11 58:17,18,24
59:21 63:7 73:17
73:21 98:22 100:3
104:21 114:3
123:14 124:6
125:5 126:16
138:20 141:23
143:7 153:7
**ways** 64:17 73:5
136:20
**we'll** 15:1 27:20
69:6 83:3 88:2
95:8 107:8 121:13
145:9 149:17
151:5
**we're** 6:12 7:18 8:4
9:4,23 15:19,22
17:12 19:1,3,4
22:13 23:22,24
29:9 31:5,6 33:7
33:12 34:3 47:12
56:11 68:11 75:4
75:13,16 76:20
78:13 89:24 90:18

95:3,7 100:2
103:15 104:23
108:22,23 109:8
120:24 125:8
129:22,24 133:20
135:10 136:19
139:5 144:6
150:21 151:11,15
152:9
**we've** 12:8 15:11
21:20 22:24 28:4
32:11,16 38:6
129:11
**website** 40:24
50:20 51:4 112:24
**websites** 51:25 68:5
113:10
**Wednesday** 41:7
152:21
**week** 6:5 21:25,25
22:1 42:4 67:22
152:16
**weeks** 6:3,7 8:7
11:22,23 12:1
35:10 71:23,24
**weight** 67:4
**WEISS** 2:11
**welcome** 35:20
74:24
**went** 29:21 40:15
52:18,24 57:2
62:20 63:14 66:2
67:11 87:15 112:2
112:3 113:22
114:8,20 115:4,7
115:18,20 116:24
120:10 122:1
129:25 134:21
**weren't** 63:11,14
116:10
**West** 1:19,23 2:8
2:12 3:6,9
**whatnot** 76:18
**whatsoever** 8:21
146:22
**white** 37:12,18
**WILLIAM** 2:14
**willing** 30:1
**window** 63:12
**windows** 58:12

149:24 150:10
**wiping** 146:11
**wiretap** 141:25
**wiretaps** 141:1,6
**wish** 22:18 63:16
**wishes** 121:2
**wishing** 63:18
**withdraw** 17:2
19:19,20 20:21
**withdrawing** 17:11
17:12,13 18:19
19:1,10 20:5
**withdrawn** 17:4,5
20:5
**withdrew** 46:7
**witness** 12:7 18:10
24:2,18 25:6,8,12
25:16 26:7,21,23
27:1,4 28:6,13,13
28:13,20,23 31:7
31:7 33:1,1,6 34:7
34:8 36:20,21
38:25 39:8 46:20
46:22 47:17,22
54:2,14 55:2
76:23 82:23 102:5
102:8 103:14
104:25 106:11,13
106:18 107:3
112:8 114:2,4,5
114:13 115:22
117:8 119:2,12,14
119:24 121:6,9
143:22
**witnesses** 12:7,8,13
12:16,22 14:25
15:1,2,17,24,25
17:14,16,24 18:1
19:1,2 21:14,15
24:21,24 25:1,2
26:11 28:15 30:19
34:9 82:15 151:11
152:4 153:1
**woman** 115:12
135:3 146:14
**women** 49:14,16
52:11,13,24 53:2
59:1 67:7,11
110:24 111:21
112:2,3,23,24

113:22 114:7
115:4,10,18,20
116:4,5,14,17
118:14 120:1,10
121:4,25 123:2,11
135:4,5,7,9,22
136:11,12,14,16
136:24,25 137:2
146:2,11
**word** 76:25 77:2
129:10 135:1,7,14
135:14
**words** 109:13,14,15
112:13 132:25
135:16
**work** 12:10 89:7
**worked** 37:4 135:3
**working** 41:13 42:5
66:12 96:19
136:14,24,25
137:3
**works** 41:7 104:13
142:2
**worthy** 8:14
**wouldn't** 93:8
117:22
**write** 80:6 109:21
110:1,4,7,13,18
112:22 119:14
139:17
**writes** 141:19
**writing** 20:23
110:14
**written** 10:13 13:8
132:2 140:22
**wrong** 6:23
**wrote** 115:13
119:13,15 123:6,7
132:16
**www.lawyersrep...**
1:24

**X**

x 4:3,12 46:25

**Y**

**yeah** 7:1 22:11 25:9
26:16 29:19 41:19
49:1 64:6 93:16
105:2 108:16

112:24 126:6,10
134:25 136:18
149:23 150:5
**year** 33:21 44:1,2
44:12,12,15,17
75:20 135:3
**years** 50:16,16
75:23 87:24 125:2
**yell** 10:19
**yellow** 109:14
133:1
**Yelp** 51:24 67:3
**York** 2:18,18
**young** 135:2,7
136:24
**younger** 88:10,12
136:10
**youngest** 88:5,6

_____
**Z**
_____
**0**
_____
**1**
_____
1 4:16 29:14 31:24
54:3
**1:00** 59:16 84:11
145:10
**10** 4:22
**10:00** 59:16,18
**10010** 2:18
**101** 4:20
**103** 4:21
**10th** 73:15 74:1
75:9,19 76:2 77:5
89:25 92:23
139:14 140:18
**11** 4:23
**11:30** 59:20
**118** 4:8
**119** 23:6,12
**12:00** 59:15
**12:45** 1:20
**1300** 2:15
**1400** 2:12
**14th** 73:24 74:20
**15th** 2:5 73:24,24
74:22 75:8 143:17
**1655** 1:22
**16th** 73:25 75:9,11

**171** 4:22
**17th** 57:12
**185** 4:23
**18th** 57:15
**1990** 139:13
**19th** 35:5 36:2,5
  37:2 66:17 73:14
  76:5 89:11

**2**

**2** 28:9 54:3
**2.420** 23:8,13
**2:00** 145:10
**2000** 88:9
**20005** 2:16
**2000s** 53:6
**2014** 97:8
**2018** 41:5 44:1
**2019** 1:17,24 44:2
  57:12 154:12
**2022** 154:16
**205** 1:18
**20th** 37:2 66:17
**2101** 3:9
**21st** 143:15
**224** 3:6
**22nd** 2:18 17:18
  57:15
**23rd** 17:19
**24** 32:22 33:17,23
  49:24 56:24 67:25
**242-0023** 1:23
**250** 2:12
**26** 1:17
**28th** 5:24 19:25
  20:1
**2nd** 47:1

**3**

**3** 4:16
**3.220** 23:12
**309** 2:22
**31** 4:16
**326-9690** 1:23
**33304** 2:23
**33401** 1:19,23 2:8
  2:12 3:6
**33411** 3:9
**3rd** 46:25

**4**

**4** 4:17 5:16,19 7:15
  11:24 31:24 54:7
  54:11
**4:00** 6:18
**4006** 3:9
**401** 2:7
**405** 1:22

**5**

**5** 4:17 54:7,11,19
  66:3 153:3
**50-2019-MM-00...**
  1:4
**51** 2:18
**54** 4:17
**55** 4:18
**561** 1:23
**59.00** 77:15

**6**

**6** 4:18 55:7,13

**7**

**7** 4:19 74:3,11
  94:12
**74** 4:19
**79.00** 77:16
**796** 94:1,3,9,10,15
  94:25 95:8,19,23
  96:21 138:24
  143:3

**8**

**8** 4:20 101:15,20
  102:20 154:16
**800** 1:23
**815** 3:6
**896** 143:5
**8th** 6:3

**9**

**9** 4:21 102:6,12
  103:24 105:9
**9:30** 1:20
**90.616** 28:9
**900** 2:15
**915** 2:22