## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

JOHN DOE, on behalf of
himself and all others similarly situated,

      Plaintiff,

v.

TOWN OF JUPITER; DET. ANDREW SHARP
#412/1101; DAVID ARONBERG, PALM
BEACH COUNTY STATE ATTORNEY,

      Defendants.

Case No. 19-cv-80513-RAR

## JOINT STATUS REPORT ADDRESSING THE IMPACT OF THE FOURTH DISTRICT COURT OF APPEALS' DECISION ON THE MERITS OF THIS ACTION

This putative class action under 42 U.S.C. § 1983 arises from law enforcement's use of non-audio video surveillance to investigate the Orchids of Asia Day Spa ("Spa"). Plaintiff John Doe and the members of the putative class (the "Does") allege that Defendants caused them to be recorded nude and undressed at the Spa while receiving lawful massage services, in violation of their Constitutional rights. Defendants dispute these allegations and, among other arguments, maintain that law enforcements' use of non-audio video surveillance in the underlying investigation did not violate any Constitutional rights held by Plaintiff or the putative class.

On January 24, 2020, this Court stayed this action, D.E. 148, pending the Fourth District Court of Appeals' review of two Palm Beach County orders suppressing the use of the Spa recordings against defendants in related criminal proceedings. *State v. Kraft*, 4D19-1499 (Fla. 4th DCA) and *State v. Hua Zhang et al.*, 4D19-2024 (Fla. 4th DCA) (collectively, the "Appeals"). The Appeals were consolidated with similar appeals from other cases arising from investigations of spas in Indian River County and Vero Beach. On August 19, 2020, the Fourth DCA affirmed the suppression orders in all the cases and entered the opinion attached here as **Exhibit A**.

Pursuant to this Court's stay order, the parties file this joint status report "addressing the impact (if any) of the Fourth District Court of Appeals' decision on the merits of the above-styled action." D.E. 148.

## PROCEDURAL HISTORY

John Doe commenced this action on April 15, 2019, D.E. 1, and filed the operative complaint on June 28, 2019 after various amendments to add a putative class, change the style of the case so that the Town of Jupiter would accept service, and add information obtained during the suppression hearings in the related criminal cases against certain owners and patrons of the Spa. D.E. 42.

On August 19, 2019, the Court granted the parties' joint motion to stay this action pending settlement negotiations between them. D.E. 80-81. The Court lifted the stay after the parties' settlement efforts failed. D.E. 95.

After the stay, the parties briefed Defendants' Joint Motion to Dismiss and Strike, D.E. 96, Defendant Aronberg's Motion to Stay and for Protective Order, D.E. 97, Aronberg's Motion to Disclose Plaintiff's and Putative Class Members' Identities, D.E. 105, and Plaintiffs' Motion to Proceed Anonymously. D.E. 123.

On January 8, 2020, the parties attended a settlement conference before Magistrate Judge William Matthewman, D.E. 147, however, the possibility of settlement at that time depended in part on the outcome of the Appeals. Accordingly, the Court stayed this action on January 24, 2020 pursuant to the parties' agreement. D.E. 147-148. The Court denied all prior motions as moot. D.E. 148 ¶ 3.

The Does have propounded discovery on all Defendants. Only Defendants Sharp and the Town have responded to some or all of those requests.  The Town has also propounded discovery on Plaintiff, whose response deadline had not come due at the time the Court entered the stay.

### EFFECT OF FOURTH DCA'S RULING

**A.**      **Possibility of Settlement**

The parties conferred on September 16, 2020 and believe the outcome of the Appeals potentially has a positive impact on the parties' abilities to successfully negotiate a settlement of this action.

| | |
|---|---|
| **The Does** | The Does believe that a settlement is possible if the recordings are destroyed by order of this Court or the state court hearing the *State v. Kraft* matter, Case Nos. 2019MM002346AXXXNB and 2019MM002348AXXXNB (collectively, "*Kraft* cases"), and there is some compensation to the Does for their suffering and the legal expenses incurred here. |
| **Defendants** | Additionally, Defendants maintain that settlement may be impacted by future relief sought and granted in the County Court in the *State v. Kraft* matter, Case Nos. 2019MM002346AXXXNB and 2019MM002348AXXXNB (collectively, "*Kraft* cases").  Following the issuance of the Fourth DCA's opinion, attorneys for Defendant Kraft filed a Notice of Appellate Decision in the *Kraft* cases, in which they stated, "Finally, subject to any further appeal, Defendant respectfully intends to urge this Court to order and superintend total, certified *destruction* of the Videos."  *See* **Exhibit B** at 3 (emphasis added).  In the Fourth Amended Complaint [D.E. 42], Plaintiff and the putative class request, among other items, relief in the form of permanent and complete destruction of |

| | |
|---|---|
| | any and all video, audio, photographic, or other recordings, or any images or other records derived from or based on recordings, made inside the Spa. *See* D.E. 42 at 24. Since Defendant Kraft in the *Kraft* cases appears to be seeking nearly identical relief as that sought by Plaintiff and the putative class in this matter, Defendants maintain that the possibility of settlement in the instant matter may be impacted by the outcome of any such motion for destruction of the subject video evidence pursued in the *Kraft* cases. |

### B.    Whether the Does Had a Reasonable Expectation of Privacy at the Spa

| | |
|---|---|
| **The Does** | Contrary to Defendants' argument for dismissal, D.E. 96 at 19, the Fourth DCA confirmed that persons recorded at the Spa, including the Does, had a reasonable expectation of privacy, regardless of whether they were engaged in criminal activity: |
| | The spa-client defendants in all of these cases had a subjective and objectively reasonable expectation of privacy in the massage parlor rooms. The surveillance took place in a professional private setting where clients are expected to partially or fully disrobe. The spa owners and their employees also had a reasonable right to expect that the interactions with nude or partially nude clients in the massage rooms would not be exposed to the public. |
| | Ex. A at 13. |
| | The state also argues that the spas were primarily used as a brothel, as most of the customers who were recorded and monitored engaged in unlawful activity, and thus, the state asserts, the defendants cannot rely on the Fourth Amendment rights of third parties who had their innocent conduct recorded. However, as case law shows us, Fourth Amendment rights are nearly always safeguarded by those who are criminally prosecuted. *See, e.g.*, *Katz*, 389 U.S. at 348 (reversing judgment of conviction for transmitting |

| | |
|---|---|
| | wagering information by telephone). Consequently, the state's circular argument that the defendants lacked a privacy interest because they were engaging in criminal behavior is uncompelling.<br><br>Ex. A at 14.[1] |
| **Defendants** | As an initial matter, Defendants maintain that a thorough analysis of this and other issues presented by the Fourth DCA's Opinion are issues best addressed in briefing on a substantive motion addressing the merits of this case, including but not limited to a future motion to dismiss or motion for summary judgment.  Once the stay of this case is lifted, Defendants intend to file a renewed joint motion to dismiss that raises similar arguments as those asserted at D.E. 96.<br><br>Notwithstanding the above, the Fourth DCA's analysis of this issue failed to include discussion of certain legal authorities cited by Defendants in their Joint Motion To Dismiss, D.E. 96, regarding this issue.[2]  *See* D.E. 96 at 19–20. Specifically, Defendants maintain that by submitting himself to a massage therapist at a commercial place of business, Plaintiff knowingly took the risk that the therapist or the Spa could record the session or otherwise disseminate the session to third parties. See Rehberg v. Paulk, 611 F.3d 828, 842 (11th Cir. 2010) ("The Supreme Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.") |

---

[1] Defendants are collaterally estopped from relitigating several issues addressed by the Fourth DCA (like expectation of privacy).

[2] Defendants dispute Plaintiff's argument regarding collateral estoppel.  Defendants maintain that they are not collaterally estopped from litigating issues addressed by the Fourth DCA, such as the issue of expectation of privacy.

Thus, Plaintiff and his purported classmates have failed to establish that they held a reasonable expectation of privacy in receiving these massages.

Case law not addressed in the Fourth DCA's opinion indicates that a person does not have a reasonable expectation of privacy at a commercial massage parlor. See, e.g., Garmley v. Opryland Hotel Nashville, LLC, 2007 WL 4376078, at *3 (M.D. Tenn. 2007) ("Although Plaintiff may believe otherwise, the right to privacy does not extend to activities conducted in public health spas or commercial massage parlors."); Wigginess, Inc. v. Fruchtman, 482 F. Supp. 681, 689 (S.D.N.Y. 1979) (no right of privacy attaches to commercial health spas and clubs because the "services of each of these establishments are open by individual purchase or by membership to the general public"); Regency Servs. Corp. v. Bd. of Cty. Comm'rs, 819 P.2d 1049, 1057 (Colo. 1991) (finding that "a patron of a commercial massage parlor has no reasonable expectation that a body rub will be constitutionally protected as an integral part of the right of privacy any more than a viewer of an obscene movie in a public theater can legitimately claim a constitutionally protected right of privacy with respect to the viewing."). In Garmley, a case similar to the one at bar, the court found that there was no viable claim for public disclosure of private facts when the plaintiff received a massage at a spa, initiated an indiscreet incident with a masseuse, which was eventually reported to a customer of the plaintiff's company. 2007 WL 4376078, at *3-4. This case law provides that society has not recognized that the expectation of privacy in a commercial massage parlor is reasonable, as is required for a Fourth Amendment claim.

|  | At the very least, the fact that such case law exists and that binding, factually similar precedent does not hold otherwise means the constitutional issue is not clearly established or "beyond debate," further supporting Sharp's and Aronberg's qualified immunity arguments, <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011), an issue which was not analyzed in the Fourth DCA's opinion. |
|---|---|

### C.    Whether and How the Does' Constitutional Rights Were Violated

| The Does | Contrary to Defendants' argument for dismissal, D.E. 96 at 8-12, the Fourth DCA confirmed that the Does' Constitutional rights were violated in two ways: **(1)** the warrant obtained by Sharp to surveil and record at the Spa (the "Warrant") "failed to contain sufficient minimization guidelines," despite the fact the Warrant application cited case law requiring such guidelines and purportedly "sought to comply with its requirements," Ex. A at 16-17; and **(2)** law enforcement failed to minimize in their execution of the Warrant.[3] |
|---|---|
| Defendants | Once again, as an initial matter, Defendants maintain that a thorough analysis of this and other issues presented by the Fourth DCA's Opinion are |

---

[3] Ex. A at 9 (affirming trial court order suppressing "the videos because law enforcement failed to minimize the intrusion on the privacy rights of law-abiding spa-goers and the warrant provided no written criteria for minimization," 17 (despite well-settled federal law, including law cited by Sharp in the Spa Warrant, "the warrants at issue did not set forth any specific written parameters to minimize the recording of innocent massage seekers, and law enforcement did not actually employ sufficient minimization techniques when monitoring the video or deciding what to record"), 17-18 (continuous video surveillance at Spa leading to recordings of innocent spa patrons that remains in the police department's possession "egregious example" of Constitutional violation; Defendants note below that the Fourth DCA was referring to a different investigation, however, that distinction is inconsequential because the court was referring to conduct (i.e. continuous video surveillance) that was nearly identical to the misconduct at issue here), 19 (unable to find that officers acted in good faith with respect to minimization); D.E. 66-5 at 10-12; D.E. 66-4 at 7-10 (affirmed trial court order holding that minimization efforts at the Spa were "illusory at best").

issues best addressed in briefing on a substantive motion addressing the merits of this case, including but not limited to a future motion to dismiss or motion for summary judgment.  Once the stay of this case is lifted, Defendants intend to file a renewed joint motion to dismiss that raises similar arguments as those asserted at D.E. 96.

Notwithstanding the above, for the reasons stated in Defendants' Joint Motion to Dismiss, D.E. 96, Defendants maintain that Plaintiff and the putative class suffered no Constitutional violation.  Further, the Warrant itself included sufficient minimization guidelines and, in executing the Warrants, officers both sought to and did in fact comply with minimization guidelines.

Defendants further maintain that United States v. Mesa-Rincon, 911 F.2d 1433 (10th Cir. 1990) is not binding in this Court, and it does not appear that the United States Supreme Court, Eleventh Circuit, or Florida Supreme Court have ever analyzed the requirements for minimization applicable to conducting lawful non-audio, video surveillance. In fact, in United States v. Batiste, 2007 WL 2412837 (S.D. Fla. 2007), a case not analyzed in the Fourth DCA's opinion, this Court explained, "Though this issue has not been directly addressed in the Eleventh Circuit, circuits elsewhere conclude that to conduct lawful video surveillance, for Fourth Amendment purposes, the government armed with probable cause must also satisfy the requirements of Title III [of the Omnibus Crime Control and Safe Streets Act of 1968] for analogous audio surveillance … ." Id. at *7. Although those requirements include minimization, this Court questioned whether the Fourth Amendment actually imposes a minimization requirement for purely video

surveillance. <u>Id.</u> at *8 n.9 ("Whether, for example, 'sealing' or 'minimization' is required or applicable for purely video surveillance would then be a matter of public comment and legislative policy, *not* constitutional principle.").

Further, just as there is no binding authority clearly establishing that minimization is necessary for silent video surveillance, there is no binding authority clearly establishing what constitutes *sufficient* minimization. Contrary to Plaintiff's allegations that there was no minimization at all, Sharp's affidavit did specify certain minimization techniques. Cameras would be placed only in locations where prostitution was believed to be occurring and in the front lobby where money was being exchanged. The cameras would be monitored only during the Spa's "peak hours." No cameras would be placed in areas expected to be non-criminal in nature, and the view of the video monitor would not be observable by persons other than those performing official duties. <u>Ex. C</u> at 10.

Additionally, in <u>Batiste</u>, this Court explained that minimization does not forbid the interception of all nonrelevant conversations, but instead instructs agents to conduct surveillance in such a manner as to minimize the interception of such conversations based on a reasonableness test applied to the "particular facts of each case." 2007 WL 2412837, at *15–16. In <u>Rodriguez v. State</u>, 297 So. 2d 15 (Fla. 1974), the Florida Supreme Court, in considering the minimization requirement in the context of a wiretap, observed that "[t]he mere fact that every conversation made on a tapped phone was recorded in its entirety, standing alone, does not necessarily violate the minimization requirement. ... Minimization must be considered on a case-by-case basis." <u>Id.</u> at 20 (internal citation omitted). Given the

fact-specific nature of the minimization requirement, as well as the lack of definitional authority from the Eleventh Circuit or the Florida Supreme Court, the applicable boundaries of the minimization requirement were not well-settled. Defendants maintain that these minimization requirements were satisfied in this matter, both in the Warrant and in its execution.  Further, Defendants maintain that for the reasons stated herein and in their Joint Motion to Dismiss, D.E. 96, both Aronberg and Sharp are entitled to qualified immunity.

Finally, as a matter of clarification, Defendants note that in Plaintiff's footnote 3 of this status report, Plaintiff cites pages 17–18 of the Fourth DCA's opinion, arguing that continuous video surveillance at the Spa constitutes an "egregious example" of Constitutional violation.  Defendants maintain this is a misrepresentation of the statements made by the Fourth DCA.  The portion of the opinion cited by Plaintiff actually references an investigation by the Vero Beach Police Department in the *Freels* case, facts which are not implicated in this matter. The Fourth DCA actually stated: "The most egregious example is the investigation by the Vero Beach Police Department in the *Freels* case where the cameras recorded continuously for 60 days."  *See* Ex. A at 18.

D.   **Whether the Does Suffered Damages**

| The Does | Contrary to Defendants' argument that the Does suffered "invalid" damages and that their injuries were "*de minimus*," D.E. 96 at 22-23, the Fourth DCA correctly recognized that the Does' injuries are severe:<br><br>Those innocent clients potentially live with the knowledge that nude videos of themselves are preserved on a server somewhere with unknown accessibility.  In our ever |

|  | increasingly digital world filled with hackers and the like, such awareness renders the surveillance a particularly severe infringement on privacy.<br><br>Ex. A at 18. |
| --- | --- |
| **Defendants** | Once again, as an initial matter, Defendants maintain that a thorough analysis of this and other issues presented by the Fourth DCA's Opinion are issues best addressed in briefing on a substantive motion addressing the merits of this case, including but not limited to a future motion to dismiss or motion for summary judgment.  Once the stay of this case is lifted, Defendants intend to file a renewed joint motion to dismiss that raises similar arguments as those asserted at D.E. 96.  Since Defendants have yet to receive even basic discovery from the anonymous Plaintiff and putative class, it is difficult if not impossible to determine what damages they allegedly suffered, or the extent of same.<br><br>Notwithstanding the above, the Fourth DCA's opinion did not address the extent to which the damages claimed in the Fourth Amended Complaint by Plaintiff and the putative class are *de minimis*.  Instead, the above cited quote is merely dicta and fails to account for the type of injury(ies) alleged in the Fourth Amended Complaint.<br><br>As explained in Defendants' prior Joint Motion to Dismiss, D.E. 96, a § 1983 plaintiff must be able to show some evidence of injury or actual damages.  See Stephens v. DeGiovanni, 852 F.3d 1298, 1325 n. 29 (11th Cir. 2017).  Here, Plaintiff has allegedly suffered no more than *de minimis* harm.  There is no allegation that the surveillance video has been publicly released or disseminated.  Plaintiff and the putative class have proceeded anonymously—further evidence |

| | |
|---|---|
| | they have yet to suffer concrete harm at this point or have even been identified to others as Spa patrons. Plaintiff alleges that he fears the video *might* be released at some indefinite future point, (D.E. 42 ¶ 101), but that is contradicted by the two protective orders barring the video's release. This constitutes a *de minimis* injury, if not a lack of standing due to the alleged injury being unripe. See Texas v. United States, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.")  Once again, these issues were not addressed in the Fourth DCA's opinion. |

### E.   Defendants' Culpability and Claimed Immunity

| | |
|---|---|
| The Does | The Fourth DCA's order further negates Aronberg's and Sharp's claims for qualified immunity, D.E. 96 at 12-16, and negates Aronberg's and the Town's arguments that Doe failed to sufficiently allege a policy, practice, or custom that caused the violation of the Does' constitutional rights. *Id.* at 16-18.<br><br>Defendants Aronberg and Sharp argued that they are entitled to qualified immunity because it was not "clearly established" that minimization was required for non-audio video surveillance. *Id.* at 12-16. A right is clearly established if the defendant had fair warning of it, including because any of the following is true: (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle should control the novel facts" of the case; or (3) the circumstances fit "within the exception of conduct which so obviously |

violates the constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).[4]

Consistent with the Does' arguments in opposition to Defendants' motion to dismiss, D.E. 117 at 9-16, the Fourth DCA held that "the federal case law . . . pertaining to silent video surveillance," which requires minimization, "is well reasoned and ***widely accepted***." Ex. A at 20 (emphasis added).

Well beyond "fair warning," Defendants had actual knowledge of that case law and the minimization requirement because Sharp swore in his Warrant application that he had "strongly considered" those cases, including *Mesa-Rincon* and *Torres*. D.E. 42 ¶ 69; D.E. 96-3 at 9. Indeed, the Fourth DCA refused to find that officers, which included Sharp, "acted in good faith with respect to minimization due to the lack of Florida law on point" because the "warrant applications themselves cited the decades-old federal law (such as *Mesa-Rincon*) setting out the requirements for obtaining a warrant to conduct secret video surveillance in private locations, including the need to minimize the recording of innocent conduct." Ex. A at 19. The Fourth DCA concluded: "These citations

---

[4] Contrary to Defendants' argument, the existence of on-point case law is not required to clearly establish a right. *Magluta v. Samples*, 375 F.3d 1269, 1283 (11th Cir. 2004) ("The very action in question does not have to have been found unlawful, but in light of pre-existing law the unlawfulness must be apparent."); *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) ("If there is no case law directly on point, 'general statements of the law contained within the Constitution, statute, or caselaw may sometimes provide fair warning of unlawful conduct.") (citation omitted). Rather, a right is clearly established if any of the following is true: (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle should control the novel facts" of the case; or (3) the circumstances fit "within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary."); D.E. 117 at 9-14.

|  | *negate a finding of ignorance of minimization requirements*." *Id.* (emphasis added).[5] |
|  | Also, the Fourth DCA held that, in addition to the on-point cases expressly requiring minimization in the video surveillance context, the bounty of controlling audio surveillance cases requiring minimization obviously were materially similar and applicable to video surveillance, especially because video surveillance (and particularly video surveillance in a spa where police anticipated patrons would remove their clothes) is significantly more invasive than audio surveillance.[6] |

---

[5] *See also* Ex. A at 17 ("Thus, it is clear that federal law has been sufficiently developed on this constitutional issue, and it is clear the trial courts did not err in determining that minimization is required," and implicitly questioning whether there was any doubt as to whether minimization procedures are constitutionally required by the Fourth Amendment), 16 ("the state's argument ignores many years of clear federal jurisprudence on this issue;" noting that the operative test was set forth in *Mesa Rincon*, which Sharp cited in his Warrant application as a case he "strongly considered" and purported to follow; quoting *Mesa Rincon* for the proposition that "General fourth amendment requirements are still applicable to video surveillance").

[6] Ex. A at 16 (the *Mesa Rincon* minimization requirement "derives from U.S. Supreme Court case law setting forth the minimum constitutional standards for secret audio surveillance;" quoting *States v. Biasucci*, 786 F.2d 504, 510 (2d Cir. 1986) for the proposition that the "similarities between aural and video electronic surveillance" are "obvious"; holding that "the *Mesa Rincon* formulation of the test has been expressly adopted and applied by other federal circuit courts of appeal"), 17 ("Notably, the warrant applications in the cases now on appeal cited *Mesa-Rincon* and sought to comply with its requirements"), 15 (*Mesa-Rincon* states: "Television surveillance is identical in its indiscriminate character to wiretapping and bugging. However, it is even more invasive of privacy, just as a strip search is more invasive than a pat-down search," quoting *U.S. v. Torres*, 751 F.2d 875, 885 (7th Cir. 1984), another case Sharp claimed to have "strongly considered" in his Warrant application).

| | |
|---|---|
| | Despite knowing that minimization was required for video surveillance, Defendants wholly ignored that requirement, causing the Does to be recorded nude or disrobed.[7]<br><br>    The Town argued that the Does failed to allege a custom, policy, or practice that caused the violation of the Does' constitutional rights, even though the Complaint lays out the testimony of the officers who conducted the investigation at the Spa, all of whom stated that they had no training on minimization. Though that is more than sufficient to allege a custom, policy, or practice subject the Town to liability, to those allegations we add the Fourth DCA's findings of various, obvious constitutional violations by Defendants, and its finding that officers conducting the investigations, including Sharp, failed the good faith exception test, which asks "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Ex. A at 19. Certainly if a well-trained officer should have known that indiscriminately and continuously recording people nude for days on end would be illegal, then the same or more is expected of Sharp's superiors and Aronberg. |
| **Defendants** |     Once again, as an initial matter, Defendants maintain that a thorough analysis of this and other issues presented by the Fourth DCA's Opinion are issues best addressed in briefing on a substantive motion addressing the merits |

---

[7] Ex. at 19 ("The trial courts did not err in determining that the minimization requirements were ignored, as opposed to merely being unmet despite efforts to satisfy them. As previously discussed, the agencies failed to take the most basic and reasonable step of minimization by not monitoring or recording the unsuspected female clients."); D.E. 66-5 at 10-12; D.E. 66-4 at 7-10 (minimization efforts at the Spa were "illusory at best").

of this case, including but not limited to a future motion to dismiss or motion for summary judgment. Once the stay of this case is lifted, Defendants intend to file a renewed joint motion to dismiss that raises similar arguments as those asserted at D.E. 96.

Notwithstanding the above, and contrary to Plaintiff's arguments, the Fourth DCA's opinion supports Defendant Sharp's and Aronberg's entitlements to qualified immunity. Importantly, the Court noted an "absence of any binding Florida law concerning silent video surveillance like that conducted in this case." *See* Ex. A at 12. The Court also stated: "Presently there exists no binding Florida statute, Florida decisional law, or rule of criminal procedure that addresses this type of surreptitious, video-only surveillance as a law enforcement investigative tool. Likewise, the text of the Fourth Amendment does not expressly reference the term 'minimization.'" *Id.* at 15.

Further, with its opinion, the Court cited no binding case within Eleventh Circuit with sufficiently similar facts so as to put either Sharp or Aronberg on notice of any constitutional right to minimization, the contours of which were sufficiently clear such that a reasonable officer would have understood that what he was doing violated that right. See Bates v. Harvey, 518 F.3d 1233, 1247-48 (11th Cir. 2008). The Eleventh Circuit "looks only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose--to determine whether the right in question was clearly established at the time of the violation." Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011). The pre-existing law must "dictate, that is, truly compel

16

(not just suggest or allow or raise a question about), the conclusion for every like-situated reasonable government agent that what the defendant is doing violates federal law *in the circumstances*." Crosby, 187 F.3d 1339, 1345 (11th Cir. 1999) (internal quotations omitted). If the law "has not staked out a bright line, qualified immunity almost always protects the defendant." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994). Crucially, this analysis is *highly fact-specific*.

Regarding Plaintiff's argument, the Eleventh Circuit has advised that for a right to be "clearly established", a plaintiff may (1) show that a materially similar, binding case has been decided; (2) that a broader, clearly established principle should control the novel facts of a particular situation; or (3) that the case at issue fits within the exception of conduct that so obviously violates the Constitution that prior case law is unnecessary.  See Corbitt v. Vickers, 929 F.3d 1304 (11th Cir. 2019).

Notwithstanding this, courts cannot define clearly established law "at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotations omitted); see also Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010) ("More than a general legal proposition—for example, to act reasonably—is usually required; if a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question."); see also Corbitt, 929 F.3d at 1312

("Notwithstanding the availability of these three independent showings, this Court has observed on several occasions that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.") (internal quotations omitted).

Here, the Fourth DCA's opinion, and the arguments asserted by Plaintiff, do not establish that at the time of the underlying incident, case law, *in factual terms*, had staked out a bright line with regard to the requirement or application of minimization under the Fourth Amendment.

Additionally, with regard to the claims asserted against Defendant Sharp, the Fourth DCA's opinion fails to address the issue of qualified immunity in the context of Sharp consulting with and/or receiving advice from prosecutors regarding minimization and the application for and execution of the Warrant.  An officer's consultation with and reliance upon the advice of a prosecutor is an important factor in the qualified immunity analysis and weighs in favor of eligibility for the defense. See Lozman v. City of N. Bay Vill., 2009 WL 10699944, at *8 (S.D. Fla. Feb. 12, 2009) (collecting cases); Eiras v. Baker, 2019 WL 423319, at *14 n.18 (M.D. Fla. Feb. 4, 2019) (collecting cases); Thomas v. City of Punta Gorda, 2010 WL 2293413, at *6 (M.D. Fla. Feb. 22, 2010). Reliance on counsel is particularly relevant to qualified immunity "where the application of the law to the facts falls on the hazy border between clear and ambiguous." Poulakis v. Rogers, 341 F. App'x 523, 532–33 (11th Cir. 2009). Here, Sharp's alleged reliance on counsel from the State Attorney's office in both

applying for and executing the warrant heavily weighs in favor of his eligibility for qualified immunity, an issue not addressed by the Fourth DCA's opinion.

Further, contrary to Plaintiff's arguments, the Fourth DCA's opinion has no bearing on the <u>Monell</u> liability issues applicable to both the Town and Aronberg in his official capacity.  The Fourth DCA's opinion has no discussion of the policies, practices, or customs of either the Town or Aronberg, let alone how such constituted the moving force behind any alleged constitutional violation.  Further, even if it did, such does not cure the conclusory allegations and pleading deficiencies included in Plaintiff's attempt to assert <u>Monell</u> liability in the Fourth Amended Complaint.  For the reasons explained in Defendants' Joint Motion to Dismiss, D.E. 96, Plaintiff has failed to adequately allege <u>Monell</u> liability against either the Town or Aronberg.  <u>See</u> D.E. 96 at 16–18.

Finally, the Fourth DCA's opinion has no bearing on Aronberg's arguments that he was not personally involved in the Spa surveillance, and that even if he had any role in assisting in Sharp's affidavit, which he denies, he would have absolute prosecutorial immunity for that activity.

Dated: September 17, 2020

| | |
|---|---|
| REED SMITH LLP<br>By: */s/ Edward Mullins*<br>Edward M. Mullins<br>Fla. Bar No. 863920<br>Jordan W. Siev<br>Daniel Alvarez Sox<br>Fla. Bar No. 108573<br>emullins@reedsmith.com<br>jsiev@reedsmith.com<br>dsox@reedsmith.com<br>1001 Brickell Bay Drive, 9th Floor<br>Miami, Florida 33131<br>Tel: (786) 747-0200<br>Fax: (305) 747-0299<br><br>     -and-<br><br>Joseph Tacopina, Esq.<br>(Admitted *Pro Hac Vice*)<br>The Law Offices of Tacopina<br>275 Madison Ave., Ste. 3500<br>New York, NY 10016<br>Tel: (212) 227-8877<br>Fax: (212) 619-1028<br>jtacopina@tacopinalaw.com<br><br>*Counsel for John Doe and the Does* | */s/ John M. Janousek*<br>John Morgan Janousek, Esq.<br>Michael J. Roper, Esq.<br>Bell, Roper and Kohlmeyer P.A.<br>2707 E. Jefferson Street<br>Orlando, FL 32803<br>Tel. (407) 897-5150<br>Fax: 407-897-6947<br>jjanousek@bellroperlaw.com<br>mroper@bellroperlaw.com<br><br>*Counsel for Defendant Andrew Sharp* |
| */s/ Shane Weaver*<br>Shane Weaver, Esq.<br>Office of the Attorney General, Civil Litigation<br>1515 N. Flagler Drive<br>Suite 900<br>West Palm Beach, FL 33401<br>Tel. (561) 268-5216<br>Fax: 561-837-5102<br>shane.weaver@myfloridalegal.com<br><br>*Counsel for Defendant David Aronberg* | */s/ Lyman Reynolds, Jr.*<br>Lyman H. Reynolds, Jr., Esq.<br>Roberts Reynolds Bedard & Tuzzio<br>470 Columbia Drive<br>Building C-101<br>West Palm Beach, FL 33409<br>Tel. (561) 688-6560<br>Fax: 561-688-2343<br>lreynolds@rrbpa.com<br><br>*Counsel for Defendant Town of Jupiter* |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of September, 2020, a true and correct copy of the foregoing has been furnished to the Clerk of the Court via the CM/ECF system, which will transmit copies electronically to all counsel of record.

*/s/ John M. Janousek*
MICHAEL J. ROPER, ESQ.
Florida Bar No. 0473227
JOHN M. JANOUSEK, ESQ.
Florida Bar No. 0098599
Bell & Roper, P.A.
2707 E. Jefferson Street
Orlando, FL 32803
Tel. (407) 897-5150
Fax (407) 897-3332
Primary: mroper@bellroperlaw.com
Secondary: phermosa@bellroperlaw.com
Counsel for Defendant Sharp
